ORIGINAL

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

HENRY GLANDING,
     Appellant,
     Petitioner

V.

THOMAS CARROLL (warden)
     Appellee,
     Defendant

0 7 - 4 6 9

FILED

JUL 3 0 2007

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

## THIS IS APPELLANT'S APPENDIX TO WRIT OF HABEAS CORPUS

Dated :  7- 26- 07

*Henry Glanding Jr.*

**Henry Glanding**
**D.C.C.**
**1181 Paddock Road**
**Smyrna, Delaware 19977**

## TABLE OF CONTENTS

**Description**                                                          **Page No.**

Indictment ............................................................................. 1 – 13

Search Warrant Application ................................................... 14 – 23

Direct Appeal ...................................................................... 24 - 62

Direct Appeal Order ............................................................ 63 – 72

Post-Conviction Relief Motion .............................................. 73 – 99

Commissioner's Report and Recommendation .......................... 100 – 110

State's Response to Post-Conviction Motion ............................ 111 – 120

Post-Conviction Relief Order ................................................ 121 – 133

Appeal of Post-Conviction Decision ....................................... 134 – 159

State's Answering Brief ........................................................ 160 – 189
STATE'S ANSWERING BRIEF ORDER - - - - - - - - - - - - - - - - - - - - - 190
Letter From Counsel Stating That Due To Petitioners Issues Raised In Appeal About

Delaware Code Statute A Bill Was Introduced To Amend The Statute ............ 191 – 192
" Knowledge of Possession " - - - - - - - - - - - - - - - - - - 193 - 4
Copys of Search Warrant Along with issues which

Violate Search Warrant - - - - - - - - - - - - - - - - - 14 - 15
                                                          15 - A
                                                          15 - B

ii

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

| | | |
|---|---|---|
| THE STATE OF DELAWARE | : | ID NO 0105006486 |
| vs. | : | INDICTMENT BY THE |
| HENRY W. GLANDING JR. | : | GRAND JURY |

The Grand Jury charges HENRY W. GLANDING, JR. with the following offenses:

COUNT 1                                     IK01-05-0531

TRAFFICKING METHAMPHETAMINE, a felony, in violation of Title 16, Section 4753A of the Delaware Code.

HENRY W. GLANDING, JR. on or about the 11th day of May, 2001, in the County of Kent, State of Delaware, did knowingly and unlawfully possess more than 100 grams of a mixture containing Methamphetamine, as classified under 16 Del. C. § 4716(d)(3).

COUNT 2                                     IK01-05-0532

TRAFFICKING METHAMPHETAMINE, a felony, in violation of Title 16, Section 4753A of the Delaware Code.

HENRY W. GLANDING, JR. on or about the 11th day of May, 2001, in the County of Kent, State of Delaware, did knowingly and unlawfully possess at least 5 grams but less than 50 grams of a mixture containing Methamphetamine, as classified under 16 Del. C. § 4716(d)(3).

COUNT 3                                    ⊥ K01-05-0533

POSSESSION OF A FIREARM DURING THE COMMISSION OF A FELONY, a felony, in violation of Title 11, Section 1447A of the Delaware Code.

HENRY W. GLANDING, JR. on or about the 11th day of May, 2001, in the County of Kent, State of Delaware, did knowingly and unlawfully possess a firearm during the commission of a felony by possessing a .357 revolver during the commission of Trafficking Methamphetamine as set forth in Count 2 of this Indictment which is herein incorporated by reference.

COUNT 4                                    ⊥ K01-05-0534

POSSESSION OF A FIREARM BY A PERSON PROHIBITED, a felony, in violation of Title 11, Section 1448 of the Delaware Code.

HENRY W. GLANDING, JR. on or about the 11th day of May, 2001, in the County of Kent, State of Delaware, did knowingly and unlawfully purchase, own, possess or control a .357 caliber revolver after having pled guilty in Criminal Action Number IN80-07-0268 in the Superior Court of the State of Delaware, In and For New Castle County on September 23, 1980 to the charge of Possession with Intent to Deliver Methamphetamine.

2

#### COUNT 5      ɪ K01-05-0535

POSSESSION OF A FIREARM BY A PERSON PROHIBITED, a felony, in
violation of Title 11, Section 1448 of the Delaware Code.

HENRY W. GLANDING, JR. on or about the 11th day of May, 2001, in the County
of Kent, State of Delaware, did knowingly and unlawfully purchase, own, possess or
control a 12 gauge Remington 1100 shotgun after having pled guilty in Criminal Action
Number IN80-07-0268 in the Superior Court of the State of Delaware, In and For New
Castle County on September 23, 1980 to the charge of Possession with Intent to
Deliver Methamphetamine.

#### COUNT 6      ɟ K01-05-0536

POSSESSION OF A FIREARM BY A PERSON PROHIBITED, a felony, in
violation of Title 11, Section 1448 of the Delaware Code.

HENRY W. GLANDING, JR. on or about the 11th day of May, 2001, in the County
of Kent, State of Delaware, did knowingly and unlawfully purchase, own, possess or
control a .50 caliber black powder rifle after having pled guilty in Criminal Action
Number IN80-07-0268 in the Superior Court of the State of Delaware, In and For New
Castle County on September 23, 1980 to the charge of Possession with Intent to
Deliver Methamphetamine.

3

COUNT 7                           Ɫ K01-05-0537

POSSESSION OF A FIREARM BY A PERSON PROHIBITED, a felony, in
violation of Title 11, Section 1448 of the Delaware Code.

HENRY W. GLANDING, JR. on or about the 11th day of May, 2001, in the County
of Kent, State of Delaware, did knowingly and unlawfully purchase, own, possess or
control a Henderson and Richard 410 gauge Trooper Jr. shotgun after having pled
guilty in Criminal Action Number IN80-07-0268 in the Superior Court of the State of
Delaware, In and For New Castle County on September 23, 1980 to the charge of
Possession with Intent to Deliver Methamphetamine.

COUNT 8                           Ɫ K01-05-0538

POSSESSION OF A FIREARM BY A PERSON PROHIBITED, a felony, in
violation of Title 11, Section 1448 of the Delaware Code.

HENRY W. GLANDING, JR. on or about the 11th day of May, 2001, in the County
of Kent, State of Delaware, did knowingly and unlawfully purchase, own, possess or
control a Remington 870 shotgun after having pled guilty in Criminal Action Number
IN80-07-0268 in the Superior Court of the State of Delaware, In and For New Castle
County on September 23, 1980 to the charge of Possession with Intent to Deliver
Methamphetamine.

COUNT 9                                 ⟁ K01-05-0539

POSSESSION OF A FIREARM BY A PERSON PROHIBITED, a felony, in violation of Title 11, Section 1448 of the Delaware Code.

HENRY W. GLANDING, JR. on or about the 11th day of May, 2001, in the County of Kent, State of Delaware, did knowingly and unlawfully purchase, own, possess or control a Remington 1100 shotgun after having pled guilty in Criminal Action Number IN80-07-0268 in the Superior Court of the State of Delaware, In and For New Castle County on September 23, 1980 to the charge of Possession with Intent to Deliver Methamphetamine.

COUNT 10                                ⟁ K01-05-0540

POSSESSION OF A FIREARM BY A PERSON PROHIBITED, a felony, in violation of Title 11, Section 1448 of the Delaware Code.

HENRY W. GLANDING, JR. on or about the 11th day of May, 2001, in the County of Kent, State of Delaware, did knowingly and unlawfully purchase, own, possess or control a 12 gauge P. Berretta Sport shotgun after having pled guilty in Criminal Action Number IN80-07-0268 in the Superior Court of the State of Delaware, In and For New Castle County on September 23, 1980 to the charge of Possession with Intent to Deliver Methamphetamine.

5

COUNT 11                                    IK01-05-0541

POSSESSION OF A FIREARM BY A PERSON PROHIBITED, a felony, in violation of Title 11, Section 1448 of the Delaware Code.

HENRY W. GLANDING, JR. on or about the 11th day of May, 2001, in the County of Kent, State of Delaware, did knowingly and unlawfully purchase, own, possess or control a .22 caliber Marlin rifle after having pled guilty in Criminal Action Number IN80-07-0268 in the Superior Court of the State of Delaware, In and For New Castle County on September 23, 1980 to the charge of Possession with Intent to Deliver Methamphetamine.

COUNT 12                                    I K01-05-0542

POSSESSION OF A FIREARM BY A PERSON PROHIBITED, a felony, in violation of Title 11, Section 1448 of the Delaware Code.

HENRY W. GLANDING, JR. on or about the 11th day of May, 2001, in the County of Kent, State of Delaware, did knowingly and unlawfully purchase, own, possess or control a MK2 rifle after having pled guilty in Criminal Action Number IN80-07-0268 in the Superior Court of the State of Delaware, In and For New Castle County on September 23, 1980 to the charge of Possession with Intent to Deliver Methamphetamine.

COUNT 13                              ⌁ K01-05-0543

POSSESSION OF A FIREARM BY A PERSON PROHIBITED, a felony, in

violation of Title 11, Section 1448 of the Delaware Code.

HENRY W. GLANDING, JR. on or about the 11th day of May, 2001, in the County

of Kent, State of Delaware, did knowingly and unlawfully purchase, own, possess or

control a .45 caliber Conn Valley Arms black powder rifle after having pled guilty in

Criminal Action Number IN80-07-0268 in the Superior Court of the State of Delaware, In

and For New Castle County on September 23, 1980 to the charge of Possession with

Intent to Deliver Methamphetamine.

COUNT 14                              ⌁ K01-05-0544

POSSESSION OF A FIREARM BY A PERSON PROHIBITED, a felony, in

violation of Title 11, Section 1448 of the Delaware Code.

HENRY W. GLANDING, JR. on or about the 11th day of May, 2001, in the County

of Kent, State of Delaware, did knowingly and unlawfully purchase, own, possess or

control a .22 caliber Ranger revolver after having pled guilty in Criminal Action Number

IN80-07-0268 in the Superior Court of the State of Delaware, In and For New Castle

County on September 23, 1980 to the charge of Possession with Intent to Deliver

Methamphetamine.

7

COUNT 15                          ⟂ K01-05-0545

POSSESSION OF A FIREARM BY A PERSON PROHIBITED, a felony, in

violation of Title 11, Section 1448 of the Delaware Code.

HENRY W. GLANDING, JR. on or about the 11th day of May, 2001, in the County

of Kent, State of Delaware, did knowingly and unlawfully purchase, own, possess or

control a 9mm Smith and Wesson pistol after having pled guilty in Criminal Action

Number IN80-07-0268 in the Superior Court of the State of Delaware, In and For New

Castle County on September 23, 1980 to the charge of Possession with Intent to

Deliver Methamphetamine.

COUNT 16                          ⟂ K01-05-0546

POSSESSION OF A FIREARM BY A PERSON PROHIBITED, a felony, in

violation of Title 11, Section 1448 of the Delaware Code.

HENRY W. GLANDING, JR. on or about the 11th day of May, 2001, in the County

of Kent, State of Delaware, did knowingly and unlawfully purchase, own, possess or

control a .22 caliber rifle after having pled guilty in Criminal Action Number IN80-07-

0268 in the Superior Court of the State of Delaware, In and For New Castle County on

September 23, 1980 to the charge of Possession with Intent to Deliver

Methamphetamine.

COUNT 17                          ℐ K01-05-0547

POSSESSION OF A FIREARM BY A PERSON PROHIBITED, a felony, in violation of Title 11, Section 1448 of the Delaware Code.

HENRY W. GLANDING, JR. on or about the 11th day of May, 2001, in the County of Kent, State of Delaware, did knowingly and unlawfully purchase, own, possess or control a 20 gauge Remington 870 shotgun after having pled guilty in Criminal Action Number IN80-07-0268 in the Superior Court of the State of Delaware, In and For New Castle County on September 23, 1980 to the charge of Possession with Intent to Deliver Methamphetamine.

COUNT 18                          ℐ K01-05-0548

POSSESSION OF A FIREARM BY A PERSON PROHIBITED, a felony, in violation of Title 11, Section 1448 of the Delaware Code.

HENRY W. GLANDING, JR. on or about the 11th day of May, 2001, in the County of Kent, State of Delaware, did knowingly and unlawfully purchase, own, possess or control a Remington 870 Express shotgun after having pled guilty in Criminal Action Number IN80-07-0268 in the Superior Court of the State of Delaware, In and For New Castle County on September 23, 1980 to the charge of Possession with Intent to Deliver Methamphetamine.

COUNT 19                              ⅄ K01-05-0549

POSSESSION OF FIREARM AMMUNITION BY A PERSON PROHIBITED, a
felony, in violation of Title 11, Section 1448 of the Delaware Code.

HENRY W. GLANDING, JR. on or about the 11th day of May, 2001, in the County
of Kent, State of Delaware, did knowingly and unlawfully purchase, own, possess or
control numerous rounds of firearm ammunition after having pled guilty in Criminal
Action Number IN80-07-0268 in the Superior Court of the State of Delaware, In and For
New Castle County on September 23, 1980 to the charge of Possession with Intent to
Deliver Methamphetamine.

COUNT 20                              ⅄ K01-05-0550

POSSESSION WITH INTENT TO DELIVER NON-NARCOTIC SCHEDULE II
CONTROLLED SUBSTANCE, a misdemeanor, in violation of Title 16, Section 4752 of
the Delaware Code.

HENRY W. GLANDING, JR. on or about the 11th day of May, 2001, in the County
of Kent, State of Delaware, did knowingly and unlawfully possess a Non-Narcotic
Schedule II Controlled Substance, Methamphetamine, as classified under 16 Del. C. §
4716(d)(3), with intent to deliver the same.

\10

COUNT 21                           ℧ K01-05-0551

POSSESSION WITH INTENT TO DELIVER A NON-NARCOTIC SCHEDULE II

CONTROLLED SUBSTANCE, a misdemeanor, in violation of Title 16, Section 4752 of

the Delaware Code.

HENRY W. GLANDING, JR. on or about the 11th day of May, 2001, in the County

of Kent, State of Delaware, did knowingly and unlawfully possess a Non-Narcotic

Schedule II Controlled Substance, Methamphetamine, as classified under 16 Del. C. §

4716(d)(3), with intent to deliver the same.

COUNT 22                          ℧ K01-05-0552

MAINTAINING A VEHICLE FOR KEEPING CONTROLLED SUBSTANCES, a

felony, in violation of Title 16, Section 4755 of the Delaware Code.

HENRY W. GLANDING, JR. on or about the 11th day of May, 2001, in the County

of Kent, State of Delaware, did knowingly and unlawfully keep or maintain a vehicle, a

1986 Dodge Ram, which is resorted to by persons using controlled substances for the

purpose of using controlled substances or which is used for keeping or delivering

controlled substances in violation of Chapter 47, Title 16 of the Delaware Code.

11

COUNT 23                                    J.K01-05-0553

MAINTAINING A DWELLING FOR KEEPING CONTROLLED SUBSTANCES, a

felony, in violation of Title 16, Section 4755 of the Delaware Code.

HENRY W. GLANDING, JR. on or about the 11th day of May, 2001, in the County

of Kent, State of Delaware, did knowingly and unlawfully keep or maintain a dwelling

located at 829 Lions Hope Road, Clayton, Delaware, which is resorted to by persons

using controlled substances for the purpose of using controlled substance or which is

used for keeping or delivering controlled substances in violation of Chapter 47, Title 16

of the Delaware Code.

COUNT 24                                    J K01-05-0554

CARRYING A CONCEALED DEADLY WEAPON, a felony, in violation of Title

11, Section 1442 of the Delaware Code.

HENRY W. GLANDING, JR. on or about the 11th day of May, 2001, in the County

of Kent, State of Delaware, did knowingly and unlawfully carry concealed upon his

person a .357 caliber revolver, a deadly weapon, as classified under 11 Del. C. 222(5).

COUNT 25                                    J K01-05-0555

POSSESSION OF DRUG PARAPHERNALIA, a misdemeanor, in violation of

Title 16, Section 4771 of the Delaware Code.

HENRY W. GLANDING, JR. on or about the 11th day of May, 2001, in the County

of Kent, State of Delaware, did knowingly and unlawfully posses with intent to use drug

paraphernalia to package or store a controlled substance in violation of Chapter 47,

Title 16 of the Delaware Code.

COUNT 26                           I K01-05-0556

POSSESSION OF DRUG PARAPHERNALIA, a misdemeanor, in violation of

Title 16, Section 4771 of the Delaware Code.

HENRY W. GLANDING, JR. on or about the 11th day of May, 2001, in the County

of Kent, State of Delaware, did knowingly and unlawfully posses with intent to use drug

paraphernalia to process, prepare or weigh a controlled substance in violation of

Chapter 47, Title 16 of the Delaware Code.

COUNT 27                           I K01-05-0557

POSSESSION OF A NON-NARCOTIC SCHEDULE I CONTROLLED

SUBSTANCE, a misdemeanor, in violation of Title 16, Section 4754 of the Delaware

Code.

HENRY W. GLANDING, JR. on or about the 11th day of May, 2001, in the County

of Kent, State of Delaware, did knowingly and unlawfully possess a Non-Narcotic

Schedule I Controlled Substance, Marijuana, as classified under 16 Del. C. §

4714(d)(19).

A TRUE BILL

_____          _____
ATTORNEY GENERAL                                   (FOREPERSON)

_____          _____
DEPUTY ATTORNEY GENERAL                       (SECRETARY)

13

```
IN THE MATTER OF:                          {
  Glanding, Henry W JR.                    {    SEARCH WARRANT
  829 Lion Hope Road                       {    SS:
  Grey One-story Ranch Style Home          {    APPLICATION AND AFFIDAVIT
  Facing East, A Front door located on     {
  The East Side and a Side Door on the
  North Side of the residence. The
  Residence is Located on the W/S of CR
  143 approximately ¾ Mile N/O CR 300.
```

STATE OF DELAWARE              DATE OF APPLICATION    COMPLAINT NO.
COUNTY OF Kent                    May 11, 2001        08-01-7206
*********************************************************************
Be it remembered that on this 11ᵗʰ day of May, A.D. 2001, before me
(Authority) JAMES T. VAUGHN JR SUPERIOR COURT JUDGE
NAME (S) OF AFFIANT (S):
Detective M. Calloway 7950      of DSP SIU-South
Detective D. Boulerice 7710   of DSP SIU-South


personally appeared and being duly sworn (affirmed) according to law,
depose (s) and say (s) that there is probable cause to believe that
certain property is evidence of or the fruit of a crime or is
contraband or is particular premises or places or in the possession
of particular person(s) as described below.

ITEMS TO BE SEARCHED FOR AND SEIZED:
See attached addendum #1

SPECIFIC DESCRIPTION OF PREMISES AND/OR PLACE(S) AND/OR VEHICLE(S)
AND/OR PERSON(S) TO BE SEARCHED:

   829 Lion Hope Road Grey One-story Ranch Style Home Facing East, A
Front door located on The East Side and a Side Door on the North Side
of the residence. The Residence is Located on the W/S of CR 143
approximately ¾ Mile N/O CR 300. Any and all out buildings. Any and
all vehicles located on the property.

NAME OF OWNER(S), OCCUPANT(S) OR POSSESSOR(S) OF PREMISES AND/OR
PLACE(S) AND/OR VEHICLE(S) AND/OR PERSON(S) TO BE SEARCHED:
Henry W. Glanding JR. WMN, 44 D.O.B. 111556 6'01" 210lbs 829 Lion
Hope Road, Clayton, DE. 19938

VIOLATION OF (Describe Conduct or Specify Statute)
Possession with Intent to Deliver Methamphetimene.
Possession with Intent to Deliver Cocaine.
Possession of a Deadly Weapon by Person Prohibited

14

IN THE MATTER OF:

| | |
|---|---|
| Glanding, Henry W JR. | {  SEARCH WARRANT |
| 829 Lion Hope Road | {  SS: |
| Grey One-story Ranch Style Home | { |
| Facing East, A Front door located on | {  IN THE: DAYTIME |
| The East Side and a Side Door on the | { |
| North Side of the residence. The | |
| Residence is Located on the W/S of CR | |
| 143 approximately ¾ Mile N/O CR 300. | |

STATE OF DELAWARE        DATE OF APPLICATION    COMPLAINT NO.:
COUNTY OF KENT                    051101            08-01-7206

THE STATE OF DELAWARE TO:
DETECTIVE M. Calloway and Detective D. Boulerice of the DELAWARE
STATE POLICE with the assistance of any police officer or constable
or any other necessary or proper person or persons or assistance.

GREETINGS:

Upon the annexed affidavit and application or complaint for a search
warrant, as I am satisfied that there is probable cause to believe
that a certain property, namely:

ITEMS TO BE SEARCHED FOR AND SEIZED:
See attached addendum #1.

used or intended to be used for:
illegal sale and/or use of illegally controlled substances.
and is being concealed on the (premises) (person) described in the
annexed affidavit and application or complaint;
NOW THEREFORE, YOU ARE HEREBY COMMANDED within ten (10) days of the
date hereof search the above-named person, persons, house, conveyance
or place for the property specified in the annexed affidavit and
application and to search any occupant or occupants found in the
house, place or conveyance above named for such property, serving
this warrant and making the search in the daytime or the nighttime
and, if the property, papers, articles or things, or any part
thereof, be found there, to seize it, prepare a written inventory of
the property seized and to return the property and persons in whose
custody or possession the property was found to be dealt with
according to the law.

DATED the 11ᵗʰ day of May, A.D. 20 01

_____
Judge or Justice of the Peace
(Designate name, title and court)
    SUPERIOR COURT JUDGE

Probable Cause Sheet
State of Delaware
County of Kent

{
{

Affiant 1 is Detective Boulerice of the Delaware State Police Special Investigations Unit. Detective Boulerice has been employed with the Delaware State Police for over 12 years and has been assigned with the Special Investigations Unit for over 6 years. Detective Boulerice has been involved in over 200 cases involving the distribution of controlled substances. Detective Boulerice has been an affiant on more than 60 search warrants and has assisted with the execution of numerous others. Detective Boulerice has attended State and Federal schools pertaining to investigating crimes involving the distribution of controlled substances.

Affiant 2 is Detective Michael Calloway of the Delaware State Police. Detective Calloway has been employed with the Delaware State Police since March 1996. Detective Calloway has been assigned to the Delaware State Police Special Investigations unit since April 2000. Detective Calloway has attended both State and Federal school pertaining to the investigations of illegal controlled substances. Detective Calloway has investigated over 25 cases involving the illegal distribution of controlled substances. Detective Calloway has been an Affiant and/or Co-Affiant on numerous search and seizure warrants. Detective Calloway has assisted with the execution of several search and seizure warrants.

Your affiants contacted Detective Williams of the Delaware State Police Special Investigations Unit in reference to information about Henry Glanding and his activities pertaining to drug sales. Detective Williams advised that during the month of January 2001, he received information from a confidential individual, hereafter referred to as CI-1. CI-1 advised Detective Williams that an individual named Henry Glanding is a distributor of methamphetamine. According to CI-1, Glanding is known to sell the methamphetamine at a bar located in Maryland called Mickey's. CI-1 advised Detective Williams that Glanding resides in the Clayton area of Kent County, Delaware and goes by the nickname of "Hardhead". CI-1 further advised that Glanding is a member of an outlaw motorcycle club known as the "Pagans".

During the month of March 2001, Detective Williams received information from a confidential individual, hereafter referred to as CI-2. Detective Williams can state that CI-2 is a past proven reliable individual who has provided drug and criminal information to the Delaware State Police in the past and that the information provided was determine to true and correct. CI-2 advised Detective Williams that he/she observed an individual at a "Pagan" motorcycle club gathering in New Castle County and that the individual goes by

**Probable Cause Sheet**
**State of Delaware**
**County of Kent**

{
{

**Search Warrant**
**Application and Affidavit**
**Complaint #08-01-7206**
**Page 2**

the nickname of "Hardhead". CI-2 stated that Hardhead is a distributor of methamphetamine. CI-2 advised that while at the Pagan Club party, Hardhead was distributing large quantities of methamphetamine to numerous subjects attending the party. CI-2 was able to observe Hardhead with methamphetamine and observed the transactions. CI-2 stated that Hardhead is a member of the Pagan Motorcycle Club.

Detective Boulerice conducted a Department of Motor Vehicle computer inquiry for Henry Glanding and found that Glanding has a Delaware driver's license. According to the driver's license inquiry, Henry Glanding resides at the address of 829 Lion Hope Road, Clayton Delaware. Detective Boulerice also conducted a DMV computer inquiry for vehicle registered to Glanding and found that Glanding has the following vehicle registered to him at the address of 829 Lion Hope Rd., Clayton Delaware :a 1980 Datsun bearing Delaware registration C21069, a Harley Davidson motorcycle bearing Delaware registration MC6455, a 1987 Mitsubishi bearing Delaware registration CL91930, a 1977 Chevrolet bearing Delaware registration U425093 and a 1986 Dodge bearing Delaware registration PC10480.

During the month of May, Detective Boulerice responded to the residence located at 829 Lion Hope Road and can state that the residence is a single story gray ranch style residence located on Lion Hope Road. The residence is situated on the west side on the roadway and is located approximately 3/4 miles north of SR 300. Located on the north side of the residence is a tan colored shed. Located on the south side of the residence are small outbuildings that your affiant believes to be dog houses along with a gray shed. Detective Boulerice can state that throughout the property of 829 Lion Hope Road were numerous vehicles, some of which appeared to be disabled.

Detective Boulerice conducted a criminal history inquiry for Henry Glanding and discovered that Henry Glanding has an extensive criminal history pertaining to drugs and weapon offenses. According to the inquiry, Glanding was arrested on the following dates for the following offenses; 06/18/1995- Possession of Drug Paraphernalia and Possession of a Narcotic Schedule II Controlled Substance, 11/25/1989- Loaded Firearm Prohibited in Motor Vehicle, 07/08/1980- Carrying a Concealed Deadly Weapon, Possession of a Deadly Weapon During Commission of a Felony, Possession With Intent to Deliver Meth and Possession of Marijuana, 09/04/1977- Possession of Methamphetamine, Possession of Hashish and Possession of Marijuana, 07/10/1977- Possession of Marijuana, Possession of Meth, Possession of Firearm During the Commission of a Felony,

**Probable Cause Sheet**
**State of Delaware**
**County of Kent**

{

{

                                            **Search Warrant**
                                    .Application and Affidavit
                                       Complaint #08-01-7206
                                                      Page 3

Possession With Intent to Deliver, and Possession With Intent to Deliver Hashish, and
10/06/1974- Possession of Dangerous Drugs.

According to information obtained from the Delaware State Police Intelligence Unit,
Henry Glanding is a member of the outlaw motorcycle club referred to as the "Pagans".
Your affiants were advised that Glanding holds the position in the motorcycle club as
"Sgt. of Arms". According to the Delaware State Police Intelligence Unit, the Pagan
Motorcycle Club is a historically known criminal organization and that one of the most
notable criminal activities of the Pagan Motorcycle Club is the distribution of
methamphetamine. Your affiants were advised that the Pagan Motorcycle Club controls a
large methamphetamine market in the Mid-atlantic states region and that numerous Pagan
Club members have been arrested for the distribution of methamphetamine and other
controlled substances. The Delaware State Police Intelligence Unit received this
information from surrounding state and federal law enforcement agencies and from
experiences of the Delaware State Police. Your affiants were also advised that a "Sgt. of
Arms" is a position in the Pagan Motorcycle Club. The Sgt. of Arms function with the
Club is to enforce discipline to club members and also serve as an enforcer to anyone
outside the organization that has a confrontation with Pagan members.

During the month of May 2001, Detective Calloway received information from a
confidential individual, hereafter referred to as CI-3. CI-3 advised Detective Calloway
that Henry Glanding is a distributor of methamphetamine and cocaine. According to CI-3,
he/she is aware of this fact because he/she has purchased methamphetamine from
Glanding several times in the past and has observed over 50 sales of methamphetamine
within the last year, many of which have occurred within the last couple of months. CI-3
stated that the transactions pertaining to methamphetamine between he/she and Glanding
took place at Glandings residence located on Lion Hope Road. CI-3 described the
residence to Detective Calloway as a gray single story ranch style residence on Lion
Hope Road with numerous vehicles on the property. CI-3 is familiar with some additional
drug related activities of Glanding. CI-3 stated that Glanding is known to transport
methamphetamine and cocaine to a bar known as "Mickey's" which is located in
Maryland and distributes the methamphetamine to the customers. CI-3 added that
Glanding keeps records of the methamphetamine deliveries in a notebook and keeps the
notebook at his residence.

18

**Probable Cause Sheet**
**State of Delaware**
**County of Kent**

{
{

During the interview with CI-3, CI-3 advised Detective Calloway that Glanding should be considered dangerous. CI-3 advised that Henry Glanding goes by the name of "Hardhead" and is a member of the outlaw motorcycle club known as the "Pagans". CI-3 stated that he/she knows Glanding carries a handgun upon his person at all times. According to CI-3, he/she was traveling in a vehicle with Glanding when Glanding was making a delivery of methamphetamine. During the trip, CI-3 had conversation with Glanding during which Glanding told CI-3 if a police officer stops him, he would kill the police officer. Glanding further told CI-3 how he would dispose of the body.

CI-3 advised Detective Calloway that within the last seven days from the application of this affidavit, he/she was at Glanding's residence. While at the residence, CI-3 observed methamphetamine within the residence and stated that Glanding stores the methamphetamine in a gun locker in the living room. CI-3 also advises that Glanding keeps additional methamphetamine bagged for distribution on the floor next to the couch in the living room. CI-3 further states that Glanding is an avid hunter and keeps numerous weapons inside his residence.

Your affiants can state that CI-3 is a past proven reliable individual and has assisted the Delaware State Police with drug related investigations which resulted in the arrests and convictions of drug dealers

As stated by CI-1 and CI-3 in this affidavit, Henry Glanding goes to a bar in Maryland known as Mickey's. The Delaware State Police contacted Caroline County Task Force in Maryland and spoke with Detective Anderson. Detective Anderson advised that he is familiar with the bar known as "Mickey's" which is located in Caroline County Maryland. According to Detective Anderson, he has received information from numerous sources that Mickey's is a distribution center for methamphetamine and other controlled substances. Detective Anderson further advised that Mickey's is frequented by numerous members of the Pagan Motorcycle Club.

Detective Calloway contacted the Kent County Attorney General's office and found that Henry Glanding has been found Guilty of felony crimes in the State of Delaware and is prohibited from carrying or possessing a firearm

Detective Calloway conducted a computer criminal intelligence inquiry. As a result of the inquiry, Detective Calloway found intelligence incidents from law enforcement agencies

19

Probable Cause Sheet
State of Delaware
County of Kent

{ .
{

pertaining to Henry Glanding. On 11/02/1993, the Delaware State Police Special
Investigations Unit reported that Glanding is involved in drug trafficking. The
confidential individual reporting advised that he has observed large amounts of cash at
Glanding's residence. On 06/23/1995, the New Castle County Police reported that Henry
Glanding is a prospect for the Pagan Motorcycle Gang. On 11/5/2000 Henry Glanding
was observed operating a 1993 Harley Davidson motorcycle bearing Delaware
registration MC6455. Glanding was wearing Pagan Motorcycle Club colors which
indicates his membership to the club.

Based upon your affiants training, experience and participation in past drug
investigations, your affiants know;

A. That drug traffickers very often place their assets in names other than their own to
avoid detection of these assets by government agencies and even though these assets are
in the names of others, the drug trafficker actually owns and continues to use these assets
and exercise dominion and control over them;

B. That drug traffickers must maintain large amounts of United States currency in order
to maintain and finance their on going narcotic business;

C. That drug traffickers maintain books, ledgers, records, receipts, notes, money orders
and other papers relating to the transportation, ordering, purchasing and distribution of
drugs;

D. That it is common for drug traffickers to secrete contraband, proceeds of drug sales
and records of transactions in secure locations within their residence and/or their business
for their ready access and to conceal their existence from law enforcement officers.

E. That when drug traffickers amass large proceeds from the sale of drugs the
traffickers attempt to legitimatize these profits. To do so, the drug traffickers often utilize
domestic banks and their attendant services, securities, cashier's checks, money drafts,
letters of credit, real estate and business fronts;

F. That drug traffickers commonly maintain addresses or telephone numbers in books
of paper which reflect names, addresses and/or phone numbers of their associates in the
drug trafficking organization;

**Probable Cause Sheet**
**State of Delaware**
**County of Kent**

{
{

Search Warrant
Application and Affidavit
Complaint #08-01-7206
Page 6

G. That drug traffickers often take payment in the form of stolen items such as televisions, stereos, VCR's, guns and cameras and/or that they obtain these items legitimately with the profits of drug sales. These items, found in quantities of more than two, which is not common for a residence, are evidence of a drug dealers profits;

H. Your affiants are aware that the courts have recognized that unexplained wealth is probative evidence of crimes motivated by greed, in particular, trafficking in controlled substances.

I. Your affiants can state that the drug trafficker will generally only transport that amount of drug needed to complete a specific transaction. The drug trafficker will maintain the balance of the supply at a secure location, usually at their residence.

Your affiants can state that the three confidential individuals referred to in this affidavit provided information independent from each other and have no knowledge of the information provided by the others.

Based upon the information contained herein from the three independent sources, Glandings affiliation with a criminal organization known for the distribution of methamphetamine, and repeated criminal arrests of drug and weapon related offenses, it is the belief of your affiants that probable cause does exist to believe that methamphetamine, paraphernalia, monies, drug records, financial records and other evidence relating to the distribution and/or use of controlled drugs can be found in the residence, on the property, in the outbuildings and in the numerous vehicles located at the address of 829 Lion Hope Road, Clayton, Delaware.

Based on the information pertaining to the weapons and propensity of violence your Affiants formally request permission to make immediate entry into the residence to prevent the occupants from immediately donning weapons. Your Affiants wish to avoid a confrontation involving weapons to assure the safety of the law enforcement officials entering the residence, the occupants therein as well as the surrounding civilians.

21



**Search Warrant Application and Affidavit**
**Items to be searched for and seized**
**Complaint #08-01-7206**
**Addendum**

1. Any methamphetamine as defined by Delaware law, title 16, section 4716(d)(3).

2. Any cocaine or "crack" cocaine as defined by Delaware law, title 16, section 4716(b)(4).

3. Any related drug paraphernalia as defined by Delaware law, title 16, section 4701(16). Drug paraphernalia shall include materials of any kind which are used, intended for use or designed for use, in manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, re-packaging, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body, a controlled substance as classified under Delaware law.

4. Indicia of occupancy or residency of the described residence including but not limited to utility and electric bills, cancelled envelopes, and keys.

5. Any indicia of membership or association with the Pagan Motorcycle Club.

6. Books, records, receipts, notes, ledgers and other papers relating to transporting, ordering, purchasing or distributing methamphetamine and/or cocaine or its by-products including addresses and telephone numbers of individuals associated in the drug trafficking operation.

7. Any documents, receipts, tickets or other papers reflecting or evidencing travel by any means in furtherance of the drug trafficking enterprise between Delaware and other states.

8. Books, records, receipts, bank statements and records, money drafts, letters of credit, cashier's check receipts, passbooks, bank checks, safety deposit keys, loan documents, wire transfers and other papers or documents evidencing the obtaining, secreting, transferring, laundering and investing and/or concealing of any assets or monies obtained directly or indirectly from violations of the controlled substance laws.

9. Any United States currency in close proximity to any cocaine or "crack" cocaine or paraphernalia, or any quantities of currency in excess of $500.00, or other property such as VCRS, televisions, cameras and stereos of estimated value of more than $100.00 found in quantities not normally associated with residences.

10. Any firearm or deadly weapon

22

WHEREFORE, this (these) affiant(s) pray that a search warrant may be issued authorizing a search of the aforesaid (house, place, conveyance, person or persons, or occupant or occupants) in the manner provided by law.

_____
Affiant

_____ 7950
Affiant

SWORN to (or affirmed) and subscribed before me this __11th__ day of __May__ , A.D. 20 06 .

_____
Judge or Justice of the Peace
(Designate name, title and court)
      SUPERIOR COURT JUDGE

23

IN THE SUPREME COURT OF THE STATE OF DELAWARE

HENRY GLANDING,                    )
                                   )
     Defendant-Below,              )
     Appellant,                    )
                                   )
                                   )    No. 236, 2002
     v.                            )
                                   )
STATE OF DELAWARE,                 )
                                   )
     Plaintiff-Below,              )
     Appellee.                     )

---

ON APPEAL FROM THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

---

APPELLANT'S BRIEF UNDER RULE 26 (C)

LLOYD A. SCHMID, jr., ESQUIRE
Assistant Public Defender
Public Defender's Office
Sykes Building
45 The Green
Dover, Delaware 19901
(302) 739-4476 ext. 206
ID# 003028
Attorney for Defendant Below,
Appellant

September 27, 2002

## TABLE OF CONTENTS

STATEMENT OF CHARGES                                          1

THE NATURE OF THE DEFENSE MADE AT TRIAL                      2

SUMMARY OF THE EVIDENCE                                       3

THE SIGNIFICANT PRETRIAL AND TRIAL APPLICATIONS
       AND RULINGS                                           16

THE SENTENCE                                                 18

THE DEFENDANT'S POINTS                                       22

CONCLUSION                                                   23

## STATEMENT OF CHARGES

Defendant was charged by Indictment with numerous criminal offenses, including fifteen counts of Possession of a Firearm by a Person Prohibited, Count Four, IK 01-05-0535, through Count Eighteen, IK 01-05-0548, and one count of Possession of Firearm Ammunition by a Person Prohibited, Count Nineteen, IK 01-05-0549. These charges were severed from drug and related offenses by motion of the Defendant. They went to trial separately on March 4, 2002.

## NATURE OF DEFENSE AT TRIAL

Defendant Glanding testified in his own defense, and offered the testimony of another witness to the affect that not all of the weapons displayed to the jury belonged to or were in the possession of the Defendant.

## SUMMARY OF EVIDENCE

A Suppression Hearing was held on March 4, 2002, in which
the Defendant challenged the probable cause to issue the search
warrant for his residence. (See, generally, Volume A, March 4,
2002) Specifically, the Defense asserted that at the time of the
search, there was no valid probable cause, in that there was no
knowledge or any credible suspicion of any illegal activity
concerning the Defendant, either in this State, or in Maryland,
known to the State at the time that they sought a search warrant
from the Superior Court. (A-20-21) A copy of the Search Warrant
issued by the Superior Court was provided to the presiding judge
by stipulation between the parties and was marked as State's
Exhibit 1. (A-24-25)

Corporal Layfield testified at the Suppression Hearing that
he is a Scout Observer / Sniper for the Special Operations
Response Team for the Delaware State Police, and is a detective
with the Governor's Task Force. (A-25-26) From approximately
1:00 pm on May 11, 2001, he was in an observation position
approximately 180 yards behind the Defendant's residence. (A=26-
27, 34-38) The officer observed the residence from 1:00 pm to
after 8:30 pm. (A-30) He observed one male in the area during
that time. (A-31) He had seen a photograph of the defendant and
was advised that the Defendant was wanted out of Maryland. (A-

28

27)  He observed the Defendant tending his garden, doing yard work and cleaning fish.  (A-28) Most of the activity was seen between 4:00 pm and 8:00 pm.  (A-31)  The Defendant was in and out of the residence during that period.  (A-32)  Defendant was wearing shorts with no shirt.  (A-33)  He observed the Defendant to be carrying a knife and a pistol in a holster on his waist. (A-28-30)  He had also been advised that the Defendant was a convicted felon.  (A-30)  A photograph of the Defendant with shorts and no shirt with a large wallet at his waist was introduced by the Defendant during cross-examination, which the witness distinguished from what he saw.  (A-33-34)  He was observing the residence until he saw a vehicle leave the residence at 8:30 pm.  (A-30)

Detective Darren Short testified at the Suppression Hearing that he is a Scout Observer / Sniper for the Special Operations Response Team for the Delaware State Police.  (A-40)  From approximately 1:00 pm on May 11, 2001, he was in an observation position approximately 375 yards in front of the Defendant's residence.  (A-40-41, 34-38) Witness was advised that search warrants were being prepared for the residence, that the defendant was a prohibited felon with a violent history.  (A-41-42)  He observed the defendant working in his yard and going back and forth between his vehicles.  (A-42)  He observed a handgun in

a holster at the defendant's waist. (A-42-43)  The witness had
clear visibility from his location to the residence.  (A-43)  A
photograph of the front of the Defendant's residence was admitted
into evidence.  (A-44-45)  The residence was first observed by
the witness the day before, on May 10, 2001.  (A-45)  He observed
the Defendant on May 11, take a polaroid photograph of himself
holding a fish and then cleaning the fish.  (A-45)  At
approximately 8:39 pm, Defendant left his residence in a Ram
Charger.  (A-46-47)  Witness was in regular radio communication
with the rest of the team.  (A-49-50)  He reported that he
observed the Defendant with what "appeared" to be a gun, and then
said that he saw a gun on the Defendant's hip.  (A-49-50)

Michael Calloway testified in the Suppression hearing that
he was a detective with the Delaware State Police Special
Investigations Unit.  (A-54-55)  He worked in an undercover
capacity in drug interdiction cases.  (A-55)  Calloway obtained
information that the Defendant kept large quantities of
methamphetamines in his residence, that he was involved in the
distribution of the drug, and that he was an avid hunter in
possession of numerous firearms.  (A-56)  On May 11, 2001,
Calloway received information from another State Trooper that the
Defendant was involved with other Pagan Motorcycle Club members
in an assault in Maryland.  (A-56)  Calloway determined that

there was an open Maryland warrant for the Defendant's arrest in connection with the Maryland assault. (A-56) This information was confirmed via computer at 1438 hours, and by receipt of a hard copy of the Maryland arrest warrant at 1700 hours. (A-57) Calloway was co-affiant with Detective Boulerice on a search warrant for the Defendant's residence. (A-57) The warrant was supplemented by information from a past-proven cooperating individual, as well as other information obtained by Delaware State Police. (A-58) Calloway met with Judge Vaughn, who signed the warrant at approximately 3:00 to 4:00 pm. (A-58) Search warrant was for the residence and all vehicles located on the property. (A-67) After the warrant was signed, Calloway went to a predetermined location, the Delaware State Police shooting range, to conduct a briefing with all people who would be involved in arresting the Defendant and executing the search warrant. (A-58-59) A copy of the Warrant issued by Maryland for the Defendant's arrest was submitted into evidence by the State. (A-59-60) Calloway advised all officers involved that it was reported by an informant that Defendant was armed, that he likely carried a weapon at all times, that he had threatened to shoot any officer that stopped him while he was in possession of drugs, and had plans for how to dispose of the officer's body. (A-61) Decision was made for officer safety considerations to conduct a

felony stop of him in a vehicle, rather than to attempt to take

him into custody while he was at his residence. (A-62-63) After

the Defendant was taken into custody, Calloway participated in

the search of the residence. (A-63) Numerous firearms and

thousands of rounds of ammunition for those firearms were found

in the residence. (A-63) Many of the "thousands" of rounds of

ammunition were .22 small caliber ammunition, which are often

purchased in "bricks" of 500 or 1000 rounds, and are frequently

used for recreational target shooting, or "plinking". (A-69-70)

Pagan colors and a walking stick bearing the Defendant's known

nickname of "Hard Head" were also found. (A-63) On cross-

examination, Calloway acknowledged that he wrote in his report

that Detectives Layfield and Short reported on the radio that

they observed a "possible" handgun on the Defendant's belt. (A

66-67) On redirect, Calloway testified that Detective Short said

that he saw a handgun holstered on Defendant's right hip. (A-73)

Calloway aware that, in addition to Defendant, Mary Mullins and

two children lived at the residence. (A-70-71) Many of the

weapons were located in a gun safe in the residence, which

Calloway could not remember whether it was locked, or not, at the

time of the search. (A-71-72)

Sergeant Robert Kracyla works for the Delaware State Police,

assigned to an FBI violent crime fugitive task force. (A-74) He

testified at the suppression hearing as to his involvement with
the SORT team apprehension of the Defendant. (A-75-76) As team
leader, he made the decision not to attempt to apprehend the
Defendant in his residence, for officer safety. (A-77) He had
information from sniper observers in place that the Defendant had
a gun in his possession. (A-78-79) At about 2000 hours, the
Defendant left his residence in his pickup truck. (A-79-80)
Kracyla described the nature of a rolling stop, the kind of stop
used with the Defendant. (A-80-84) Two vehicles rammed the
Defendant's vehicle and boxed it in, one in front and one in
back, then a van with officers inside pulled up next to the truck
on the driver's side, the officers jumped out with guns drawn,
and the Defendant was apprehended. (A-80-84) The ramming
collision occurred at a speed of about five miles an hour. (A-
88) A photograph was entered into evidence showing no damage to
the Defendant's truck. (A-88-89) On cross-examination, Kracyla
acknowledged that the team strives for speed in executing the
stop and apprehension in order to overwhelm the Defendant. (A
91a-91d) No one else was in the Defendant's vehicle when it was
stopped, other than himself. (A-84) The Defendant tried to exit
by opening the drivers side door, but the door was forced closed
and the Defendant was told to show his hands. (A-93) The
Defendant was pulled through the driver's side window by one of

33

the officers, was placed on the ground and handcuffed. (A-85) No gun was observed on the Defendant's person. (A-85) Kracyla searched the Defendant's truck and found a revolver in a holster in the center console of the truck. (A-85) A blue satin bag with pill bottles in it was also found in the console. (A-85) Photographs of the interior of Defendant's truck, showing the pistol and other items found were admitted into evidence. (A-86-87) Kracyla and the SORT team had no specific direction or responsibility to conduct an inventory search. (A-94) After the arrest and detention of the Defendant, Kracyla participated in the execution of the search warrant, his team entering to clear the house. (A-90) No one was at the residence when the officers made entry. (A-90)

PURSUANT TO QUESTIONING BY THE COURT: Defendant's hands were secured while he was still in the truck by having someone on the SORT team grab them. (A-96-97) Upon recross by the Defense: The stop and securing of the Defendant occurred within seconds. (A-97) From the first tap by one of the vehicles, until the team exited from the van and the Defendant was dragged from his truck and handcuffed on the ground, the total time elapsed was about five seconds. (A-98)

At the conclusion of the Suppression Hearing, the Defense argued that the vehicle was not searched pursuant to the search

warrant issued by the Superior Court, because it was no longer located on the property of the Defendant, but was outside the scope of the warrant. (A-100) Rather, the only justification for the search was pursuant to the arrest of the Defendant on the Maryland warrant. (A-99) Any search of the vehicle was unnecessary, because the caselaw only supported a search under those circumstances, in order to prevent the destruction of evidence, or for officer safety. (A-100) Because the Defendant was removed from his vehicle so quickly, the only valid search would be one of his person where he lay on the ground. (A-100) The Defense challenged the search of the vehicle and the seizure of the pistol and drugs found in the vehicle pursuant to the stop and detention of the Defendant. (A-103) The Defense withdrew its challenge to the validity of the warrant, itself. (A-101) Court ruled that there was probable cause to arrest on the basis of the Maryland warrant, as well as the officers' own observations of the Defendant, as a person prohibited, in possession of a handgun. (A-106-108)

At trial, Detective Darren Short testified substantially the same as he did in the Suppression hearing, supra. (A-111-123) Exhibit 1, photograph of Defendant's residence was admitted into evidence. (A-117-118)

At trial, Detective Rodney Layfield testified substantially

the same as he did in the Suppression hearing, supra.  (A-123-129)

The Stipulation concerning Defendant's status as a convicted felon was admitted without objection as State's Exhibit 2.  (A-129-130)

At trial, Sergeant Robert Kracyla testified substantially the same as he did in the Suppression hearing, supra. (A-133-143)

At trial, Detective Michael Calloway testified substantially the same as he did in the Suppression hearing, supra. (A-143-192)  Exhibit 4, a photograph of the gun safe found in the residence was admitted into evidence without objection.  (A-147)  Exhibits 5, 6, and 7, photographs of items on a coffee table in the Defendant's residence, were admitted over Defendant's objection.  (A-154-156)  Exhibit 8, a photograph of three firearms found in the washroom, was admitted into evidence.  (A-157)  Exhibit 9, a map showing the location of Defendant's residence inside the Delaware state line was admitted into evidence.  (A-191)

Detective David Weaver testified at trial that he is a Delaware State Trooper, assigned to the Criminalistics Unit at Troop 3, responsible for the collection and processing of crime scenes and evidence.  (A-192-193)  He took photographs of the vehicle which the Defendant was driving when he was stopped and

taken into custody. (A-193)  He was at the vehicle scene for
approximately one hour. (A-209)  Weaver collected Colt .357
revolver from console of vehicle. (A-193-194)  Revolver was
admitted into evidence as State's 10. (A-194-195)  Wallet and
contents were also collected at the vehicle scene, Exh 11. (A-
195-196) Six .357 rounds recovered from pocket of jacket found in
vehicle. (A-196)  Weaver went to the residence to assist in
evidence collection. (A-196-197)  He spent approximately two
hours at the residence. (A-209-211)  He examined a gun cabinet
located in the living room of the residence. (A-197)  He
retrieved several weapons from the cabinet:  .45 Connecticut
Valley Arms black powder rifle, Exh 12, with several containers
of black powder ;  .50 Charles Daily black powder rifle, Exh 13
(A-197-199); .22 Marlin rifle, Exh 14; .12 gauge Berretta Sport,
Exh 15 (A-199-200); .12 gauge semiautomatic shotgun with scope,
Exh 16; .12 gauge Remington, Exh 17 (A-200-201); Remington .12
gauge, Exh 18; MKT (sic) rifle with shoulder strap, Exh 19 (A-
201-202); H & R .410 shotgun, Exh 20; 9 mm Smith & Wesson handgun
with holster, Exh 21; clip for Smith & Wesson handgun, Exh 22 (A-
202-203).  Weaver also recovered weapons from a gunrack in the
washroom in the residence:  .20 gauge Remington, Exh 23; .20
gauge Remington 870 Express shotgun, Exh 24 (A-203-204); .22
caliber rifle, Exh 25 (A-204).  Weaver seized firearms ammunition

from the residence which he testified was consistent in gauge and caliber with the firearms seized at the residence, in the place of which ammunition, photographs were admitted into evidence, rather than the actual ammunition, itself, Exhs 26 through 29. (A-205-208)

The Defense called Mary Mullins, who testified that she has lived at the same residence as the defendant for eight years. (A-214) The Defendant owned the residence. (A-223) Her three children live there, as well: Ashley, thirteen years old, Gregory, eleven years old, and Angela, eight years old. (A-214-215) She was residing at the residence on the day of the execution of the search warrant at the residence, May 11, 2001. (A-215) She has been hunting for the last eleven years of her life. (A-215) She did not hunt every year when living with the Defendant, because of Girl Scout obligations. (A-215-216) She brought many firearms with a gun cabinet to the residence with her when she moved in. (A-216) She identified State's Exh 4, a photograph of a gun cabinet, as the gun cabinet which she brought with her to the residence. (A-217) She and the Defendant had keys to the gun cabinet. (A-223-224) She stored many of her firearms at the residence: .45 Connecticut Valley Arms black powder rifle, Exh 12, with several containers of black powder ; .12 gauge semiautomatic shotgun with scope, Exh 16; .20 gauge

38

Remington, Exh 23; (A-218-220). All of the weapons were used for hunting purposes. (A-220) She also stored several of her son's firearms at the residence: H & R .410 shotgun, Exh 20; .22 caliber rifle, Exh 25 (A-218-220). Mullins bought much of the ammunition which was in the house on sale at Boscov's, where she was an employee and could get a substantial discount. (A-229) The Defendant's children, Henry Glanding III, age twelve, and Frances Glanding, age nine, would come to visit on alternating weekends, when Henry III would shoot one of the rifles. (A-220-221) The Defendant and Mullins held the guns for Henry III because his aunt with whom he is living wouldn't let Henry III keep his guns at her house. (A-227) Mullins testified that there were some problems in her relationship with the defendant from time to time, which resulted in her leaving the residence overnight seven or eight times. (A-222-223)

The Defendant, Henry Glanding, Jr., testified and stated that he resided at 829 Lion Hope Road. (A-233) His son, Henry III, also resided with him on alternate weekends, on his birthday, for holidays and for extended periods during the summer. (A-233) Different caliber weapons are favored by different shooters: .12 gauge weapons are bigger person's guns, .20 and .410 gauge are used by women and youth. (A-233-234) Mullins' son also shot some of the guns in the house. (A-234)

39

Henry III received one of his guns as a Christmas present from the Defendant's friend, Marty Allen. (A-234) Exhibit 14, .22 caliber Marlin semiauto rifle belonged to Henry III. (A-235) Defendant acknowledged owning some of the weapons found in the residence, black powder rifles, shotguns and two pistols. (A-235) Mullins brought some guns with her when she moved into the residence. (A-235-236) The guns that Mullins identified as hers did not belong to the Defendant. (A-236) The ten firearms which Mullins did not identify as hers belonged to the Defendant and / or his son, Henry III. (A-237-238) Henry III would use the guns when he came to the residence. (A-238) Of the three weapons found in the washroom, one belonged to Mullins, one belonged to her son, and one belonged to the Defendant's son. (A-238-239)

## SIGNIFICANT APPLICATIONS AND RULINGS

Defendant objected to the testimony of Detective Short, that
the probative value of his testimony would be unfairly
prejudicial under 404(b), as he would potentially testify to
would be based on hearsay.  Court overruled objection.  (A-109-
110)

Defendant objected to the testimony of Sergeant Kracyla, as
it would touch on matters which would prove prejudicial under
404(b), raising the question in the minds of the jurors of why
such overwhelming force was required to stop and detain the
Defendant.  Court overruled objection.  (A-131-132)

Defense objected to the proposed testimony of Sergeant
Kracyla, as it would touch on him and his Special Operations
Response Team going to the residence to "clear" it, again,
raising the question in the minds of the jurors of why such
overwhelming force was required.  The Court overruled the
objection and allowed the testimony as "background information."
(A-140-141)

The Defense objected to the introduction of a photograph,
State's ID "D", of a large accumulation of items on a coffee
table.  The State asserted the intention to introduce the
photograph as a part of a set of photographs showing letters
found in the residence bearing the Defendant's name and addressed

44

to him at the residence where the search warrant was executed.
(A-149-153)

Defense objected to testimony by police officer, Calloway,
as to his awareness of exclusion under law for convicted felons
to possess firearms. Sustained by Court. (A-171-172)

Defense had raised concern to presentation of any evidence
which would in any way show association of Defendant with Pagans
Motorcycle gang. State agreed to limit its presentation of
evidence to avoid reference to Pagans. (A-181-185)

State requested leave to show ammunition to jury, then
introduce photographs of ammunition into evidence. Court allowed
that procedure. (A-185-186)

State objected to any presentation of evidence by defense
that the Defendant was unaware that he was a Person Prohibited
from owning or possessing a firearm or firearm ammunition. The
Court ruled that knowledge by Defendant that he was a person
prohibited was irrelevant. (A-230-232)

Court ruled that there was no evidence that ammunition found
at the scene was capable of being fired. Judgment of acquittal
was entered on the charge of Possession of Firearm ammunition by
a Person Prohibited. (A-242-248)

42

## SENTENCE

As to IK01-10-0159:  PFBPP

The Defendant is placed in the custody of the Department of
Correction for 2 year(s) at supervision level 5.

- Suspended after serving 1 year(s) at supervision level 5

- For 1 year(s) supervision level 3

As to IK01-10-0160:  PFBPP

The Defendant is placed in the custody of the Department of
Correction for 2 year(s) at supervision level 5.

- Suspended after serving 1 year(s) at supervision level 5

- For 1 year(s) supervision level 3

Probation is consecutive to criminal action number IK01-10-0159

As to IK01-10-0161:  PFBPP

The Defendant is placed in the custody of the Department of
Correction for 2 year(s) at supervision level 5.

- Suspended after serving 1 year(s) at supervision level 5

- For 1 year(s) supervision level 2

Probation is consecutive to criminal action number IK01-10-0160

As to IK01-10-0162:  PFBPP

The Defendant is placed in the custody of the Department of
Correction for 2 year(s) at supervision level 5.

- Suspended after serving 1 year(s) at supervision level 5

- For 1 year(s) supervision level 2

Probation is consecutive to criminal action number IK01-10-0161

As to IK01-10-0163:  PFBPP

The Defendant is placed in the custody of the Department of
Correction for 2 year(s) at supervision level 5.

-   Suspended after serving 1 year(s) at supervision level 5

-   For 1 year(s) supervision level 2

Probation is consecutive to criminal action number IK01-10-0162

As to IK01-10-0164:  PFBPP

The Defendant is placed in the custody of the Department of
Correction for 2 year(s) at supervision level 5.

-   Suspended after serving 1 year(s) at supervision level 5

-   For 1 year(s) supervision level 2

Probation is consecutive to criminal action number IK01-10-0163

As to IK01-10-0165:  PFBPP

The Defendant is placed in the custody of the Department of
Correction for 2 year(s) at supervision level 5.

-   Suspended after serving 1 year(s) at supervision level 5

-   For 1 year(s) supervision level 1

Probation is consecutive to criminal action number IK01-10-0164

As to IK01-10-0166:  PFBPP

The Defendant is placed in the custody of the Department of
Correction for 2 year(s) at supervision level 5.

-   Suspended after serving 1 year(s) at supervision level 5

    - For 1 year(s) supervision level 1

Probation is consecutive to criminal action number IK01-10-0165

As to IK01-10-0167:  PFBPP

The Defendant is placed in the custody of the Department of

Correction for 2 year(s) at supervision level 5.

    - Suspended after serving 1 year(s) at supervision level 5

    - For 1 year(s) supervision level 1

Probation is consecutive to criminal action number IK01-10-0166

As to IK01-10-0168:  PFBPP

The Defendant is placed in the custody of the Department of

Correction for 2 year(s) at supervision level 5.

    - Suspended after serving 1 year(s) at supervision level 5

    - For 1 year(s) supervision level 1

Probation is consecutive to criminal action number IK01-10-0166

As to IK01-10-0169:  PFBPP

The Defendant is placed in the custody of the Department of

Correction for 2 year(s) at supervision level 5.

    - Suspended after serving 1 year(s) at supervision level 5

    - For 1 year(s) supervision level 1

Probation is consecutive to criminal action number IK01-10-0166

As to IK01-10-0170:  PFBPP

The Defendant is placed in the custody of the Department of

Correction for 2 year(s) at supervision level 5.

- Suspended after serving 1 year(s) at supervision level 5

- For 1 year(s) supervision level 1

Probation is consecutive to criminal action number IK01-10-0166

As to IK01-10-0171:   PFBPP

The Defendant is placed in the custody of the Department of Correction for 2 year(s) at supervision level 5.

- Suspended after serving 1 year(s) at supervision level 5

- For 1 year(s) supervision level 1

Probation is consecutive to criminal action number IK01-10-0166

As to IK01-10-0172:   PFBPP

The Defendant is placed in the custody of the Department of Correction for 2 year(s) at supervision level 5.

- Suspended after serving 1 year(s) at supervision level 5

- For 1 year(s) supervision level 1

Probation is consecutive to criminal action number IK01-10-0166

As to IK01-10-0173:   PFBPP

The Defendant is placed in the custody of the Department of Correction for 2 year(s) at supervision level 5.

- Suspended after serving 1 year(s) at supervision level 5

- For 1 year(s) supervision level 1

Probation is consecutive to criminal action number IK01-10-0166

POINTS THE DEFENDANT WISHES THE COURT TO CONSIDER

RECEIVED
SEP 2 0 2002
BY: _____

Lloyd Schmid                                    9-17-02
No# 236-2002

This LETTER is iN REFERANCE To A Appeal
I filed oN May 13. 2002 No# 236-2002. SeNCE
then my AtterNey Lloyd Schmid JR has
iNFoRmed me that he is goiNg To withdrawL FRom
my Appeal MotioN ANd file A Rule 26-c. BuT yet
he STill waNTs To haNdLe my peNdiNg case. I
doNT uNdeRsTaNd oR Like that FACT. IT seems
To me SeNce he is withdrawLing FRom my Appeal
becuse he says he caNT FiNd ANd grouNds
To Appeal oN - How caN he haNdLe my secouNd
case wheN iT is the secouNd haPe oF my
FiRST case? He had my case SevereD.
MR Schmid Told me To wRiTe ANy poiNTs
I have that I wish the couRT To coNsideR
ANd seNd them To him. I have doNe that
Now, buT seNce I doNT REALLy TRusT him
I Am Also seNding this LetteR To the
couRT.

41

Henry W Glanding Jr.
S.B.I. 00132504 D.C.C.

1.  When I first obtained Mr. ~~San~~ Schmid as my lawyor, I ask him to help me get a Motion of Suppression of Evidence heard in court, that I had filed! He pretty much told me No.

2.  To this day Mr. ~~Schm~~ Schmid has yet sat down with me and ask me to tell him what happened on 5-11-01. The day of my arrest.

3.  Then before my trial started Mr. Schmid told me he was going to have my case severed. We went in fround of a Judge for a Hearing. Witch I beleved was to sever my case. I just found out, 3 weeks ago that it was a Suppression Hearing. While in that hearing the matter of the police searching my truck while it was on a public road, without a search warrant for that vehicale. Sence the search warrant thay did have stated it was for my house, out building's and vehicales on the property. My truck was on a public road so there search warrant should not be valid for my vehicale. The Judge ask Mr. Schmid if he had any case laws to back that

48

up. And being A Suppression heaeing
he should of had those case Laws. But he
didut. So the Judge Alowed the Seaech
Waeeant foe my house and peopeety To
be good foe the seaech of my vehicle
while it was on a public eoad.
④ Then the copy of the Affidavit of Peobable
cause that I have dose not have,
the Officees oe Judges Signatuees on it
oe A Couet Seal. Me. Schmid Tells
me its becuse its a copy.. I say it's
becuse the one that is signed and sealed
is diffecant from the one I have. Me.
Schmid Tells me he cant get me a copy
of the one that has signatuees and a
seal!
5. Then when the D.A. was insteucting
the ~~Judge~~ Juey on seetain mattees
thay Told them that it didnt mattee
weathee I new I was beeaking a Law
oe not, and it dose.
6. Then when I was haveing a Suppeession
heaeing the police oe D.A. Nevee Told
me oe Me Schmid oe the couet that,
when thay Tested the Methamphetamine it
came back negative. If I had of new
that at that Time I would of nevee

49

Agreed To Sever my case!

7. then Ive Ask Mr. Schmid To get me copys of different paper work of my case but its usally After it can ever do me Any good. Ive sent my mother And other Relitives. To The court house To The Records office To get copys of paper work for me but Thay Are Told thay cant get it by the Public Records office.

8) I Ask the Court To Leave my Appeal Motion filed even if Mr. Schmid withdrawls As my Atterney. I have Just put my house And other things up for sale so I can obtain A private Atterney Again.

## CONCLUSION

Wherefore, a judgement of this Court is sought upon the basis of the facts and authorities recited herein.

Respectfully submitted,

Lloyd A. Schmid, jr., Esquire
Assistant Public Defender

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR KENT COUNTY

STATE OF DELAWARE

    VS.

HENRY W GLANDING

Alias: See attached list of alias names.

DOB: 11/15/1956
SBI: 00132504

CASE NUMBER:
0105009486A

CRIMINAL ACTION NUMBER:
IK01-10-0159
PFBPP(F)
IK01-10-0160
PFBPP(F)
IK01-10-0161
PFBPP(F)
IK01-10-0162
PFBPP(F)
IK01-10-0163
PFBPP(F)
IK01-10-0164
PFBPP(F)
IK01-10-0165
PFBPP(F)
IK01-10-0166
PFBPP(F)
IK01-10-0167
PFBPP(F)
IK01-10-0168
PFBPP(F)
IK01-10-0169
PFBPP(F)
IK01-10-0170
PFBPP(F)
IK01-10-0171
PFBPP(F)
IK01-10-0172
PFBPP(F)
IK01-10-0173
PFBPP(F)

## SENTENCE ORDER

NOW THIS 23RD DAY OF APRIL, 2002, IT IS THE ORDER OF THE
COURT THAT:

The defendant is adjudged guilty of the offense(s) charged.
The defendant is to pay the costs of prosecution and all
statutory surcharges.

23April      2002                    52                    12:21

STATE OF DELAWARE
      VS.
HENRY W GLANDING
DOB: 11/15/1956
SBI: 00132504

AS TO IK01-10-0159 : TIS
PFBPP

Effective May 12, 2001  the defendant is sentenced
as follows:

The defendant is placed in the custody of the Department
of Correction for 2 year(s) at supervision level 5

 - Suspended after serving 1 year(s)  at supervision level 5

 - For 1 year(s)  supervision level 3


AS TO IK01-10-0160 : TIS
PFBPP

The defendant is placed in the custody of the Department
of Correction for 2 year(s) at supervision level 5

 - Suspended after serving 1 year(s)  at supervision level 5

 - For 1 year(s)  supervision level 3

Probation is consecutive to criminal action number
IK01100159


AS TO IK01-10-0161 : TIS
PFBPP

The defendant is placed in the custody of the Department
of Correction for 2 year(s) at supervision level 5

 - Suspended after serving 1 year(s)  at supervision level 5

 - For 1 year(s)  supervision level 2

Probation is consecutive to criminal action number
IK01100160

STATE OF DELAWARE
         VS.
HENRY W GLANDING
DOB: 11/15/1956
SBI: 00132504

AS TO IK01-10-0162 : TIS
PFBPP

The defendant is placed in the custody of the Department
of Correction for 2 year(s) at supervision level 5

 - Suspended after serving 1 year(s)  at supervision level 5

 - For 1 year(s)  supervision level 2

 Probation is consecutive to criminal action number
IK01100161

AS TO IK01-10-0163 : TIS
PFBPP

The defendant is placed in the custody of the Department
of Correction for 2 year(s) at supervision level 5

 - Suspended after serving 1 year(s)  at supervision level 5

 - For 1 year(s)  supervision level 2

 Probation is consecutive to criminal action number
IK01100162

AS TO IK01-10-0164 : TIS
PFBPP

The defendant is placed in the custody of the Department
of Correction for 2 year(s) at supervision level 5

 - Suspended after serving 1 year(s)  at supervision level 5

 - For 1 year(s)  supervision level 2

 Probation is consecutive to criminal action number
IK01100163

STATE OF DELAWARE
      VS.
HENRY W GLANDING
DOB: 11/15/1956
SBI: 00132504

AS TO IK01-10-0165 : TIS
PFBPP

The defendant is placed in the custody of the Department
of Correction for 2 year(s) at supervision level 5

- Suspended after serving 1 year(s)  at supervision level 5

- For 1 year(s)  supervision level 1

Probation is consecutive to criminal action number
IK01100164

AS TO IK01-10-0166 : TIS
PFBPP

The defendant is placed in the custody of the Department
of Correction for 2 year(s) at supervision level 5

- Suspended after serving 1 year(s)  at supervision level 5

- For 1 year(s)  supervision level 1

Probation is consecutive to criminal action number
IK01100165

AS TO IK01-10-0167 : TIS
PFBPP

The defendant is placed in the custody of the Department
of Correction for 2 year(s) at supervision level 5

- Suspended after serving 1 year(s)  at supervision level 5

- For 1 year(s)  supervision level 1

Probation is consecutive to criminal action number
IK01100166

STATE OF DELAWARE
    VS.
HENRY W GLANDING
DOB: 11/15/1956
SBI: 00132504

AS TO IK01-10-0168 : TIS
PFBPP

The defendant is placed in the custody of the Department
of Correction for 2 year(s) at supervision level 5

- Suspended after serving 1 year(s) at supervision level 5

- For 1 year(s)  supervision level 1

Probation is concurrent to criminal action number
IK01100166 .

AS TO IK01-10-0169 : TIS
PFBPP

The defendant is placed in the custody of the Department
of Correction for 2 year(s) at supervision level 5

- Suspended after serving 1 year(s)  at supervision level 5

- For 1 year(s)  supervision level 1

Probation is concurrent to criminal action number
IK01100166 .

AS TO IK01-10-0170 : TIS
PFBPP

The defendant is placed in the custody of the Department
of Correction for 2 year(s) at supervision level 5

- Suspended after serving 1 year(s)  at supervision level 5

- For 1 year(s)  supervision level 1

Probation is concurrent to criminal action number
IK01100166 .

23April    2002                    56                    12:21

STATE OF DELAWARE
     VS.
HENRY W GLANDING
DOB: 11/15/1956
SBI: 00132504

AS TO IK01-10-0171 : TIS
PFBPP

The defendant is placed in the custody of the Department
of Correction for 2 year(s) at supervision level 5

- Suspended after serving 1 year(s)  at supervision level 5

- For 1 year(s)  supervision level 1

Probation is concurrent to criminal action number
IK01100166 .

AS TO IK01-10-0172 : TIS
PFBPP

The defendant is placed in the custody of the Department
of Correction for 2 year(s) at supervision level 5

- Suspended after serving 1 year(s)  at supervision level 5

- For 1 year(s)  supervision level 1

Probation is concurrent to criminal action number
IK01100166 .

AS TO IK01-10-0173 : TIS
PFBPP

The defendant is placed in the custody of the Department
of Correction for 2 year(s) at supervision level 5

- Suspended after serving 1 year(s)  at supervision level 5

- For 1 year(s)  supervision level 1

Probation is concurrent to criminal action number
IK01100166 .

## SPECIAL CONDITIONS BY ORDER

STATE OF DELAWARE
          VS.
HENRY W GLANDING
DOB: 11/15/1956
SBI: 00132504

                    CASE NUMBER:
                    0105009486A


Obtain and remain gainfully employed.


Forfeit weapons seized


Have no drugs/alcohol during period of sentence unless
medically prescribed.


Submit to random urinalysis or such other drug testing as
deemed appropriate.

### NOTES
As to IK01-10-0159 through IK01-10-0173:

Pursuant to statute, a one (1) year minimum sentence, at
Level V, is required on each charge.

While at Level V, the defendant shall participate in the
PreRelease Program. He shall also undergo a substance
abuse evaluation and participate in any treatment,
counseling or testing deemed appropriate by the
Classification Department at DOC. He shall also
participate in any other programs deemed appropriate by
the Classification Department at DOC.

SPECIAL CONDITIONS:

The DOC shall notify this Court immediately if any aspect
of this sentence order cannot be lawfully fulfilled.

The defendant shall pay all monies owed in this case via a
schedule established by his Probation Officer.


                    JUDGE HENRY DUPONT RIDGELY

FINANCIAL SUMMARY

STATE OF DELAWARE
        VS.
HENRY W GLANDING
DOB: 11/15/1956
SBI: 00132504

                        CASE NUMBER:
                        0105009486A


SENTENCE CONTINUED:

TOTAL DRUG DIVERSION FEE ORDERED

TOTAL CIVIL PENALTY ORDERED

TOTAL DRUG REHAB. TREAT. ED. ORDERED

TOTAL EXTRADITION ORDERED

TOTAL FINE AMOUNT ORDERED

FORENSIC FINE ORDERED

RESTITUTION ORDERED

SHERIFF, NCCO ORDERED

SHERIFF, KENT ORDERED                    345.00

SHERIFF, SUSSEX ORDERED

PUBLIC DEF, FEE ORDERED                   50.00

PROSECUTION FEE ORDERED                   80.00

VICTIM'S COM ORDERED

VIDEOPHONE FEE ORDERED                    15.00

_____

TOTAL                                    490.00

## LIST OF ALIAS NAMES

STATE OF DELAWARE
        VS.
HENRY W GLANDING
DOB: 11/15/1956
SBI: 00132504

                    CASE NUMBER:
                    0105009486A


HENERY W GLANDING
HENERY W GLANDING
HENERY W GLANDING

## AGGRAVATING-MITIGATING

STATE OF DELAWARE
     VS.
HENRY W GLANDING
DOB: 11/15/1956
SBI: 00132504

                CASE NUMBER:
                 0105009486A


AGGRAVATING
REPETITIVE CRIMINAL CONDUCT
UNDUE DEPRECIATION OF OFFENSE
PRIOR VIOLENT CRIM. ACTIVITY

IN THE SUPREME COURT OF THE STATE OF DELAWARE

HENRY GLANDING,                          *
                                         *
                                         *    No. 236, 2002
        v.                               *
                                         *
STATE OF DELAWARE,                       *
                                         *
        Defendant.                       *

## CERTIFICATE OF SERVICE

BE IT REMEMBERED that on this $\underline{27^{th}}$ day of September,
2002, personally appeared before me, a Notary Public for the
State of Delaware, County of Kent, Tracy L. Huey, a Paralegal II,
employed in the Office of the Public Defender, Sykes Building, 45
The Green, Dover, Delaware 19901, who being by me duly sworn did
depose and state as follows:

1.   That she caused to be delivered,  two (2) copies of the
Appellant's Opening Brief Under Rule 26 (c), to John Williams,
Esquire, Department of Justice, 102 W. Water Street, Dover, DE
19901.

Tracy Huey

SWORN TO AND SUBSCRIBED by me the date and year aforesaid.

Notary Public/Attorney at Law

ATTORNEY AT LAW
WITH POWER TO ACT
AS NOTARY PUBLIC
PER 29 DEL C 4323 (A) (3)

62

RECIEVED  DEC. 16. 2002

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| HENRY GLANDING, | § | No. 236, 2002 |
| | § | Court Below—Superior Court |
| Defendant Below, | § | of the State of Delaware, in |
| Appellant, | § | and for Kent County in Cr. |
| | § | ID No. 0105009486A. |
| | § | |
| v. | § | |
| | § | |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: October 7, 2002
Decided: December 13, 2002

Before **WALSH, HOLLAND** and **BERGER**, Justices.

### ORDER

This 13th day of December 2002, upon consideration of the appellant's brief filed pursuant to Supreme Court Rule 26(c), counsel's motion to withdraw, and the State's response thereto, it appears to the Court that:

(1)    In October 2001, Glanding was reindicted by a grand jury for twenty-seven offenses. Sometime thereafter, the Superior Court granted Glanding's motion to sever sixteen charges: fifteen counts of Possession of a Deadly Weapon by a Person Prohibited and one count of Possession of

63

Ammunition by a Person Prohibited, from the other offenses. Glanding proceeded to trial on the sixteen severed charges.[1]

(2)    Prior to trial, the Superior Court held a suppression hearing on Glanding's motion to suppress. Glanding, in part, challenged the search of his Dodge Ram truck, contending that the warrantless search of the truck was impermissible, and that the search warrant, which included "any and all vehicles located on the property," did not include Glanding's truck because it was not "located on the property" at the time it was searched. The Superior Court denied the motion, finding that the search of the passenger compartment of Glanding's truck was contemporaneous with Glanding's arrest and was thus lawful. Moreover, the Superior Court found that the truck was a valid subject of the search warrant, even if was not "located on the property" at the time of the search, and that, in any event, the items found in the vehicle would have inevitably been discovered.

---

[1] Glanding is scheduled to go to trial on the remaining charges on December 16, 2002. *State v. Glanding*, Del. Super., Cr. ID No. 0105009486B.

(3)    At the two-day jury trial in March 2002, Glanding stipulated that he was a convicted felon.[2]  Glanding was convicted of fifteen counts of Possession of a Deadly Weapon by a Person Prohibited.    The Superior Court dismissed the charge of Possession of Ammunition by a Person Prohibited.  Glanding was sentenced to a total of thirty years at Level V imprisonment, suspended after fifteen years, for nine years of probation. This is Glanding's direct appeal.

4)    The evidence at trial reflects that on May 11, 2001, the Delaware State Police set up surveillance on the appellant's residence on Lion Hope Road in Clayton, Delaware, to observe the actions of the appellant prior to the police executing a search warrant at the appellant's residence.  Earlier in the day, the police had received information that the appellant, Henry Glanding, was wanted out of Maryland for several felony offenses, and that Glanding, who was a convicted felon with a reported violent history, was known to carry a firearm.   The police observed Glanding's residence from approximately 1:00 p.m. until about 8:30 p.m.

---

[2]Glanding pleaded guilty in 1980 to Possession with Intent to Deliver Methamphetamine. *State v. Glanding*, Del. Super., Cr. ID No. 80001340DI (Dec. 19, 1980).

residence.  The police located a number of firearms and ammunition in a safe in Glanding's living room and more guns in Glanding's laundry room.

8)    Glanding's defense counsel has filed a brief and a motion to withdraw pursuant to Supreme Court Rule 26(c).  The standard and scope of review applicable to the consideration of a motion to withdraw and an accompanying brief under Rule 26(c) is twofold.  First, the Court must be satisfied that defense counsel has made a conscientious examination of the record and the law for claims that could arguably support the appeal. Second, the Court must conduct its own review of the record and determine whether the appeal is so totally devoid of at least arguably appealable issues that it can be decided without an adversary presentation.[4]

9)    Glanding's counsel asserts that, based upon a complete and careful examination of the record, there are no arguably appealable issues. Glanding's counsel informed him of the provisions of Rule 26(c) and provided Glanding with a copy of the motion to withdraw and the accompanying brief.    Glanding also was informed of his right to supplement his attorney's presentation.    Glanding responded with a document that raises several issues for this Court's consideration.    The

---

[4]*Penson v. Ohio*, 488 U.S. 75, 83 (1988); *McCoy v. Court of Appeals of Wisconsin*, 486 U.S. 429, 442 (1988); *Anders v. California*, 386 U.S. 738, 744 (1967).

State has responded to the position taken by Glanding's counsel as well as the points raised by Glanding and has moved to affirm the Superior Court's decision.

10) Glanding raises five issues for this Court's consideration: (i) the search of his Dodge Ram truck was improper; (ii) the affidavit of probable cause was unsigned; (iii) the prosecutor erred when he argued to the jury that it did not matter whether or not Glanding knew he was breaking a law; (iv) Glanding would not have agreed to sever the charges if he'd known beforehand that the analysis of suspected methamphetamine that was seized from his truck was negative; and (v) ineffective assistance of counsel. Glanding's claims are without merit.

11) Glanding's first arguably appealable issue is that the search of his truck was improper. Glanding's claim is without merit. The Superior Court correctly determined that the warrantless search of the passenger compartment area of Glanding's truck was contemporaneous with Glanding's lawful arrest and was thus clearly authorized.[5]  Having concluded that the warrantless search of the passenger compartment of Glanding's truck was valid as a search incident to his lawful arrest, the

---

[5]*Traylor v. State*, 458 A.2d 1170, 1173-74 (Del. 1983) (citing *New York v. Belton*, 453 U.S. 454 (1981)).

Court need not address Glanding's allegation that the search warrant did not authorize a search of Glanding's truck once it left the property.

12)   Glanding's second arguably appealable issue is that the "affidavit of probable cause" is invalid because it was "unsigned." This claim was not presented in the Superior Court, and Glanding has not demonstrated plain error concerning the claim.[6]   Furthermore, at the suppression hearing, Glanding's counsel expressly conceded that he did not challenge the validity of the search warrant.[7]   In any event, the "affidavit of probable cause" that is Exhibit B to the Justice of the Peace Court arrest warrant, and the probable cause sheet that is attached to the search warrant, both are signed and both appear to have been properly executed. Glanding's claim is without merit.

13)   Glanding's third arguably appealable issue is that the prosecutor erred when he allegedly told the jury that it was not necessary for the State to prove that Glanding knew that he was a person prohibited from possessing a deadly weapon. This claim is without merit. Under title 11, section 1448(b) of the Delaware Code, a defendant is guilty of

---

[6]Supr. Ct. R. 8; *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986). Plain error is error that is "so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process." *Id.*
[7] H'rg Tr., Mar. 4, 2002, at 95.

Possession of a Deadly Weapon by a Person Prohibited when the defendant is a prohibited person who knowingly possesses a deadly weapon.[8] Thus, to be guilty of the offense, the defendant need only know that he or she possessed the weapon. Section 1448 does not require the defendant to know, as Glanding suggests, that it was criminal to do so.[9]

14) Glanding's fourth arguably appealable issue is that he would not have agreed to sever the charges if he had known beforehand that the substance that was seized from his truck would not test positive as methamphetamine, as was suspected. This claim was not presented in the Superior Court, and Glanding has not demonstrated plain error concerning the claim.[10] A decision to sever charges is within the sound discretion of the trial court and is not disturbed on appeal absent a showing of actual prejudice by the defendant.[11] In this case, Glanding has not sustained his burden of demonstrating that severing his deadly weapon possession charges from his other charges prejudiced his defense on the deadly weapon charges.

---

[8] Del. Code Ann. tit. 11, § 1448 (2001).
[9] *Kipp v. State*, 704 A.2d 839, 842 (Del. 1998).
[10] Supr. Ct. R. 8; *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).
[11] *Coffield v. State*, 794 A.2d 588, 595 (Del. 2002).

15)   In his fifth arguably appealable issue, Glanding raises claims of ineffective assistance of counsel.  This Court will not consider claims of ineffective assistance of counsel that are raised for the first time on appeal.[12]  In this case, Glanding did not raise his ineffective assistance of counsel claims in the Superior Court.  Accordingly, we will not consider the claims in this appeal.  Glanding, however, may raise his ineffective assistance of counsel claims in a motion for postconviction relief that is filed in the Superior Court.[13]

16)   This Court has reviewed the record carefully and has concluded that Glanding's appeal is wholly without merit and devoid of any arguably appealable issue.  We also are satisfied that Glanding's appellate counsel has made a conscientious effort to examine the record and has properly determined that Glanding could not raise a meritorious claim in this appeal.

---

[12] *Desmond v. State*, 654 A.2d 821, 829 (Del. 1994).
[13] Super. Crim. R. 61.

NOW, THEREFORE, IT IS ORDERED that the State's motion to affirm is GRANTED.    The judgment of the Superior Court is AFFIRMED. The motion to withdraw is moot.

BY THE COURT:

_Randy Holland_

Justice

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

STATE OF DELAWARE, )
)
v. )
) Superior Court ID No. 0105009486A4B
HENRY GLANDING, )
)
Defendant. )

## RULE 61 MOTION FOR POSTCONVICTION RELIEF

MICHAEL W. MODICA, ESQUIRE
Attorney for Defendant
715 King Street, Suite 300
P.O. Box 437
Wilmington, DE 19899

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

STATE OF DELAWARE,                )
                                  )
v.                                )
                                  )   Superior Court ID No. 0105009486A4B
HENRY GLANDING,                   )
                                  )
        Defendant.                )

## RULE 61 MOTION FOR POSTCONVICTION RELIEF

1. County in which you were convicted: Kent County

2. Judge who imposed sentence: Judge Henry Dupont Ridgley

3. Date sentence was imposed: April 23, 2002

4. Offense(s) for which you were sentenced and length of sentence(s): PFBPP (15 counts)- For each count, 2 years at Level 5 suspended after 1 year for 1 year probation. Total Level 5 amounts to 15 years followed by probation.

5. Do you have any sentence(s) to serve other than the sentence(s) imposed because of the judgment(s) under attack in this motion? YES. If "yes" give the following information: Name and location of court(s) which imposed the other sentence: Superior Court in and For Kent County, ID No. 0105009486B

6. What was the basis for the judgments of conviction? Verdict of Jury

7. Judge who accepted plea or presided at trial: Judge Henry Dupont Ridgely

8. Did you take the witness stand and testify? NO.

9. Did you appeal from the judgment of conviction? YES. Case number of appeal: 236, 2002 Date of Court's final order or opinion: January 3, 2003

10. Other than a direct appeal from the judgment(s) of conviction, have you filed any other motion(s) or petitions seeking relief from the judgment(s) in state or federal court? NO.

11. Give the name of each attorney who represented you at the following stages of the proceedings relating to the judgment(s) under attack in this motion:

14

At plea of guilty or trial:    Thomas Donovan
On appeal:                     Thomas Donovan

12.    Grounds for Post Conviction Relief:

Supreme Court- Findings of Fact

On May 11, 2001 Delaware State Police put surveillance on the Defendant's residence on Lion Hope Road in Clayton, Delaware to observe the actions of the defendant prior to the police executing a search warrant at his residence. Earlier in the day, the police had received information claiming that Defendant was wanted out of Maryland for several felony offenses, and that he was a convicted felon with a report violent history. He was known to carry firearms. The police observed Glanding's residence from approximately 1:00 p.m. until about 8:30 p.m. on May 11 and obtained the sign search warrant around 3:00 p.m. that day.

Between 5:00 p.m. and 8:30 p.m., the police observed a shirtless Glanding working around his yard with what appeared to be a revolver strapped to his waist. Out of concern for their safety, the police decided not to arrest Glanding at his residence, or to execute a search warrant, until Glanding was in his vehicle away from the residence.

At around 8:30 p.m., Glanding left his residence in his Dodge Ram truck and headed south on Lion Hope Road. Approximately one half mile away from the residence the police stopped Glanding using a "felony car jam" in which the police use several vehicles to box in Glanding's truck. Once Glanding's truck was boxed in, the police extracted him from the truck, placed him on the ground, handcuffed and searched him. The police then searched the passenger compartment of Glanding's truck. The police located a loaded 357 revolver in the console.

After Glanding was stopped and was otherwise occupied with his arrest, the police executed the search warrant at his residence. The police located a number of firearms in a safe in

Glanding's living room and more guns in his laundry room.

Glanding was convicted of 15 counts of Possession of a Deadly Weapon By a Person Prohibited. At trial he stipulated that he was a convicted felon having pled guilty in 1980 to Possession with Intent to Deliver Methamphetamine. Glanding was sentenced to a total of 30 years at level 5 imprisonment suspended after 15 years, for nine years of probation. Glanding v. State, Del. Supr., No. 236, 2002 (order)(12-13-2002). (Exhibit A).

76

## ARGUMENT I

**DEFENSE COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE DEFENDANT'S RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION BY FAILING TO CHALLENGE THE VALIDITY OF THE SEARCH WARRANT.**

Standard and Scope of Review for Ineffective Assistance of Counsel

In order to prove ineffective assistance of counsel, the defendant, in a post-conviction proceeding, must demonstrate that counsel's representation "fell below an objective standard of reasonableness, and that counsel's actions were prejudicial. There is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different." Skinner v State Del. Supr., 607 A.2d 1170 (1992), quoting Strickland v. Washington, 466 US 688 (1984). In applying the Strickland standard, there is a "strong presumption that the representation was professionally reasonable." Wright v. State, Del. Supr., 671 A.2d 1353 (1996).

## A.    Trial Counsel Was Ineffective By Failing to Contest the Validity of the Search Warrant.

Trial counsel has a duty to thoroughly review a search warrant and application to determine if probable cause for issuance of the search warrant exists within the four quarters of the warrant application and affidavit. Here, trial counsel was ineffective by failing to thoroughly review the warrant application and affidavit, expressly conceding "that he did not challenge the validity of the search warrant." Glanding v. State, Del. Supr., No. 236, 2002, Order (Dec. 13, 2002)

## 1.    Probable Cause For Issuance Of The Search Warrant Does Not Exist Within The Four Corners Of The Warrant Application And Affidavit.

Standard and Scope Of Review For Issuance of a Search Warrant

The trial court's decision finding that a search warrant was supported by probable cause is reviewed de novo to determine whether there was a substantial basis for finding a fair probability that evidence would be found at the place to be searched under the totality of the circumstances. Illinois v. Gates, 462 U. S. 213, 238 (1983). Probable cause for the issuance of a search warrant is limited to a review of the four corners of the search warrant affidavit. Jensen v. State, Del Supr., 482 A. 2d 105 (1984); Gardner v. State, Del Supr., 567 A.2d 404 (1989). The reviewing court must limit its inquiry to the facts considered by the judge who issued the warrant.

Merits

In order for a search warrant to be issued, probable cause for the issuance must be established. An application for search warrant must be supported by a sworn affidavit that on its face shows facts establishing probable cause to search. Probable cause to justify the issuance of a search warrant must be manifest at the time of the application to make the search. In other words, facts supporting probable cause cannot be stale. Jensen v. State, Del Supr., 482 A.2d 105 (1984).

Although a search may be based on information provided by a confidential informant, the determination of whether an informant's information is sufficient to support a finding of probable cause must be resolved by considering the "totality of the circumstances." Illinois v. Gates, 462 U. S. 213 (1983). In reliance upon Gates, the court in United States v. Hendricks, 743 F.2d 53 (9th Cir. 1984) cautioned "that courts must continue to conscientiously review the sufficiency of affidavits upon which warrants are issued." The reviewing court must determine whether there is

**78**

"substantial evidence in the record supporting the magistrate's decision to issue the warrant."
United States v. Davis, 714 F.2d 896 (9th Cir. 1983 ).

In Gates, the Supreme Court concluded that probable cause is determined through a "balanced assessment of the relative weights of the various indicia of reliability attendant on an informant's tip." However, an informant's veracity and basis for knowledge are among the elements within the "totality of circumstances" to be considered in determining whether, as a practical matter, there is a fair probability that contraband or evidence of a crime will be found in a particular location. The Court cautioned that an affidavit must still establish a "substantial" basis for the existence of probable clause and "wholly conclusory statements" and "their conclusions" do not support the finding.

The preclusion against relying upon "wholly conclusory statements" and "their conclusions" applies to statements by informants. Under the "totality of circumstances" test, the magistrate making the probable cause determination must have an independent basis for determining the reliability of a confidential informant other than the bald assertion of reliability by the police officer. Conclusory allegations about past performance of an informant are not sufficient to verify the informant's reliability. For example, a showing that the confidential informant has provided information that led to arrests and/or convictions in the past is some verification of his reliability. In other words, an issuing magistrate must have a basis for justifying whether the officer's characterization of the informant's performance is justified.

Even if there is sufficient information to establish the informant's past reliability, the affidavit should establish the informant's basis for knowledge supporting the conclusions attributed to the informant. The basis of knowledge inquiry includes whether the informant's conclusion is based upon first-hand knowledge or hearsay.

In <u>Garner v. State</u>, Del Supr., 314 A 2d 908 (1973), the Delaware Supreme Court addressed the issue of what constitutes reliability:

> To measure something as elusive of concrete definition as "reliability," is, of course, a difficult task; boundaries of the term cannot be drawn with any degree of precision. It is certain, however, that a bare statement of the belief of the police officer, as to the reliability of an unnamed informant and the truthfulness of his statements, is not sufficient basis for a judicial accreditation of the report of such informant as "reliable" within the constitutional guarantee. <u>United States v. Harris</u>, 403 U. S. 573 (1971).

Similarly, a bare statement that the informant information came from a "creditable source" is insufficient. <u>Spinelli v. U.S.</u>, 393 U.S. 410 (1969).

For instance, in <u>United States v. Redrick</u>, 90 F.3d 1276 (7th Cir. 1996), it was held that an officer's statement "that the informant provided reliable information in the past" is an unsupported conclusion which does not demonstrate probable cause. In <u>State v. Transou</u>, Tenn. App., 928 S. W. 2d 949 (1996), the contention that the informant "has proved reliable in the past "was held to be insufficient because of the lack of explanatory facts. In <u>State v. Valentine</u>, Tenn. Supr., 911 S. W. 2d 328 (1995), the reference to an informant as a "reputable and reliable person" was determined to be an "insufficient conclusory statement." In <u>State v. Lillie</u>, W. Va. Supr., 461 S.E. 2d 101 (1995) the characterization of an informant as a "reliable confidential informant" was held insufficient and not entitled to credit.

The information contained in the search warrant application and affidavit in this case (Exhibit B) fails to meet the totality of circumstances test for the following reasons:

a) **the conclusory statements regarding the reliability of each informant was insufficient to establish their respective reliability;**

b) **there was insufficient factual basis to credit the information provided by each confidential informant;**

c) **the probable clause affidavit was based upon conclusory language, information with out sufficient factual foundation, and stale information, which did not meet the probable cause test.**

**The conclusory statements regarding the reliability of each informant was insufficient to establish their respective reliability.**

The search warrant application in this case referred to three separate confidential informants to support probable cause for the search warrant. The police did not refer to confidential informant #1 as an informant who has provided information which has led to arrests and/or convictions in the past, or that he was otherwise reliable. There is no information that this informant provided reliable information in the past or any other facts demonstrating that he should be accepted as reliable. The court cannot give any credit to the statements of this informant because there are no facts or history to support a finding of his reliability. Since there is no information to support the reliability of this informant, there is no basis to give credit to any of his information.

Confidential informant #2 is referred to as a "past proven reliable individual who has provided drugs and criminal information to the Delaware State Police in the past and that the information provided was determined to be true and correct." It is significant that the officer is unable to say that this confidential informant has provided information that has led to arrests and/or convictions. There is no information about the frequency, duration or recency of the information provided by this informant in the past. While the information provided about this informant is stronger than for confidential informant #1, it still falls short of meeting the test to support a finding of reliability.

Confidential informant #3 is referred to as a "past proven reliable individual and has assisted the Delaware State Police with drug related investigations which resulted in the arrests

8 ₁

and convictions of drug dealers." This statement more closely approaches the information needed to assess the reliability of the confidential informant.

**There was insufficient factual basis to credit the information provided by each confidential informant.**

When a search warrant is based on the tips of informants, as in this case, the proper analysis is whether probable cause exists from the totality of the circumstances to determine a sufficient level of reliability of the informant, and the basis of knowledge for his information. Thus, even if a confidential informant has a prior history of reliability, the court must still assess whether the information provided by the informant is credible. Some factors that help determine whether a court had sufficient information in the record before it to issue a warrant are as follows:

1. Whether the informant made firsthand observations;

2. The degree of detail the informant provided;

3. Whether the police corroborated the informant's story with independent investigation;

United States v. McKinney,143 F 3d 325, 328 (7th Circuit 1998).

The information provided by confidential informant #1 does little to establish the factual basis of the information he provided. First, the statement that the defendant "is a distributor of methamphetamine and is known to sell that drug at a bar in Maryland" is a conclusory statement not supported by firsthand observation. There is simply no information establishing this informant's basis for his knowledge. Second, the statement that the defendant has a nickname of "hardhead", and is a member of an outlaw motorcycle club known as the "Pagans" is not information that advances the probable cause test. A person's nickname, and affiliation with a motorcycle club, are not relevant factors in the probable cause equation. Furthermore,

82

membership in the Pagans is meaningless as it is not illegal to be a Pagan. Conversely, there is no basis to conclude that all Pagans are criminals. In short, membership in the Pagans is a red herring since mere membership in this club is not sufficient for a finding of probable cause. Thus, the information provided by confidential informant #1 is not creditable because of the lack of factual basis for the information provided, as well as the nature of the information provided.

The information provided by confidential informant #2 is also flawed. This informant stated that he observed the defendant distribute large quantities of methamphetamine to numerous subjects attending a party, and that he is a distributor of methamphetamine. While the informant provided this information to the police in March, 2001, the informant did not state the time frame of the party where he allegedly observed the defendant engaged in illegal drug activity. Did he observe this activity a week, month or a year ago? It is well-established that the time frame of information provided by the confidential informant is crucial since probable clause cannot be established by stale information. Here, the claim that the defendant allegedly sold drugs at a party cannot be given any weight he since the informant did not provide the time frame when it allegedly occurred. Furthermore, the statement that the defendant's nickname is hardhead, and that he is a member of the Pagans, does nothing to advance the probable cause argument.

· Confidential informant #3 made conclusory statements that the defendant is a distributor of methamphetamine and cocaine, and that he has purchased drugs from him several times in the past, and has observed over 50 sales of methamphetamine within the last year, many of which have occurred within the last couple of months. While the information provided by this informant is stronger, because it is allegedly based upon firsthand observation, it still is diminished by the lack of a precise time frame of the illegal activity. Furthermore, he does not

provide any basis to conclude that drugs would **currently** be located at Glanding's residence since the only time he observed drugs at that location was when he purchased drugs from Glanding "in the past". Since the informant does not provide a specific time frame for when he "allegedly" purchased drugs from Glanding at his residence, there is no basis to conclude that drugs would **currently** be found at his residence. Lastly, the informant does not state that his observations of "over 50 sales of methamphetamine within the last year" occurred at Glanding's residence. While this informant does provide more specific information about the time frame of his observations of the defendant, the defective information aforementioned is not credible information supporting probable cause.

**The probable clause affidavit was based upon conclusory language, information without sufficient factual foundation, and stale information which did not meet the probable cause test.**

As stated above, the information provided by the three confidential informants was not worthy of credit because it was based upon information from informants with questionable reliability, was conclusory, and did not include sufficient factual detail to support their respective reliability and assertions.

The balance of the affidavit of probable clause is similarly flawed. The defendant's criminal history is not relevant because it is not sufficient to establish probable clause. The defendant's criminal history is improperly included to lead the judge to conclude that because Glanding committed crimes in the past, he was probably committing the crime that he was currently being investigated for. The defendant's criminal history is not a factor to be considered in determining whether an individual is currently committing a crime. Thus, this information was prejudicial and improperly infected the probable cause assessment.

84

The statement that McGee's Bar, located in Maryland, is a distribution center for methamphetamine, and that it is frequented by numerous members of the Pagan motorcycle club, adds nothing to the assertion that drugs would currently be located in the defendant's residence.

The probable cause affidavit also contains stale information which should not have been considered by the court. This information includes allegations that the defendant was involved in illegal drug activity in 1993, approximately 8 years prior to this investigation.

Lastly, the affidavit reiterates and re-emphasizes the allegations that Glanding is a member of the Pagan motorcycle club, as if it were a crime to be a member of the club. Of course, it is not illegal to be a member of the Pagan motorcycle club, therefore it is not sufficient to conclude that if you are a member of the Pagans, that there is probable cause to believe that you are probably committing a crime.

**2.     The search warrant and application are defective.**

The search warrant is defective on its face, under any scenario. Pursuant to 11 Del. C. § 2310 (a), the police have used the statutory form "search warrant," which is required to state with specificity, that he has reason to believe that a particular place **or location** contains contraband or evidence of a crime. In this case, the actual search warrant never listed 829 Lion Hope Road, as a specific location to be searched. The search warrant is blank following the paragraph.... "as I am satisfied that there is probable cause to believe that a certain property, namely." The failure to list the residence following that paragraph is a fatal flaw rendering the search warrant defective. Furthermore, the reference to addendum #1 does not salvage the search warrant as the addendum does not list the defendant's residence.

**3.     The warrant was so facially deficient that the executing officer did not have a good-**

**faith basis to presume that it was valid.**

In <u>United States v. Leon</u>, 468 US 897 (1984), the Court held that the exclusionary rule should not be applied when the officer conducts the search in objectively reasonable reliance on a warrant issued by the detached neutral magistrate that is subsequently determined to be invalid. However, the Court held that suppression remained an appropriate remedy when a warrant is so facially deficient that the executing officer cannot reasonably presume it to be valid.

Here, the executing officer was unreasonable in relying upon the warrant to search Glanding's residence. The affidavit did not contain reliable information demonstrating a current probability that drugs would be found in the residence. Furthermore, since the actual search warrant did not properly identify Glanding's residence as a place to be searched, the warrant was facially deficient. Therefore, the good-faith exception does not apply to salvage the legality of the search.

Lastly, the good-faith exception does not apply to the Delaware Constitution. <u>Dorsey v. State</u>, 761 A.2d 807 (2000). (State exclusionary rule requires suppression of evidence seized when warrant was issued without probable clause, regardless of the good-faith of the police.)

## ARGUMENT II

**THE STATE DID NOT PROVE THE ELEMENTS OF 11 DEL. C. §1448(b) BECAUSE IT DID NOT SHOW THAT THE DEFENDANT USED OR ATTEMPTED TO USE FIREARMS TO CAUSE DEATH OR SERIOUS PHYSICAL INJURY.**

**A Firearm Does Not Constitute A Deadly Weapon Unless It Is Used Or Is Attempted To Be Used To Cause Death Or Serious Physical Injury.**

11 Del. C. §1448(b), entitled Possession and Purchase of Deadly Weapons by Persons

Prohibited, provides, in pertinent part:

> Any prohibited person as set forth in Subsection A of this section, who knowingly possesses, purchases, owns, or controls a deadly weapon or ammunition for a firearm is also prohibited, shall be guilty of Possession of a Deadly Weapon or Ammunition for a Firearm by a Person Prohibited.

A "deadly weapon" is defined in pertinent part under 11 Del. C. §222(5) as follows:

> A deadly weapon includes a firearm, as defined in Subdivision 11 of this section..., **which is used, or attempted to be used, to cause death or serious physical injury.**

Defendant contends that well-established principles of statutory construction support the

interpretation that a firearm must be used, or attempted to be used, to cause death or serious

physical injury before it can constitute a deadly weapon in violation of 11 Del. C. §1448(b). In

other words, a "firearm" only meets the definition of "deadly weapon" when it is "used, or

attempted to be used, to cause death or serious physical injury."

When a statute is ambiguous, e.g., either opaque or susceptible to alternative conflicting

interpretations, the Court will seek guidance from "extrinsic aids," e.g., a legislative history. If

the legislative history and purpose are also ambiguous, the Court may resort to "intrinsic aids,"

such as technical rules of statutory construction.

Delaware recognizes the "last antecedent rule." Matter of Surcharge Classification 0133,

Del. Super., 655 A.2d 295. (footnote 9)(1994). It is a rule of grammatical construction that separation of a qualifying phrase from antecedents by a comma, evidences an intent that the phrase applied to all antecedents instead of solely to the immediately preceding one. Winters v. Township of Voorhees, N.J. Super., 726 A.2d 1013, 1016 (1998).

It is also a principle Delaware law that criminal statutes that provide for enhanced penalties are highly penal and as a consequence must be strictly construed. Kane v. State, Del. Supr., 327 A.2d 744 (1974).

Thus, under accepted rules of statutory construction, the phrase "which is used, or attempted to be used, to cause death or serious physical injury" applies to all antecedents instead of solely to the immediately preceding one. In other words, the subject phrase applies to require that a "firearm" be used or attempted to be used to cause death or serious physical injury before it can constitute a deadly weapon under the Delaware Code.

The trial court erred by its interpretation that a firearm constituted a deadly weapon without requiring proof that it was used or attempted to be used to cause death or serious physical injury. The trial court also erred by providing an erroneous jury instruction of the definition of deadly weapon.

Lastly, 11 Del. C. §1448(b), in conjunction with 11 Del. C. §222(5) is unconstitutionally vague in violation of the defendant's state and federal constitutional due process rights. Consequently, the statute is void for vagueness because it does not provide fair warning of its application or minimal standards to govern its enforcement. In re, Shylish, 743 U.S. 165 (1999).

In short, there was insufficient evidence to find the defendant guilty of PDWBPP since there was a complete absence of any evidence that he "used or intended to use [firearms] to cause death or serious physical injury." In other words, defendant's mere possession (actual or

*88*

constructive) of firearms is insufficient to establish a violation of 11 Del. C. §1448(b).
Furthermore, since the court erred in interpreting the statute, and provided an erroneous jury
instruction, the defendant was deprived of a fair trial in violation of his state and federal
constitutional due process rights. Next, since the subject statutes are unconstitutionally vague,
defendant's convictions must be vacated because §1448(b) is unconstitutionally void for
vagueness.

Lastly, defense counsel was ineffective by failing to object to the court's interpretation of
11 Del. C. §222(5) and §1448(b), by failing to object to the erroneous jury instruction, by failing
to move for dismissal based upon the absence of evidence supporting the offense, by failing to
object to the constitutionality of §1448(b), and by failing to raise these issues on direct appeal.

**WHEREFORE,** Movant asks that the court grant him all relief to which he may be
entitled in this proceeding. Movant is seeking the following:

1.      Fact Finding Hearing and/or oral argument
2.      Order reversing his convictions

Respectfully Submitted

MICHAEL W. MODICA, ESQUIRE
Attorney for Henry Glanding
P.O. Box 437
Wilmington, DE 19899

11/17/04
Date Signed

(NOTE: Defendant reserves the right to amend/supplement this motion.)

11 - 19 - 04

## AFFIDAVIT OF MAILING

STATE OF DELAWARE )
                        ) SS.
NEW CASTLE COUNTY )

      BE IT REMEMBERED that on this 17 day of November, 2004, personally appeared before me, the Subscriber, a Notary Public for the State and County aforesaid, Karen Carradin, personally known to me to be such and she did depose and say:

      1. That she is employed as a secretary in the office of Michael W. Modica.

      2. That in accordance with instructions and on the 17 day of November, 2004 she placed in the United States mail a copy of the foregoing Motion for Postconviction Relief postage prepaid to:

To:     Martin O'Connor, DAG
           Department of Justice
           820 N. French Street
           Wilmington, DE 19801

      SWORN TO AND SUBSCRIBED before me the day and year aforesaid.

                                                 Notary Public

90

IN THE SUPREME COURT OF THE STATE OF DELAWARE

HENRY GLANDING,                    §    No. 236, 2002
                                   §    Court Below--Superior Court
        Defendant Below,           §    of the State of Delaware, in
        Appellant,                 §    and for Kent County in Cr.
                                   §    ID No. 0105009486A.
        v.                         §
                                   §
STATE OF DELAWARE,                 §
                                   §
        Plaintiff Below,           §
        Appellee.                  §

                Submitted:  October 7, 2002
                Decided:    December 13, 2002

Before **WALSH, HOLLAND** and **BERGER**, Justices.

### O R D E R

This 13th day of December 2002, upon consideration of the appellant's brief filed pursuant to Supreme Court Rule 26(c), counsel's motion to withdraw, and the State's response thereto, it appears to the Court that:

(1)    In October 2001, Glanding was reindicted by a grand jury for twenty-seven offenses. Sometime thereafter, the Superior Court granted Glanding's motion to sever sixteen charges: fifteen counts of Possession of a Deadly Weapon by a Person Prohibited and one count of Possession of

Ammunition by a Person Prohibited, from the other offenses. Glanding proceeded to trial on the sixteen severed charges.[1]

(2)     Prior to trial, the Superior Court held a suppression hearing on Glanding's motion to suppress. Glanding, in part, challenged the search of his Dodge Ram truck, contending that the warrantless search of the truck was impermissible, and that the search warrant, which included "any and all vehicles located on the property," did not include Glanding's truck because it was not "located on the property" at the time it was searched. The Superior Court denied the motion, finding that the search of the passenger compartment of Glanding's truck was contemporaneous with Glanding's arrest and was thus lawful. Moreover, the Superior Court found that the truck was a valid subject of the search warrant, even if was not "located on the property" at the time of the search, and that, in any event, the items found in the vehicle would have inevitably been discovered.

---

[1] Glanding is scheduled to go to trial on the remaining charges on December 16, 2002. *State v. Glanding*, Del. Super., Cr. ID No. 0105009486B.

(3)   At the two-day jury trial in March 2002, Glanding stipulated that he was a convicted felon.[2] Glanding was convicted of fifteen counts of Possession of a Deadly Weapon by a Person Prohibited. The Superior Court dismissed the charge of Possession of Ammunition by a Person Prohibited. Glanding was sentenced to a total of thirty years at Level V imprisonment, suspended after fifteen years, for nine years of probation. This is Glanding's direct appeal.

4)   The evidence at trial reflects that on May 11, 2001, the Delaware State Police set up surveillance on the appellant's residence on Lion Hope Road in Clayton, Delaware, to observe the actions of the appellant prior to the police executing a search warrant at the appellant's residence. Earlier in the day, the police had received information that the appellant, Henry Glanding, was wanted out of Maryland for several felony offenses, and that Glanding, who was a convicted felon with a reported violent history, was known to carry a firearm.   The police observed Glanding's residence from approximately 1:00 p.m. until about 8:30 p.m. on May 11 and obtained the signed search warrant around 3:00 p.m. that day.

5)   Between 5:00 p.m. and 8:30 p.m., the police observed a shirtless Glanding working around his yard with what appeared to be a

---

[2]Glanding pleaded guilty in 1980 to Possession with Intent to Deliver Methamphetamine. *State v. Glanding*, Del. Super., Cr. ID No. 80001340DI (Dec. 19, 1980).

revolver strapped to his waist. Out of concern for their safety, the police decided not to arrest Glanding at his residence, or to execute the search warrant, until Glanding was in his vehicle and away from the residence.

6)     At around 8:30 p.m., Glanding left his residence in his Dodge Ram truck and headed south on Lion Hope Road. Approximately one-half mile away from the residence, the police stopped Glanding in a "felony car jam" in which the police used several vehicles to box in Glanding's truck.[3] Once Glanding's truck was boxed in, the police extracted Glanding from the truck, placed him on the ground, handcuffed him and searched him. The police then searched the passenger compartment of Glanding's truck. The police located a loaded .357 revolver in the console.

7)     A few minutes after Glanding was stopped and was otherwise occupied with his arrest, the police executed the search warrant at his residence. The police located a number of firearms and ammunition in a safe in Glanding's living room and more guns in Glanding's laundry room.

8)     Glanding's defense counsel has filed a brief and a motion to withdraw pursuant to Supreme Court Rule 26(c). The standard and scope of review applicable to the consideration of a motion to withdraw and an accompanying brief under Rule 26(c) is twofold. First, the Court must be

[3] The purpose of the "felony car jam" is to decrease any chance of a pursuit.

94

known beforehand that the analysis of suspected methamphetamine that was seized from his truck was negative; and (v) ineffective assistance of counsel. Glanding's claims are without merit.

11) Glanding's first arguably appealable issue is that the search of his truck was improper. Glanding's claim is without merit. The Superior Court correctly determined that the warrantless search of the passenger compartment area of Glanding's truck was contemporaneous with Glanding's lawful arrest and was thus clearly authorized.[5] Having concluded that the warrantless search of the passenger compartment of Glanding's truck was valid as a search incident to his lawful arrest, the Court need not address Glanding's allegation that the search warrant did not authorize a search of Glanding's truck once it left the property.

12) Glanding's second arguably appealable issue is that the "affidavit of probable cause" is invalid because it was "unsigned." This claim was not presented in the Superior Court, and Glanding has not demonstrated plain error concerning the claim.[6] Furthermore, at the suppression hearing, Glanding's counsel expressly conceded that he did not

---

[5]*Traylor v. State*, 458 A.2d 1170, 1173-74 (Del. 1983) (citing *New York v. Belton*, 453 U.S. 454 (1981)).

[6]Supr. Ct. R. 8; *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986). Plain error is error that is "so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process." *Id.*

challenge the validity of the search warrant.[7]  In any event, the "affidavit of probable cause" that is Exhibit B to the Justice of the Peace Court arrest warrant, and the probable cause sheet that is attached to the search warrant, both are signed and both appear to have been properly executed. Glanding's claim is without merit.

13)    Glanding's third arguably appealable issue is that the prosecutor erred when he allegedly told the jury that it was not necessary for the State to prove that Glanding knew that he was a person prohibited from possessing a deadly weapon. This claim is without merit.  Under title 11, section 1448(b) of the Delaware Code, a defendant is guilty of Possession of a Deadly Weapon by a Person Prohibited when the defendant is a prohibited person who knowingly possesses a deadly weapon.[8]  Thus, to be guilty of the offense, the defendant need only know that he or she possessed the weapon. Section 1448 does not require the defendant to know, as Glanding suggests, that it was criminal to do so.[9]

14)    Glanding's fourth arguably appealable issue is that he would not have agreed to sever the charges if he had known beforehand that the substance that was seized from his truck would not test positive as

---

[7] H'rg Tr., Mar. 4, 2002, at 95.
[8] Del. Code Ann. tit. 11, § 1448 (2001).
[9] *Kipp v. State*, 704 A.2d 839, 842 (Del. 1998).

9 7

methamphetamine, as was suspected. This claim was not presented in the Superior Court, and Glanding has not demonstrated plain error concerning the claim.[10] A decision to sever charges is within the sound discretion of the trial court and is not disturbed on appeal absent a showing of actual prejudice by the defendant.[11] In this case, Glanding has not sustained his burden of demonstrating that severing his deadly weapon possession charges from his other charges prejudiced his defense on the deadly weapon charges.

15) In his fifth arguably appealable issue, Glanding raises claims of ineffective assistance of counsel. This Court will not consider claims of ineffective assistance of counsel that are raised for the first time on appeal.[12] In this case, Glanding did not raise his ineffective assistance of counsel claims in the Superior Court. Accordingly, we will not consider the claims in this appeal. Glanding, however, may raise his ineffective assistance of counsel claims in a motion for postconviction relief that is filed in the Superior Court.[13]

16) This Court has reviewed the record carefully and has concluded that Glanding's appeal is wholly without merit and devoid of any arguably appealable issue. We also are satisfied that Glanding's appellate counsel has

---

[10] Supr. Ct. R. 8; *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).

[11] *Coffield v. State*, 794 A.2d 588, 595 (Del. 2002).

[12] *Desmond v. State*, 654 A.2d 821, 829 (Del. 1994).

[13] Super. Crim. R. 61.

made a conscientious effort to examine the record and has properly

determined that Glanding could not raise a meritorious claim in this appeal.

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

## IN AND FOR KENT COUNTY

| | | |
|---|---|---|
| **STATE OF DELAWARE** | ) | |
| | ) | |
| v. | ) | IK01-10-0159-R1 |
| | ) | to |
| **HENRY W. GLANDING** | ) | IK01-10-0173-R1 |
| | ) | |
| Defendant. | ) | |
| ID. No. 0105009486A | ) | |

## COMMISSIONER'S REPORT AND RECOMMENDATION

### Upon Defendant's Motion for Postconviction Relief Pursuant to Superior Court Criminal Rule 61

Martin B. O'Connor, Esq., Deputy Attorney General, Department of Justice, Wilmington, Delaware, for the State of Delaware.

Michael W. Modica, Esq., Wilmington, Delaware, for Defendant

FREUD, Commissioner
June 28, 2005

*State v. Glanding*
ID No. 0105009486A
June 28, 2005

The Defendant, Henry W. Glanding, ("Glanding"), was found guilty,
following a two day trial on fifteen counts of Possession of a Deadly Weapon by a
Person Prohibited, 11 *Del. C.* § 1448. Glanding was also facing one count of
Possession of Firearm Ammunition by a Person Prohibited. On April 23, 2002,
the Court sentenced Glanding to a total of 30 years at Level V, suspended after
serving fifteen years for probation. Prior to trial, Defense Counsel filed a Motion
to Suppress, in part, challenging the search of his Dodge Ram truck, contending that
the warrantless search of the truck was impermissible, and that the search warrant,
which included "any and all vehicles located on the property," did not include
Glanding's truck because it was not "located on the property" at the time it was
searched. The Court denied the motion, finding that the search of the passenger
compartment of Glanding's truck was contemporaneous with Glanding's arrest and
as such was lawful. Additionally, the Court held that the truck was a valid subject of
the search warrant, even if was not "located on the property" at the time of the search,
and that, in any event, the items found in the vehicle would have inevitably been
discovered.[1]

A timely Notice of Appeal was filed. Glanding's counsel filed a brief and
Motion to Withdraw pursuant to Supreme Court Rule 26(c). In the Motion to
Withdraw, Appellate Counsel represented that he conducted a conscientious review
of the record and concluded that no meritorious issues existed. By letter, counsel

---

[1]    *See Glanding v. State*, 2002 Del. LEXIS 731.

2

*State v. Glanding*
ID No. 0105009486A
June 28, 2005

informed Glanding of the provisions of Rule 26(c) and attached a copy of the
Motion to Withdraw and accompanying brief. Glanding was informed of his right
to supplement his attorney's presentation. Glanding, *pro se*, raised the following
five issues for the Supreme Court to consider:

(i) the search of his Dodge Ram truck was improper;

(ii) the affidavit of probable cause was unsigned;

(iii) the prosecutor erred when he argued to the jury that it did not
matter whether or not Glanding knew he was breaking a law;

(iv) Glanding would not have agreed to sever the charges if he'd
known beforehand that the analysis of suspected methamphetamine that
was seized from his truck was negative; and

(v) ineffective assistance of counsel.

The Supreme Court granted the State's Motion to Affirm as to all of
Glanding's claims.[2] Next, Glanding filed the pending Motion for Postconviction
Relief in which he raises two grounds for relief including ineffective assistance of
counsel.

## FACTS

The following is a summary of the offenses and trial proceedings as noted by
the Supreme Court in its opinion:

The evidence at trial reflects that on May 11, 2001, the Delaware State

---

[2]     *Id.*

*State v. Glanding*
ID No. 0105009486A
June 28, 2005

Police set up surveillance on the appellant's residence on Lion Hope
Road in Clayton, Delaware, to observe the actions of the appellant
prior to the police executing a search warrant at the appellant's
residence. Earlier in the day, the police had received information that
the appellant, Henry Glanding, was wanted out of Maryland for several
felony offenses, and that Glanding, who was a convicted felon with a
reported violent history, was known to carry a firearm. The police
observed Glanding's residence from approximately 1:00 p.m. until
about 8:30 p.m. on May 11 and obtained the signed search warrant
around 3:00 p.m. that day.

Between 5:00 p.m. and 8:30 p.m., the police observed a
shirtless Glanding working around his yard with what appeared to be
a revolver strapped to his waist. Out of concern for their safety, the
police decided not to arrest Glanding at his residence, or to execute the
search warrant, until Glanding was in his vehicle and away from the
residence.

At around 8:30 p.m., Glanding left his residence in his Dodge Ram
truck and headed south on Lion Hope Road. Approximately one-half
mile away from the residence, the police stopped Glanding in a "felony
car jam" in which the police used several vehicles to box in Glanding's
truck.[3] Once Glanding's truck was boxed in, the police extracted
Glanding from the truck, placed him on the ground, handcuffed him
and searched him. The police then searched the passenger compartment
of Glanding's truck. The police located a loaded .357 revolver in the
console.

A few minutes after Glanding was stopped and was otherwise

---

[3]     The purpose of the "felony car jam" is to decrease any chance of a pursuit.

4

*State v. Glanding*
ID No. 0105009486A
June 28, 2005

occupied with his arrest, the police executed the search warrant at his residence. The police located a number of firearms and ammunition in a safe in Glanding's living room and more guns in Glanding's laundry room.

## GLANDING'S CONTENTIONS

In his motion, Glanding raises the following grounds for relief:

Argument One: Defense Counsel rendered ineffective assistance of counsel in violation of the Defendant's rights under the Sixth and Fourteenth Amendments to the United States Constitution by failing to challenge the validity of the search warrant.

A.   Trial Counsel was ineffective by failing to contest the validity of the Search Warrant.

    1.   Probable Cause for issuance of the Search Warrant does not exist within the four corners of the Warrant Application and Affidavit.

    a.   The conclusory statements regarding the reliability of each informant was insufficient to establish their reliability.

    b.   There was insufficient basis to credit the information provided by each confidential informant.

    c.   The Probable Cause Affidavit was based upon conclusory language, information without sufficient factual foundation and stale information, which did not meet the probable cause test.

2.   The Search Warrant and Application are defective.

*State v. Glanding*
ID No. 0105009486A
June 28, 2005

> 3. The warrant was so facially deficient that the executing officer did not have a good faith basis to presume it was valid.
>
> Argument Two: The State did not prove the elements of 11 *Del. C.* § 1448(b) because it did not show that the Defendant used or attempted to use firearms to cause death or serious physical injury.

## PROCEDURAL CONSIDERATIONS

Under Delaware Law the Court must first determine whether Glanding has met the procedural requirements of Superior Court Criminal Rule 61(i) before it may consider the merits of the postconviction relief claims.[4] Under Rule 61, postconviction claims for relief must be brought within three years of the conviction becoming final.[5] Glanding's motion was filed in a timely fashion, thus the bar of Rule 61(i)(1) does not apply to the motion. As this is Glanding's initial motion for postconviction relief, the bar of Rule 61(i)(2), which prevents consideration of any claim not previously asserted in a postconviction motion, does not apply either.

Grounds for relief not asserted in the proceedings leading to judgment of conviction are thereafter barred unless the movant demonstrates: (1) cause for the

---

[4] *Ayers v. State*, 802 A.2d 278,281 (Del. 2002); *Bailey v. State*, 588 A.2d 1121, 1127 (Del. 1991); *Younger v. State*, 580 A.2d 554, 555 (Del. 1990) (citing *Harris v. Reed*, 489 U.S. 255 (1989)); *See also Dawson v. State*, 673 A.2d 1186, 1190 (Del. 1996).

[5] Super. Ct. Crim. R. 61(i)(1).

6

*State v. Glanding*
ID No. 0105009486A
June 28, 2005

procedural fault and (2) prejudice from a violation of the movant's rights.[6] The bars
to relief are inapplicable to a jurisdictional challenge or to a colorable claim of
miscarriage of justice stemming from a constitutional violation that "undermined the
fundamental legality, reliability, integrity or fairness of the proceedings leading to
the judgment of conviction."[7]

Both of Glanding's claims are premised on allegations of ineffective
assistance of counsel. Glanding has therefore alleged sufficient cause for not having
asserted all his grounds for relief at trial. These types of claims are not normally
subject to the procedural default rule, in part because the Delaware Supreme Court
will not generally hear such claims for the first time on direct appeal. For this
reason, many defendants, including Glanding, allege ineffective assistance of
counsel in order to overcome the procedural default.

However, this path creates confusion if the defendant does not understand that
the test for ineffective assistance of counsel and the test for cause and prejudice are
distinct, albeit similar, standards.[8] The United States Supreme Court has held that:

> [I]f the procedural default is the result of ineffective assistance of
> counsel, the Sixth Amendment itself requires that responsibility for the
> default be imputed to the State, which may not "conduc[t] trials at
> which persons who face incarceration must defend themselves without

---

[6]   Super. Ct. Crim. R. 61(i)(3).

[7]   Super. Ct. Crim. R. 61(i)(5).

[8]   *State v. Gattis*, 1995 WL 790961, at *3 (Del. Super.).

*State v. Glanding*
ID No. 0105009486A
June 28, 2005

> adequate legal assistance"[;] [i]neffective assistance of counsel, then,
> is cause for a procedural default.[9]

A movant who interprets the final sentence of the quoted passage to mean that he can simply assert ineffectiveness and thereby meet the cause requirement will miss the mark. Rather, to succeed on a claim of ineffective assistance of counsel, a movant must engage in the two part analysis enunciated in *Strickland v. Washington*[10] and adopted by the Delaware Supreme Court in *Albury v. State*.[11] This analysis was further refined by the U.S. Supreme Court in *Lockhart v. Fretwell*.[12]

The *Strickland* test requires the movant show that counsel's errors were so grievous that his performance fell below an objective standard of reasonableness.[13] Second, under *Strickland* the movant must show there is a reasonable degree of probability that but for counsel's unprofessional error, the outcome of the proceedings would have been different, that is, actual prejudice[14] and that the

---

[9]     *Murray v. Carrier,* 477 U.S. 478, 488 (1986).

[10]    466 U.S. 668 (1984).

[11]    551 A.2d 53, 58 (Del. 1988).

[12]    506 U.S. 364, 369 (1993).

[13]    466 U.S. at 687; *see Dawson v. State*, 673 A.2d 1186, at 1190 (Del. 1996).

[14]    466 U.S. at 694; *see Dawson*, 673 A.2d at 1190; *Accord, e.g., Zebroski v. State,* 822 A.2d 1038, 1043 (Del. 2003); *Ayers v. State,* 802 A.2d 278, 281 (Del. 2002); *Steckel v. State*, 795 A.2d 651, 652 (Del. 2002); *Johnson v. State*, 813 A.2d 161, 167 (Del. 2001); *Bialach*
(continued...)

8

*State v. Glanding*
ID No. 0105009486A
June 28, 2005

performance of counsel "render[ed] the result of the trial unreliable or proceeding fundamentally unfair."[15] In setting forth a claim of ineffective assistance of counsel, a defendant must make and substantiate concrete allegations of actual prejudice or risk summary dismissal.[16]

In attempting to survive the first part of the *Strickland* inquiry - whether counsel's conduct falls outside the wide range of reasonable professional conduct - Glanding "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"[17]    While not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable."[18] Even evidence of "[i]solated poor strategy, inexperience, or bad tactics do[es] not necessarily

---

[14](...continued)

*v. State*, 773 A.2d 383, 387 (Del. 2001); *Outten v. State*, 720 A.2d 547, 552 (Del. 1998); *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996); *Skinner v. State*, 607 A.2d 1170, 1172 (Del. 1992); *Flamer v. State*, 585 A.2d 736, 753-754 (Del. 1990).

[15]    *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

[16]    *E.g., Outten v. State*, 720 A.2d at 552; *Righter v. State*, 704 A.2d 262, 264 (1997); *Younger v. State*, 580 A.2d 552, 556 (Del. 1990); *Robinson v. State*, 562 A.2d 1184, 1185 (Del. 1989). *Accord Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991).

[17]    *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 100-01 (1955)); *Wright*, 671 A.2d at 1356; *Flamer*, 585 A.2d at 753-54.

[18]    *Wright*, 671 A.2d at 1356; *Flamer*, 585 A.2d at 753-54.

*State v. Glanding*
ID No. 0105009486A
June 28, 2005

amount to ineffectiveness of counsel."[19] Nor does "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it... constitute" ineffective performance. [20]

In this case, a review of the record and Defense Counsel's affidavit shows that his pre-trial investigation, preparation and conduct during the trial and on appeal were the product of sound trial strategy and not at all unreasonable under the circumstances. This Court simply "cannot require defense counsel to choose one particular defense strategy over any other strategy that falls within the 'wide range of professionally competent assistance'"[21] because there is such a wide range of legitimate decision making which might be made by a competent attorney in a given situation.[22] And, "[c]hoices of trial strategies and tactics are insufficient to establish ineffective representation even though others may have made different choices and such choices may be subject to criticism."[23] Thus, reviewing courts who are

---

[19]    *Bellmore v. State*, 602 N.E. 2d 111, 123 (Ind. 1992) (citing *Strickland*)).

[20]    *Murray v. Carrier*, 477 U.S. 478, 486-87 (1986).

[21]    *Oliver v. Wainwright*, 795 F.2d 1524, 1531 (11th Cir. 1986) (quoting *Strickland*, 466 U.S. at 688-89.)

[22]    *Strickland*, 466 U.S. at 688-89; *State v. Wright*, 653 A.2d 288, 295-97 (Del. Super. 1994).

[23]    *Tyra v. State*, 574 N.E.2d 918, 924 (Ind. Ct. App. 1991) (quoting *Cochran v. State*, 445 N.E.2d 974 (Ind. 1983)).

10

*State v. Glanding*
ID No. 0105009486A
June 28, 2005

eliminate from its consideration the "distorting effects of hindsight when viewing
that representation."[29]   The first consideration in the "prejudice" analysis alone
"requires more than a showing of a theoretical possibility that the outcome was
affected."[30] The defendant must actually show a reasonable probability of a different
result but for trial counsel's alleged errors. [31]

Glanding's burden becomes even greater when this Court accounts for the last
consideration mentioned above in setting out the ineffective assistance analysis, this
analysis introduced in *Fretwell* built upon the previous "prejudice" standard. There,
the U.S. Supreme Court said, reprising the position set out by Justice Powell in his
concurring opinion in *Kimmelman v. Morrison*,[32] that a prisoner must show that
because of counsel's performance the result of his trial was unreliable or the
proceeding itself was fundamentally unfair.[33]  The Court recognized that the right
to the assistance of counsel is not an end of itself, but instead a means for achieving
reliable outcomes.  If the actual result was "'a fair trial, a trial whose result was
reliable,'" there is no reason to upset the finality of a defendant's conviction simply
because he claims a better lawyer might have obtained the "windfall" of a different

---

[29]    *Strickland*, 466 U.S. at 689; *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996).

[30]    *Frey v. Fulcomer*, 974 F.2d 348, 358 (3d Cir. 1992).

[31]    *Strickland*, 466 U.S. at 694.

[32]    477 U.S. 365, 393 (1986).

[33]    *Lockhart v. Fretwell*, 506 U.S. 364, 371-72 (1993).

*State v. Glanding*
ID No. 0105009486A
June 28, 2005

"deprived...of the feel of the trial courtroom [but] think [they] might have recommended something else at trial if [they] had been there" still must be highly deferential to the strategic choices of trial counsel.[24]

Generally, a claim for ineffective assistance of counsel fails unless both prongs of the test have been established.[25] However, the showing of prejudice is so central to this claim that the *Strickland* court stated "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."[26] In other words, if the Court finds that there is no possibility of prejudice even if a defendant's allegations regarding counsel's representation were true, the Court may dispose of the claim on this basis alone.[27] Thus the Court may dispose of a claim if there is insufficient prejudice even if counsel's actions were in some way deficient.[28] Furthermore, the defendant must rebut a "strong presumption" that trial counsel's representation fell within the "wide range of reasonable professional assistance," and this Court must

---

[24]     *Moore v. Deputy Comm. of SCI-Huntingdon,* 946 F.2d 236, 246 (3d Cir. 1991).

[25]     *Strickland,* 466 U.S. at 687.

[26]     *Id.* at 697.

[27]     *State v. Gattis*, 1995 WL 790961, at *4 (Del. Super.).

[28]     *Whitley v. Bair*, 802 F.2d 1487, 1494 (4th Cir. 1986), cert. denied, 480 U.S. 951 (1987).

*State v. Glanding*
ID No. 0105009486A
June 28, 2005

result.[34] Therefore, "an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."[35]

In the case at bar, Glanding attempts to show cause for his procedural default by making merely conclusory assertions of ineffectiveness of counsel. In regards to prejudice he has not met the burden outlined above. Glanding asserts that had his counsel objected to the search warrant, the Court would have suppressed the evidence.

Glanding's contention of ineffective assistance of counsel is without merit. Even if counsel had challenged the search warrant at trial, it would have been found to be valid because it was supported by probable cause. The probable cause supporting the warrant was obtained through statements of Confidential Informants ("C.I.'s"), some of whom are C.I.'s who in the past had provided reliable information and through firsthand observations of Glanding by police officers that not only corroborated information provided by the C.I.'s, but gave the officers additional cause to search Glanding's house and person. Since the search warrant was supported by probable cause and would have been upheld, Glanding cannot show that Counsel's failure to challenge it materially prejudiced him.

---

[34]     *Fretwell*, 506 U.S. at 369-70 (quoting *Strickland*, 466 U.S. at 687).

[35]     *Fretwell*, 506 U.S. at 369; *State v. Wright*, 653 A.2d 288, 297 (Del. Super. Ct. 1994) (citing *Fretwell*).

*State v. Glanding*
ID No. 0105009486A
June 28, 2005

Glanding's claim that the May 11, 2001 search warrant suffered from lack of probable cause is also without merit. The Warrant and Affidavit set forth facts gathered during police investigations and information provided by C.I.'s some of whom were past proven and reliable, that is they provided reliable information in the past. These C.I.'s also had prior dealings with Glanding on numerous occasions and their information was corroborated by other independent C.I.'s and the police investigation.

Search warrants are directed at property where there is probable cause to believe that instrumentalities or evidence of crime will be found.[36] A search warrant affidavit must meet the "four corners" test, setting forth sufficient facts to enable a reasonable person to believe that an offense has been committed and that seizable property will be found in a particular place.[37] A *prima facie* showing is not required, only the probability of criminal conduct is necessary to support a finding of probable cause.[38]

In reviewing whether probable cause to obtain a search warrant existed, the Delaware Supreme Court has adopted a "totality of circumstances" test, favoring a common sense interpretation of the search warrant affidavit and giving "a certain

[36]     *U.S. v. Conley*, 4 F.3d 1200, 1207 (3rd Cir. 1993).

[37]     *Jensen v. State*, 482 A.2d 105, 110-11 (Del. 1984).

[38]     *State v. Walker*, 444 A.2d 277, 280 (Del. Super. Ct. 1982).

14

*State v. Glanding*
ID No. 0105009486A
June 28, 2005

degree of deference to the issuing magistrate.[39] In this case, the search warrant was authorized by the Superior Court.

In measuring the totality of circumstances when a C. I.'s tip is involved, the Court should consider such issues as the reliability of the C.I., the details contained in the tip and the degree to which the tip is corroborated by independent police surveillance and information.[40] If a C. I.'s tip is sufficiently corroborated, it may form the basis for probable cause even though nothing is known about the C.I.'s credibility.[41] In the instant case, three C.I.'s independently gave police information that Glanding regularly sold methamphetamine and cocaine, both at his residence and at a Maryland bar called "Mickey's." All three also informed the police that Glanding was a high-ranking member of the motorcycle gang known as the "Pagans." Glanding's membership in this gang is not itself the basis for the Affidavit's probable cause. However, probable cause is strengthened when the C.I.'s statement that the Pagan gang is involved in the methamphetamine trade is tied with that C.I.'s statement and the other C.I.'s statements that Glanding was also known to trade in methamphetamine and that some of the C.I.'s had purchased methamphetamine from Glanding on numerous occasions and others had observed such sales.

---

[39] *Gardner v. State*, 567 A.2d 404, 409 (Del. 1989).

[40] *Tatman v. State*, 494 A.2d 1249, 1251 (Del. 1985).

[41] *Id.* at 1251.

*State v. Glanding*
ID No. 0105009486A
June 28, 2005

The detail provided in the C.I.'s tips further strengthens the totality of circumstances analysis leading to a finding of probable cause. C.I. 3 knew Glanding's address, described his house in detail, said that "he" had observed Glanding conducting over 50 sales of methamphetamine, many of them in the months before the warrant was obtained and has traveled with Glanding to make a methamphetamine delivery. The informant gave the name of the Maryland bar where Glanding is known to sell drugs and told police that Glanding keeps a record of his drug sales in a notebook and that the notebook is kept at his residence. The informant provided Glanding's gang nickname and told police that Glanding owns numerous guns and always keeps one about his person. The level of detail provided in this one informant's statement alone supports a finding that the totality of circumstances led to probable cause for the warrant to issue.

Glanding also challenges the statements of the C.I.'s on the basis that the statements were "stale." Where staleness is alleged, the Delaware Supreme Court has held that "...the test of temporal proximity is determined on an *ad hoc* basis in the light of the circumstances of each case.[42] Where an isolated incident is alleged or the evidence to be sought is ephemeral or subject to change because of the passage of time, staleness becomes a more critical issue. Where a pattern of criminal activity is alleged to have occurred at one location, as in this case, it "...demonstrates the probability that [Glanding's] drug activity persisted through the

---

[42]    *Jensen*, 482 A.2d at 111.

16

*State v. Glanding*
ID No. 0105009486A
June 28, 2005

date of the search warrant application."[43] Because the C.I.'s revealed a long history of drug dealing by Glanding, primarily at his residence, the temporal proximity of the statements to the issuance of the warrant is not crucial. Further the statement of C.I. 3, the informant who provided the most detailed information, was procured within *seven* days of the warrant application.[44] Because C.I. 3's statement was obtained within one week of the warrant application and because of the ongoing nature of Glanding's drug trade, the challenge for staleness of the information is without merit.

A magistrate may also rely on the Affiant's knowledge of a suspect to corroborate and establish the reliability of a C.I.'s tip.[45] Police investigation in this case led to the discovery of numerous facts corroborating the statements of the C.I.'s. Inquiries made with the Delaware State Police Intelligence Unit revealed that Glanding was indeed a high ranking member of the "Pagan" motorcycle gang. A Division of Motor Vehicles inquiry revealed Glanding did indeed live at the location provided by C.I. 3 and police observation of the residence corroborated the description of the residence given by C.I. 3 . An inquiry into Glanding's criminal history revealed an extensive drug related arrest history beginning in 1974 and continuing into the 1990's. As the Supreme Court stated in *Jones v. United States*,

---

[43]    *Gardner,* 567 A.2d at 411.

[44]    See Glanding's Exhibit B, Application and Affidavit at paragraph 11.

[45]    *Illinois v. Gates*, 462 U.S. 213 (1983).

*State v. Glanding*
ID No. 0105009486A
June 28, 2005

"Corroboration through other sources of information reduced the chances of a reckless or prevaricating tale; that petitioner was a known user of narcotics made the charge against him much less subject to skepticism than would be such a charge against one without such a history."[46]

When taken in their entirety, the statements of the C.I.'s corroborated by the police and other statements of C.I.'s, police investigation of Glanding and his own past history of involvement with the drug trade, provided ample cause to believe that instrumentalities or evidence of crime would be found at Glanding's residence and on his person. Because such a full showing of probable cause was made, a challenge of the validity of the search warrant by Trial Counsel would not have been successful. Because Glanding cannot show a reasonable probability that the result at trial would have been different had counsel challenged the search warrant, his claim of ineffective assistance of counsel is clearly without merit.

In Glanding's second ground for relief he attempts to overcome the procedural bar of Rule 61(i)(3) by claiming his attorney was ineffective for not making the unique claim that a firearm does not constitute a "Deadly Weapon" unless it is "...used or attempted to be used...to cause death or serious physical injury." Glanding also alleges that 11 *Del. C.* § 1448 and § 222(5) are unconstitutionally vague.

---

[46]    362 U.S. 257, 271 (1960), overruled on other grounds by *U.S. v. Salvucci,* 448 U.S. 83 (1980).

18

*State v. Glanding*
ID No. 0105009486A
June 28, 2005


Glanding mischaracterizes the elements of the offense of Possession of a Firearm by a Person Prohibited. At trial, the State proved beyond a reasonable doubt each element of the offenses by employing the proper construction of the sections. Glanding incorrectly reads 11 *Del. C.* § 222(5) and he misstates the theory of statutory construction to bring about his interpretation of the statute.

Glanding's "interesting" argument urges this Court to define a deadly weapon for the purposes of 11 *Del.* C. § 1448(b) using the definition contained in 11 *Del. C.* § 222(5) as one that "is used or attempted to be used" to cause death or serious injury. However 11 *Del. C.* §222(4) and (5) must be read in their entirety. Section 222(4) defines a "dangerous instrument." Section 222(5) states:

> 'Deadly weapon' includes a firearm, as defined in subdivision (11) of this section, a bomb, a knife of any sort (other than an ordinary pocketknife carried in a closed position), switchblade knife, billy, blackjack, bludgeon, metal knuckles, slingshot, razor, bicycle chain or ice pick, *or* any dangerous *instrument*, as defined in subdivision (4) of this section, which is used, or attempted to be used, to cause death or serious physical injury...(emphasis added).

Clearly the "used or attempted to be used" language applies only to the immediate preceding pronoun, "dangerous instrument." The phrase "or any dangerous instrument, as defined in subsection (4) of this section which is used, or attempted to be used, to cause death or serious physical injury" was added to the statute in 1992 in response to the narrow interpretation of a "deadly weapon" given

*State v. Glanding*
ID No. 0105009486A
June 28, 2005

by the Court in *Stansbury v. State*.[47] In *Stansbury*, the Superior Court declined to
expand the definition of a deadly weapon to include a bowling ball and a barbell,
holding that while these were "...items of common usage, and while they may
become deadly instrumentalities, they are not deadly weapons."[48] In adding the
"dangerous instrument" language to the statute, the Legislature was concerned with
*expanding* the possible list of deadly weapons, not *restricting* it by requiring that
weapons first be used to do harm.

In addition to the clear legislative intent, the rule of statutory construction as
the "Last Antecedent Rule" also requires reading the phrase following "which" (the
used, or attempted to be used" language) as applying only to the immediately
preceding noun of "dangerous instrument." The Last Antecedent Rule is that
"...relative or qualifying words, phrases or clauses are ordinarily to be applied
solely to the words or phrases immediately preceding."[49]

Because the clear legislative intent and principles of statutory construction
indicate that there is no need for a "deadly weapon" to be used or attempted to be
used before the elements of Possession of a Firearm by a Person Prohibited are

---

[47] 591 A.2d 188 (Del. Super. Ct. 1991); *Taylor v. State*, 679 A.2d 449, 453-54 (Del.
1996).

[48] *Stansbury*, 591 A.2d at 193.

[49] *Brown v. Brown*, 29 A.2d 149, 153 (Del. Super. Ct. 1942); *Matter of Surcharge
Classification 0133 by Delaware Compensation Rating Bureau*, 655 A.2d 295, 302 (Del. Super.
Ct. 1994).

20

*State v. Glanding*
ID No. 0105009486A
June 28, 2005

satisfied, the State met its burden at trial by showing that Glanding was a convicted felon and he possessed numerous firearms that he kept in his home and about his person. Clearly Glanding's argument is without merit.[50]

## CONCLUSION

After thoroughly reviewing the record in this case and the law, it is abundantly clear that Glanding has failed to overcome the procedural bars of Rule 61 and that both of his claims are meritless. Consequently, I recommend that the Court *deny* Glanding's Motion for Postconviction Relief as procedurally barred by Rule 61(i)(3)



Commissioner Andrea M. Freud

oc:   Prothonotary
cc:   Hon. James T. Vaughn, Jr.
      Lloyd A. Schmid, Jr., Esq.
      File

---

[50]     As is further noted in Trial Counsel's Affidavit, 11 *Del. C.* § 203 provides that penal statutes "...must be construed according to the fair import of their terms to promote justice and effect the purposes of the law..." The statute for which Glanding was convicted makes the purchase, possession or ownership of a deadly weapon illegal (in this case, 15 firearms), regardless if the deadly weapon in question was "used or attempted to be used." See 11 *Del. C.* § 1448(a)(1).

110

FEB 1 1 2005

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

STATE OF DELAWARE          )
                           )
v.                         )          ID# 0105009486 (A and B)
                           )
HENRY GLANDING,            )
                           )
        Defendant.         )

### STATE'S RESPONSE TO DEFENDANT'S RULE 61 MOTION FOR POSTCONVICTION RELIEF

COMES NOW, the State of Delaware, through Deputy Attorney General Martin

O'Connor, and respectfully requests this Court, for the following reasons, to deny the

Defendant's Motion for Post-Conviction Relief:

**Defendant Mischaracterizes the Elements of 11 Del.C. §1448(b) and §222(5).**

Defendant mischaracterizes the elements of the offense of Possession of a Firearm

by a Person Prohibited. At trial, employing the proper construction of these sections, the

State proved beyond a reasonable doubt each element of the offenses. The Defendant

incorrectly reads 11 Del. C. § 222 (5), and he misstates the theory of statutory

construction employed to bring about his interpretation of the statute.

Defendant urges this Court to define a deadly weapon for the purposes of 11 Del.

C. §1448(b) using the definition contained in 11 Del. C. § 222 (5) as one that *is used or*

*attempted to be used* to cause death or serious injury. However, 11 Del. C. § 222 (4) and

(5) must be read in their entirety. Section 222 (4) defines a "dangerous instrument."

Section 222 (5) states:

> "Deadly weapon" includes a firearm, as defined in
> subdivision (11) of this section, a bomb, a knife of any sort

111

> (other than an ordinary pocketknife carried in a closed
> position), switchblade knife, billy, blackjack, bludgeon,
> metal knuckles, slingshot, razor, bicycle chain, or ice pick,
> *or* any dangerous *instrument*, as defined in subdivision (4)
> of this section, which is used, or attempted to be used, to
> cause death or serious physical injury...(emphasis added.)

Clearly the 'used or attempted to be used' language applies only to the

immediately preceding noun, 'dangerous instrument.' The phrase "or any dangerous

instrument, as defined in subsection (4) of this section which is used, or attempted to be

used, to cause death or serious physical injury" was added to the statute in 1992 in

response to the narrow interpretation of a 'deadly weapon' given by the Court in

*Stansbury v. State,* 591 A.2d 188 (Del. Super. 1991). *Taylor v. State*, 679 A.2d 449 (Del.

Supr. 1995). In *Stansbury*, the Superior Court declined to expand the definition of a

deadly weapon to include a bowling ball and a barbell, holding that while these were

"items of common usage, and while they may become deadly instrumentalities, they are

not deadly weapons." *Id.* at 193. In adding the 'dangerous instrument' language to the

statute, the Legislature was concerned with *expanding* the possible list of deadly

weapons, not restricting it by requiring that weapons first be used to do harm.

In addition to the clear legislative intent, the rule of statutory construction known

as the "Last Antecedent Rule" also requires reading the phrase following 'which' (the

'used or attempted to be used' language) as applying only to the immediately preceding

noun of "dangerous instrument." The Last Antecedent Rule is that "relative or qualifying

words, phrases or clauses are ordinarily to apply solely to the words or phrases

immediately preceding." *Brown v. Brown*, 29 A.2d 149 (Del. Super. 1942), *Matter of*

*Surcharge Classification 0133 by Delaware Compensation Rating Bureau*, 655 A.2d 295

(Del. Super. 1994).

Because the clear legislative intent and principles of statutory construction indicate that there is no need for a *deadly weapon* to be used or attempted to be used before the elements of Possession of a Firearm by a Person Prohibited are satisfied, the State satisfied its burden at trial by showing that the Defendant was a convicted felon and that the Defendant possessed numerous firearms that he kept in his home and about his person. Consequently the Defendant's argument is without merit.[1]

**Defendant's claim that he received ineffective assistance of counsel is without merit.**

Defendant claims that trial counsel provided ineffective assistance because he failed to challenge the validity of a search warrant executed May 11, 2001. A defendant making a claim of ineffective assistance of counsel must show that counsel's actions fell below an objective standard of reasonableness and that there exists a reasonable probability that but for trial counsel's errors, the outcome of the trial would have been different. *Wright v. State*, 671 A.2d 1353 (Del. Super. 1996). Further, a defendant making such a claim must affirmatively prove actual prejudice. *Strickland v. Washington*, 466 U.S. 668 (1984). "Counsel is strongly presumed to have rendered adequate assistance." *Id.* at 690.

Defendant's contention of ineffective assistance of counsel is without merit. Even if counsel had challenged the search warrant at trial, because it was supported by probable cause it would have been found to be valid. The probable cause supporting the

---

[1]     As is further noted in the Affidavit of Lloyd Schmid, Esquire, 11 Del. C. § 203 provides that penal statutes "must be construed according to their fair import of their terms to promote justice and to effect the purposes of the law . . ." The statute for which the defendant was convicted makes the purchase, possession or ownership of a deadly weapon illegal (in this case, 15 firearms), regardless if the deadly weapon in question was "used or attempted to be used." See 11 Del. C. § 1448 (a)(1).

warrant was obtained through statements of informants, some of whom were informants who in the past had provided reliable information and through firsthand observations of the Defendant by police officers that not only corroborated information provided by the informants, but gave the officers additional cause to search the Defendant's house and person. Since the search warrant was supported by probable cause and would have been upheld, the Defendant cannot show that counsel's failure to challenge it materially prejudiced him.

*The May 11, 2001 Search Warrant was Supported by Probable Cause*

Defendant's claim that the May 11 search warrant suffered from a lack of probable cause is without merit. The Warrant and Affidavit set forth facts gathered during police investigations and information provided by informants, some of whom were past proven and reliable, that is they provided reliable information in the past.  These informants also had prior dealings with the Defendant on numerous occasions, and whose information was corroborated by other independent informants and the police investigation.

Search warrants are directed at property where there is probable cause to believe that instrumentalities or evidence of crime will be found. *United States v. Conley*, 4 F.3d 1200, 1207 (3rd Cir.1993). A search warrant affidavit must meet the "four corners" test, setting forth sufficient facts to enable a reasonable person to believe that an offense has been committed and that seizable property will be found in a particular place. *Jensen v. State*, 482 A.2d 105 (Del. Super. 1984). A prima facie showing is not required, only the probability of criminal conduct is necessary to support a finding of probable cause. *State v. Walker*, 444 A.2d 277 (Del. Super. 1982).

In reviewing whether probable cause to obtain a search warrant existed, the Delaware Supreme Court has adopted a "totality of the circumstances" test, favoring a commonsense interpretation of the search warrant affidavit and giving "a certain degree of deference to the issuing magistrate." *Gardner v. State*, 567 A.2d 404 (Del. Super. 1989). In this case, the search warrant was authorized by Kent County Superior Court Judge James T. Vaughn, Jr.

In measuring the totality of the circumstances when an informant's tip is involved, the Court should consider such issues as the reliability of the informant, the details contained in the tip, and the degree to which the tip is corroborated by independent police surveillance and information. *Tatman v. State*, 494 A.2d 1249, 1251 (1989). If an informant's tip is sufficiently corroborated, it may form the basis for probable cause even though nothing is known about the informant's credibility. *Id.* at 1251. In the instant case, three informants independently gave police information that the Defendant regularly sold methamphetamine and cocaine, both at his residence and at a Maryland bar called "Mickey's." All three also informed the police that the Defendant was a high-ranking member of the motorcycle gang known as the "pagans." The Defendant's membership in this gang is not itself the basis for the affidavit's probable cause. However, probable cause is strengthened when the informant's statement that the pagan gang is involved in the methamphetamine trade is tied with that informant's statement and the other informants' statements that Defendant was also known to trade in methamphetamine, and that some of the informants had purchased methamphetamine from the Defendant on numerous occasions, and others had observed such sales.

The detail provided in the informants' tips further strengthens the totality of circumstances analysis leading to a finding of probable cause. Confidential Informant 3 knew the Defendant's address, described his house in detail, said that 'he' had observed the Defendant conducting over 50 sales of methamphetamine, many of them in the months before the warrant was obtained, and has traveled with Defendant to make a methamphetamine delivery. The informant gave the name of the Maryland bar where Defendant is known to sell drugs, and told police that Defendant keeps a record of his drug sales in a notebook, and keeps that notebook at his residence. He gave the Defendant's gang nickname and told police that Defendant owns numerous guns and always keeps one about his person. The level of detail provided in this one informant's statement alone supports a finding that the totality of circumstances lead to probable cause for the warrant to issue.

Defendant also challenges the statements of the Confidential Informants on the basis that the statements were 'stale.' Where staleness is alleged the Delaware Supreme Court has held that "the test of temporal proximity is determined on an *ad hoc* basis in the light of the circumstances of each case." *Jensen v. State*, 482 A.2d 105, 111 (1984). Where an isolated incident is alleged, or the evidence to be sought is ephemeral or subject to change because of the passage of time staleness becomes a more critical issue. Where a pattern of criminal activity is alleged to have occurred at one location (as in this case), it "demonstrates the probability that (the Defendant's) drug activity persisted through the date of the search warrant application." *Gardener v. State*, 567 A.2d 404, 411 (1989). Because the confidential informants revealed a long history of drug dealing by the Defendant, primarily at the Defendant's residence, the temporal proximity of the

statements to the issuance of the warrant is not crucial. Further, the statement of CI-3, the informant who provided the most detailed information, was procured within *seven* days of the warrant application. *See* Glanding's Exhibit B, Application and Affidavit at paragraph 11. Because CI-3's statement was obtained within one week of the warrant application and because of the ongoing nature of the Defendant's drug trade the Defendant's challenge for staleness of the information is without merit.

A magistrate may also rely on the affiant's knowledge of a suspect to corroborate and establish the reliability of an informant's tip. *Illinois v. Gates*, 462 U.S. 213 (1983). Police investigation in this case led to the discovery of numerous facts corroborating the statements of the confidential informants. Inquiries made with the Delaware State Police Intelligence Unit revealed that the Defendant was indeed a high ranking member of the "pagan" motorcycle gang. A DMV inquiry revealed that the Defendant did indeed live at the location provided by CI-3, and police observation of the residence corroborated the description of the residence given by CI-3. An inquiry into the criminal history of the Defendant revealed an extensive drug related arrest history beginning in 1974 and continuing into the 1990's. As the Supreme Court stated in *Jones v. United States*, 362 U.S. 257, 271 (1960) "Corroboration through other sources of information reduced the chances of a reckless or prevaricating tale; that petitioner was a known user of narcotics made the charge against him much less subject to skepticism than would be such a charge against one without such a history."

When taken in their entirety, the statements of the confidential informants, corroborated by the police and other statements of informants, police investigation of the Defendant and the Defendant's own past history of involvement with the drug trade

provided ample cause to believe that instrumentalities or evidence of crime would be found at the Defendant's residence and on his person. Because such a full showing of probable cause was made, a challenge of the validity of the search warrant by trial counsel would not have been successful. Because the Defendant cannot show a reasonable probability that the result at trial would have been different had counsel challenged the search warrant his claim of ineffective assistance of counsel is without merit.

WHEREFORE the State respectfully requests that the Defendant's Rule 61 Motion for Post-Conviction Relief be Denied.

MARTIN B. O'CONNOR
Deputy Attorney General
State of Delaware – Dept. of Justice
820 North French Street
Wilmington, DE 19801
(302) 577-8500

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

| | |
|---|---|
| STATE OF DELAWARE | ) |
| | ) |
| V. | ) |
| | ) I.D.#0105009486 (A and B) |
| HENRY GLANDING, | ) |
| | ) |
| Defendant. | ) |

## CERTIFICATE OF SERVICE

PLEASE TAKE NOTICE that on February 10, 2005, the undersigned caused to be placed in

the U.S. Mail, Carvel State Office Building, Wilmington, Delaware 19801, two (2) copies of the

State's Response to Defendant's Rule 61 Motion for Postconviction Relief to:

Michael W. Modica, Esquire
715 King Street, Suite 300
P.O. Box 437
Wilmington, DE 19899

Prothonotary's Office
Superior Court of the State of Delaware
In and for Kent County
Courthouse – 38 The Green
Dover, DE 19901

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

MARTIN B. O'CONNOR
Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, DE 19801

February 10, 2005

119

NOW, THEREFORE, IT IS ORDERED that the State's motion to affirm is GRANTED. The judgment of the Superior Court is AFFIRMED. The motion to withdraw is moot.

BY THE COURT:

/s/ Randy J. Holland
Justice

DEC. 01 2005

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

## IN AND FOR KENT COUNTY

STATE OF DELAWARE )
)
v. ) IK01-10-0159 thru 0173-R1
)
HENRY W. GLANDING )
(ID. No. 0105009486A) )
)
Defendant. )

*Submitted: August 2, 2005*
*Decided: November 30, 2005*

Martin B. O'Connor, Esq., Department of Justice, Wilmington, Delaware.
Attorney for the State of Delaware.

Michael W. Modica, Esq., Wilmington, Delaware. Attorney for Defendant

*Upon Defendant's Motion for Postconviction Relief*
*Pursuant to Superior Court Criminal Rule 61*

**VAUGHN, President Judge**

### ORDER

Upon consideration of defendant's Motion For Postconviction Relief, the
State's Response, the Commissioner's Report and Recommendation, and the record
in this case, it appears:

The defendant was guilty of 15 counts of Possession of Deadly Weapon by a

121

*State v. Henry W. Glanding*
ID. No. 0105009486A
November 30, 2005

Person Prohibited, 11 *Del. C.* § 1448, and was sentenced to 30 years at Level V, suspended after 15 years, followed by probation.

Prior to the trial, the defense counsel filed a motion to suppress. The motion partially contends that the search of the defendant's truck was warrantless and impermissible.    The motion was considered by the Court and subsequently denied.

2. After sentencing, an appeal was filed with the Delaware Supreme Court. The defendant's counsel filed a brief and Motion to Withdraw Pursuant to Supreme Court Rule 26(c) citing that no meritorious issues exited.    Counsel notified the defendant of the provisions under Rule 26(c) in addition to supplying him with copies of counsel's motion and brief. In addition, counsel also notified the defendant of his right to supplement the record, which he did.    Ultimately, the Delaware Supreme Court confirmed the defendants conviction and sentence.    Next, the defendant filed the pending Motion for Postconviction Relief in which he raises the following grounds for relief: 1) Defense Counsel rendered ineffective assistance of counsel  in violation of the Defendant's rights under the Sixth and Fourteenth Amendments to the United States Constitution by failing to challenge the validity of the search warrant; and 2) The State did not prove the elements of 11 *Del. C.* § 1448(b) because it did not show that the defendant used or attempted to use firearms to cause death or serious physical injury.

3.    The Motion for Postconviction Relief was referred to the Court Commissioner Andrea M. Freud for proposed findings and recommendation pursuant to 10 *Del. C.* § 512(b)(1)(b) and Superior Court Criminal Rule 61(a)(5).

4.    The Commissioner recommended that the Court deny the defendant's

2

*State v. Henry W. Glanding*
ID. No. 0105009486A
November 30, 2005

motion as procedurally barred under Rule 61(i)(3).    She determined that both grounds for relief were relying upon ineffective assistance of counsel. The defendant failed to substantiate any actual prejudice suffered as a result of counsel representation. The defendant contends that counsel should have objected to the search warrant during trial and that the warrant lacked probable cause. The warrant was supported by significant probable cause and would have been upheld if challenged at trial. The defendant fails to show any prejudice he suffered as a result of this.    After reviewing the record and counsel's affidavit, the Commissioner concluded that counsel's representation fell within the range of reasonable professional conduct. Therefore, finding the defendant's contention of ineffective assistance of counsel meritless.

Under the second ground, the defendant argues that to be found guilty of Possession of a Firearm by a Person Prohibited, the firearm would have to have been "used or attempted to be used . . . to cause death or serious physical injury" to be a "deadly weapon." The Commissioner determined that the    defendant "mischaracterizes the elements of Possession of a Firearm by a Person Prohibited." The phrase "used or attempted to be used" refers only to "dangerous instrument" as defined in subdivision (4) of 11 *Del. C.* § 222 and not the definition of a deadly weapon. At trial, the State satisfied its burden of proof with regard to Possession of a Firearm by a Person Prohibited and the defendant was found guilty of that offense. Whether the defendant used or attempted to use the firearm to cause death or serious physical injury is not at issue here. He is a felon and possessed several firearms, therefore, his argument is without merit.

*State v. Henry W. Glanding*
ID. No. 0105009486A
November 30, 2005

    5. A copy of the Commissioner's report dated June 28, 2005 is attached hereto. The defendant did not file an appeal from the Commissioner's Report and Recommendation.

    **NOW, THEREFORE, IT IS ORDERED** that:

    a. Having conducted a *de novo* review of the proceedings I adopt the well-reasoned Commissioner's Report and Recommendation;

    b. The defendant's Motion for Postconviction Relief is *denied*.

_____
President Judge

Enclosure
oc:    Prothonotary
cc:    Hon. Andrea M. Freud
        Martin B. O'Connor, Esq.
        Michael W. Modica, Esq.
        File

4

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

## IN AND FOR KENT COUNTY

| | | |
|---|---|---|
| **STATE OF DELAWARE** | ) | |
| | ) | |
| v. | ) | IK01-10-0159-R1 |
| | ) | to |
| **HENRY W. GLANDING** | ) | IK01-10-0173-R1 |
| | ) | |
| Defendant. | ) | |
| ID. No. 0105009486A | ) | |

## COMMISSIONER'S REPORT AND RECOMMENDATION

### Upon Defendant's Motion for Postconviction Relief
### Pursuant to Superior Court Criminal Rule 61

Martin B. O'Connor, Esq., Deputy Attorney General, Department of Justice, Wilmington, Delaware, for the State of Delaware.

Michael W. Modica, Esq., Wilmington, Delaware, for Defendant

FREUD, Commissioner
June 28, 2005

123

*State v. Glanding*
ID No. 0105009486A
June 28, 2005

The Defendant, Henry W. Glanding, ("Glanding"), was found guilty, following a two day trial on fifteen counts of Possession of a Deadly Weapon by a Person Prohibited, 11 *Del. C.* § 1448. Glanding was also facing one count of Possession of Firearm Ammunition by a Person Prohibited. On April 23, 2002, the Court sentenced Glanding to a total of 30 years at Level V, suspended after serving fifteen years for probation. Prior to trial, Defense Counsel filed a Motion to Suppress, in part, challenging the search of his Dodge Ram truck, contending that the warrantless search of the truck was impermissible, and that the search warrant, which included "any and all vehicles located on the property," did not include Glanding's truck because it was not "located on the property" at the time it was searched. The Court denied the motion, finding that the search of the passenger compartment of Glanding's truck was contemporaneous with Glanding's arrest and as such was lawful. Additionally, the Court held that the truck was a valid subject of the search warrant, even if was not "located on the property" at the time of the search, and that, in any event, the items found in the vehicle would have inevitably been discovered.[1]

A timely Notice of Appeal was filed. Glanding's counsel filed a brief and Motion to Withdraw pursuant to Supreme Court Rule 26(c). In the Motion to Withdraw, Appellate Counsel represented that he conducted a conscientious review of the record and concluded that no meritorious issues existed. By letter, counsel

---

[1]     *See Glanding v. State*, 2002 Del. LEXIS 731.

*State v. Glanding*
ID No. 0105009486A
June 28, 2005

informed Glanding of the provisions of Rule 26(c) and attached a copy of the Motion to Withdraw and accompanying brief. Glanding was informed of his right to supplement his attorney's presentation. Glanding, *pro se*, raised the following five issues for the Supreme Court to consider:

(i) the search of his Dodge Ram truck was improper;

(ii) the affidavit of probable cause was unsigned;

(iii) the prosecutor erred when he argued to the jury that it did not matter whether or not Glanding knew he was breaking a law;

(iv) Glanding would not have agreed to sever the charges if he'd known beforehand that the analysis of suspected methamphetamine that was seized from his truck was negative; and

(v) ineffective assistance of counsel.

The Supreme Court granted the State's Motion to Affirm as to all of Glanding's claims.[2] Next, Glanding filed the pending Motion for Postconviction Relief in which he raises two grounds for relief including ineffective assistance of counsel.

## FACTS

The following is a summary of the offenses and trial proceedings as noted by the Supreme Court in its opinion:

The evidence at trial reflects that on May 11, 2001, the Delaware State

---

[2]    *Id.*

*State v. Glanding*
ID No. 0105009486A
June 28, 2005

Police set up surveillance on the appellant's residence on Lion Hope
Road in Clayton, Delaware, to observe the actions of the appellant
prior to the police executing a search warrant at the appellant's
residence. Earlier in the day, the police had received information that
the appellant, Henry Glanding, was wanted out of Maryland for several
felony offenses, and that Glanding, who was a convicted felon with a
reported violent history, was known to carry a firearm. The police
observed Glanding's residence from approximately 1:00 p.m. until
about 8:30 p.m. on May 11 and obtained the signed search warrant
around 3:00 p.m. that day.

Between 5:00 p.m. and 8:30 p.m., the police observed a
shirtless Glanding working around his yard with what appeared to be
a revolver strapped to his waist. Out of concern for their safety, the
police decided not to arrest Glanding at his residence, or to execute the
search warrant, until Glanding was in his vehicle and away from the
residence.

At around 8:30 p.m., Glanding left his residence in his Dodge Ram
truck and headed south on Lion Hope Road. Approximately one-half
mile away from the residence, the police stopped Glanding in a "felony
car jam" in which the police used several vehicles to box in Glanding's
truck.[3] Once Glanding's truck was boxed in, the police extracted
Glanding from the truck, placed him on the ground, handcuffed him
and searched him. The police then searched the passenger compartment
of Glanding's truck. The police located a loaded .357 revolver in the
console.

A few minutes after Glanding was stopped and was otherwise

---

[3]     The purpose of the "felony car jam" is to decrease any chance of a pursuit.

4

*State v. Glanding*
ID No. 0105009486A
June 28, 2005

occupied with his arrest, the police executed the search warrant at his residence. The police located a number of firearms and ammunition in a safe in Glanding's living room and more guns in Glanding's laundry room.

## GLANDING'S CONTENTIONS

In his motion, Glanding raises the following grounds for relief:

Argument One: Defense Counsel rendered ineffective assistance of counsel in violation of the Defendant's rights under the Sixth and Fourteenth Amendments to the United States Constitution by failing to challenge the validity of the search warrant.

A.   Trial Counsel was ineffective by failing to contest the validity of the Search Warrant.

     1.   Probable Cause for issuance of the Search Warrant does not exist within the four corners of the Warrant Application and Affidavit.

     a.   The conclusory statements regarding the reliability of each informant was insufficient to establish their reliability.

     b.   There was insufficient basis to credit the information provided by each confidential informant.

     c.   The Probable Cause Affidavit was based upon conclusory language, information without sufficient factual foundation and stale information, which did not meet the probable cause test.

  2.   The Search Warrant and Application are defective.

125

*State v. Glanding*
ID No. 0105009486A
June 28, 2005

> 3.   The warrant was so facially deficient that the
>       executing officer did not have a good faith basis to
>       presume it was valid.
>
> Argument Two:  The State did not prove the elements of
> 11 *Del. C.* § 1448(b) because it did not show that the
> Defendant used or attempted to use firearms to cause
> death or serious physical injury.

## PROCEDURAL CONSIDERATIONS

Under Delaware Law the Court must first determine whether Glanding has
met the procedural requirements of Superior Court Criminal Rule 61(i) before it
may consider the merits of the postconviction relief claims.[4]   Under Rule 61,
postconviction claims for relief must be brought within three years of the conviction
becoming final.[5]  Glanding's motion was filed in a timely fashion, thus the bar of
Rule 61(i)(1) does not apply to the motion.  As this is Glanding's initial motion for
postconviction relief, the bar of Rule 61(i)(2), which prevents consideration of any
claim not previously asserted in a postconviction motion, does not apply either.

Grounds for relief not asserted in the proceedings leading to judgment of
conviction are thereafter barred unless the movant demonstrates:  (1) cause for the

---

[4]     *Ayers v. State,* 802 A.2d 278,281 (Del. 2002); *Bailey v. State,* 588 A.2d 1121,
1127 (Del. 1991); *Younger v. State,* 580 A.2d 554, 555 (Del. 1990) (citing *Harris v. Reed,* 489
U.S. 255 (1989)); *See also Dawson v. State,* 673 A.2d 1186, 1190 (Del. 1996).

[5]     Super. Ct. Crim. R. 61(i)(1).

6

*State v. Glanding*
ID No. 0105009486A
June 28, 2005

> adequate legal assistance"[;] [i]neffective assistance of counsel, then,
> is cause for a procedural default.[9]

A movant who interprets the final sentence of the quoted passage to mean that he can simply assert ineffectiveness and thereby meet the cause requirement will miss the mark. Rather, to succeed on a claim of ineffective assistance of counsel, a movant must engage in the two part analysis enunciated in *Strickland v. Washington*[10] and adopted by the Delaware Supreme Court in *Albury v. State*.[11] This analysis was further refined by the U.S. Supreme Court in *Lockhart v. Fretwell*.[12]

The *Strickland* test requires the movant show that counsel's errors were so grievous that his performance fell below an objective standard of reasonableness.[13] Second, under *Strickland* the movant must show there is a reasonable degree of probability that but for counsel's unprofessional error, the outcome of the proceedings would have been different, that is, actual prejudice[14] and that the

---

9    *Murray v. Carrier,* 477 U.S. 478, 488 (1986).

10   466 U.S. 668 (1984).

11   551 A.2d 53, 58 (Del. 1988).

12   506 U.S. 364, 369 (1993).

13   466 U.S. at 687; *see Dawson v. State*, 673 A.2d 1186, at 1190 (Del. 1996).

14   466 U.S. at 694; *see Dawson,* 673 A.2d at 1190; *Accord, e.g., Zebroski v. State,* 822 A.2d 1038, 1043 (Del. 2003); *Ayers v. State,* 802 A.2d 278, 281 (Del. 2002); *Steckel v. State,* 795 A.2d 651, 652 (Del. 2002); *Johnson v. State,* 813 A.2d 161, 167 (Del. 2001); *Bialach* (continued...)

8

*State v. Glanding*
ID No. 0105009486A
June 28, 2005

procedural fault and (2) prejudice from a violation of the movant's rights.[6] The bars
to relief are inapplicable to a jurisdictional challenge or to a colorable claim of
miscarriage of justice stemming from a constitutional violation that "undermined the
fundamental legality, reliability, integrity or fairness of the proceedings leading to
the judgment of conviction."[7]

Both of Glanding's claims  are premised on allegations of ineffective
assistance of counsel. Glanding has therefore alleged sufficient cause for not having
asserted all his grounds for relief at trial. These types of claims are not normally
subject to the procedural default rule, in part because the Delaware Supreme Court
will not generally hear such claims for the first time on direct appeal. For this
reason, many defendants, including Glanding, allege ineffective assistance of
counsel in order to overcome the procedural default.

However, this path creates confusion if the defendant does not understand that
the test for ineffective assistance of counsel and the test for cause and prejudice are
distinct, albeit similar, standards.[8] The United States Supreme Court has held that:

> [I]f the procedural default is the result of ineffective assistance of
> counsel, the Sixth Amendment itself requires that responsibility for the
> default be imputed to the State, which may not "conduc[t] trials at
> which persons who face incarceration must defend themselves without

---

[6]    Super. Ct. Crim. R. 61(i)(3).

[7]    Super. Ct. Crim. R. 61(i)(5).

[8]    *State v. Gattis*, 1995 WL 790961, at *3 (Del. Super.).

126

*State v. Glanding*
ID No. 0105009486A
June 28, 2005

performance of counsel "render[ed] the result of the trial unreliable or proceeding fundamentally unfair."[15] In setting forth a claim of ineffective assistance of counsel, a defendant must make and substantiate concrete allegations of actual prejudice or risk summary dismissal.[16]

In attempting to survive the first part of the *Strickland* inquiry - whether counsel's conduct falls outside the wide range of reasonable professional conduct - Glanding "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"[17]    While not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable."[18] Even evidence of "[i]solated poor strategy, inexperience, or bad tactics do[es] not necessarily

---

[14](...continued)

*v. State*, 773 A.2d 383, 387 (Del. 2001); *Outten v. State,* 720 A.2d 547, 552 (Del. 1998); *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996); *Skinner v. State,* 607 A.2d 1170, 1172 (Del. 1992); *Flamer v. State*, 585 A.2d 736, 753-754 (Del. 1990).

[15]    *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

[16]    *E.g., Outten v. State*, 720 A.2d at 552; *Righter v. State,* 704 A.2d 262, 264 (1997); *Younger v. State*, 580 A.2d 552, 556 (Del. 1990); *Robinson v. State,* 562 A.2d 1184, 1185 (Del. 1989). *Accord Wells v. Petsock,* 941 F.2d 253, 259-60 (3d Cir. 1991).

[17]    *Strickland,* 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 100-01 (1955)); *Wright*, 671 A.2d at 1356; *Flamer*, 585 A.2d at 753-54.

[18]    *Wright*, 671 A.2d at 1356; *Flamer*, 585 A.2d at 753-54.

*State v. Glanding*
ID No. 0105009486A
June 28, 2005

amount to ineffectiveness of counsel."[19] Nor does "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it... constitute" ineffective performance. [20]

In this case, a review of the record and Defense Counsel's affidavit shows that his pre-trial investigation, preparation and conduct during the trial and on appeal were the product of sound trial strategy and not at all unreasonable under the circumstances. This Court simply "cannot require defense counsel to choose one particular defense strategy over any other strategy that falls within the 'wide range of professionally competent assistance'"[21] because there is such a wide range of legitimate decision making which might be made by a competent attorney in a given situation.[22] And, "[c]hoices of trial strategies and tactics are insufficient to establish ineffective representation even though others may have made different choices and such choices may be subject to criticism."[23] Thus, reviewing courts who are

[19]   *Bellmore v. State*, 602 N.E. 2d 111, 123 (Ind. 1992) (citing *Strickland*)).

[20]   *Murray v. Carrier*, 477 U.S. 478, 486-87 (1986).

[21]   *Oliver v. Wainwright*, 795 F.2d 1524, 1531 (11th Cir. 1986) (quoting *Strickland*, 466 U.S. at 688-89.)

[22]   *Strickland*, 466 U.S. at 688-89; *State v. Wright*, 653 A.2d 288, 295-97 (Del. Super. 1994).

[23]   *Tyra v. State*, 574 N.E.2d 918, 924 (Ind. Ct. App. 1991) (quoting *Cochran v. State*, 445 N.E.2d 974 (Ind. 1983)).

10

*State v. Glanding*
ID No. 0105009486A
June 28, 2005

"deprived...of the feel of the trial courtroom [but] think [they] might have
recommended something else at trial if [they] had been there" still must be highly
deferential to the strategic choices of trial counsel.[24]

Generally, a claim for ineffective assistance of counsel fails unless both
prongs of the test have been established.[25] However, the showing of prejudice is so
central to this claim that the *Strickland* court stated "[i]f it is easier to dispose of an
ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect
will often be so, that course should be followed."[26] In other words, if the Court
finds that there is no possibility of prejudice even if a defendant's allegations
regarding counsel's representation were true, the Court may dispose of the claim on
this basis alone.[27] Thus the Court may dispose of a claim if there is insufficient
prejudice even if counsel's actions were in some way deficient.[28] Furthermore, the
defendant must rebut a "strong presumption" that trial counsel's representation fell
within the "wide range of reasonable professional assistance," and this Court must

---

[24]    *Moore v. Deputy Comm. of SCI-Huntingdon*, 946 F.2d 236, 246 (3d Cir. 1991).

[25]    *Strickland*, 466 U.S. at 687.

[26]    *Id.* at 697.

[27]    *State v. Gattis*, 1995 WL 790961, at *4 (Del. Super.).

[28]    *Whitley v. Bair*, 802 F.2d 1487, 1494 (4th Cir. 1986), cert. denied, 480 U.S. 951
(1987).

128

*State v. Glanding*
ID No. 0105009486A
June 28, 2005

eliminate from its consideration the "distorting effects of hindsight when viewing that representation."[29] The first consideration in the "prejudice" analysis alone "requires more than a showing of a theoretical possibility that the outcome was affected."[30] The defendant must actually show a reasonable probability of a different result but for trial counsel's alleged errors.[31]

Glanding's burden becomes even greater when this Court accounts for the last consideration mentioned above in setting out the ineffective assistance analysis, this analysis introduced in *Fretwell* built upon the previous "prejudice" standard. There, the U.S. Supreme Court said, reprising the position set out by Justice Powell in his concurring opinion in *Kimmelman v. Morrison*,[32] that a prisoner must show that because of counsel's performance the result of his trial was unreliable or the proceeding itself was fundamentally unfair.[33] The Court recognized that the right to the assistance of counsel is not an end of itself, but instead a means for achieving reliable outcomes. If the actual result was "'a fair trial, a trial whose result was reliable,'" there is no reason to upset the finality of a defendant's conviction simply because he claims a better lawyer might have obtained the "windfall" of a different

---

[29]   *Strickland*, 466 U.S. at 689; *Wright v. State,* 671 A.2d 1353, 1356 (Del. 1996).

[30]   *Frey v. Fulcomer*, 974 F.2d 348, 358 (3d Cir. 1992).

[31]   *Strickland*, 466 U.S. at 694.

[32]   477 U.S. 365, 393 (1986).

[33]   *Lockhart v. Fretwell*, 506 U.S. 364, 371-72 (1993).

12

*State v. Glanding*
ID No. 0105009486A
June 28, 2005

result.[34] Therefore, "an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."[35]

In the case at bar, Glanding attempts to show cause for his procedural default by making merely conclusory assertions of ineffectiveness of counsel. In regards to prejudice he has not met the burden outlined above. Glanding asserts that had his counsel objected to the search warrant, the Court would have suppressed the evidence.

Glanding's contention of ineffective assistance of counsel is without merit. Even if counsel had challenged the search warrant at trial, it would have been found to be valid because it was supported by probable cause. The probable cause supporting the warrant was obtained through statements of Confidential Informants ("C.I.'s"), some of whom are C.I.'s who in the past had provided reliable information and through firsthand observations of Glanding by police officers that not only corroborated information provided by the C.I.'s, but gave the officers additional cause to search Glanding's house and person. Since the search warrant was supported by probable cause and would have been upheld, Glanding cannot show that Counsel's failure to challenge it materially prejudiced him.

---

[34]     *Fretwell*, 506 U.S. at 369-70 (quoting *Strickland*, 466 U.S. at 687).

[35]     *Fretwell*, 506 U.S. at 369; *State v. Wright*, 653 A.2d 288, 297 (Del. Super. Ct. 1994) (citing *Fretwell*).

*State v. Glanding*
ID No. 0105009486A
June 28, 2005

Glanding's claim that the May 11, 2001 search warrant suffered from lack of probable cause is also without merit. The Warrant and Affidavit set forth facts gathered during police investigations and information provided by C.I.'s some of whom were past proven and reliable, that is they provided reliable information in the past. These C.I.'s also had prior dealings with Glanding on numerous occasions and their information was corroborated by other independent C.I.'s and the police investigation.

Search warrants are directed at property where there is probable cause to believe that instrumentalities or evidence of crime will be found.[36] A search warrant affidavit must meet the "four corners" test, setting forth sufficient facts to enable a reasonable person to believe that an offense has been committed and that seizable property will be found in a particular place.[37] A *prima facie* showing is not required, only the probability of criminal conduct is necessary to support a finding of probable cause.[38]

In reviewing whether probable cause to obtain a search warrant existed, the Delaware Supreme Court has adopted a "totality of circumstances" test, favoring a common sense interpretation of the search warrant affidavit and giving "a certain

---

[36]   *U.S. v. Conley*, 4 F.3d 1200, 1207 (3rd Cir. 1993).

[37]   *Jensen v. State*, 482 A.2d 105, 110-11 (Del. 1984).

[38]   *State v. Walker*, 444 A.2d 277, 280 (Del. Super. Ct. 1982).

14

*State v. Glanding*
ID No. 0105009486A
June 28, 2005

degree of deference to the issuing magistrate.[39] In this case, the search warrant was authorized by the Superior Court.

In measuring the totality of circumstances when a C. I.'s tip is involved, the Court should consider such issues as the reliability of the C.I., the details contained in the tip and the degree to which the tip is corroborated by independent police surveillance and information.[40] If a C. I.'s tip is sufficiently corroborated, it may form the basis for probable cause even though nothing is known about the C.I.'s credibility.[41] In the instant case, three C.I.'s independently gave police information that Glanding regularly sold methamphetamine and cocaine, both at his residence and at a Maryland bar called "Mickey's." All three also informed the police that Glanding was a high-ranking member of the motorcycle gang known as the "Pagans." Glanding's membership in this gang is not itself the basis for the Affidavit's probable cause. However, probable cause is strengthened when the C.I.'s statement that the Pagan gang is involved in the methamphetamine trade is tied with that C.I.'s statement and the other C.I.'s statements that Glanding was also known to trade in methamphetamine and that some of the C.I.'s had purchased methamphetamine from Glanding on numerous occasions and others had observed such sales.

---

[39]    *Gardner v. State*, 567 A.2d 404, 409 (Del. 1989).

[40]    *Tatman v. State*, 494 A.2d 1249, 1251 (Del. 1985).

[41]    *Id.* at 1251.

*State v. Glanding*
ID No. 0105009486A
June 28, 2005

The detail provided in the C.I.'s tips further strengthens the totality of circumstances analysis leading to a finding of probable cause. C.I. 3 knew Glanding's address, described his house in detail, said that "he" had observed Glanding conducting over 50 sales of methamphetamine, many of them in the months before the warrant was obtained and has traveled with Glanding to make a methamphetamine delivery. The informant gave the name of the Maryland bar where Glanding is known to sell drugs and told police that Glanding keeps a record of his drug sales in a notebook and that the notebook is kept at his residence. The informant provided Glanding's gang nickname and told police that Glanding owns numerous guns and always keeps one about his person. The level of detail provided in this one informant's statement alone supports a finding that the totality of circumstances led to probable cause for the warrant to issue.

Glanding also challenges the statements of the C.I.'s on the basis that the statements were "stale." Where staleness is alleged, the Delaware Supreme Court has held that "...the test of temporal proximity is determined on an *ad hoc* basis in the light of the circumstances of each case.[42] Where an isolated incident is alleged or the evidence to be sought is ephemeral or subject to change because of the passage of time, staleness becomes a more critical issue. Where a pattern of criminal activity is alleged to have occurred at one location, as in this case, it "...demonstrates the probability that [Glanding's] drug activity persisted through the

---

[42]     *Jensen*, 482 A.2d at 111.

16

*State v. Glanding*
ID No. 0105009486A
June 28, 2005

date of the search warrant application. "[43] Because the C.I.'s revealed a long history
of drug dealing by Glanding, primarily at his residence, the temporal proximity of
the statements to the issuance of the warrant is not crucial. Further the statement
of C.I. 3, the informant who provided the most detailed information, was procured
within *seven* days of the warrant application.[44] Because C.I. 3's statement was
obtained within one week of the warrant application and because of the ongoing
nature of Glanding's drug trade, the challenge for staleness of the information is
without merit.

A magistrate may also rely on the Affiant's knowledge of a suspect to
corroborate and establish the reliability of a C.I.'s tip.[45] Police investigation in this
case led to the discovery of numerous facts corroborating the statements of the
C.I.'s. Inquiries made with the Delaware State Police Intelligence Unit revealed
that Glanding was indeed a high ranking member of the "Pagan" motorcycle gang.
A Division of Motor Vehicles inquiry revealed Glanding did indeed live at the
location provided by C.I. 3 and police observation of the residence corroborated the
description of the residence given by C.I. 3. An inquiry into Glanding's criminal
history revealed an extensive drug related arrest history beginning in 1974 and
continuing into the 1990's. As the Supreme Court stated in *Jones v. United States*,

---

[43]    *Gardner,* 567 A.2d at 411.

[44]    See Glanding's Exhibit B, Application and Affidavit at paragraph 11.

[45]    *Illinois v. Gates*, 462 U.S. 213 (1983).

*State v. Glanding*
ID No. 0105009486A
June 28, 2005

"Corroboration through other sources of information reduced the chances of a reckless or prevaricating tale; that petitioner was a known user of narcotics made the charge against him much less subject to skepticism than would be such a charge against one without such a history."[46]

When taken in their entirety, the statements of the C.I.'s corroborated by the police and other statements of C.I.'s, police investigation of Glanding and his own past history of involvement with the drug trade, provided ample cause to believe that instrumentalities or evidence of crime would be found at Glanding's residence and on his person. Because such a full showing of probable cause was made, a challenge of the validity of the search warrant by Trial Counsel would not have been successful. Because Glanding cannot show a reasonable probability that the result at trial would have been different had counsel challenged the search warrant, his claim of ineffective assistance of counsel is clearly without merit.

In Glanding's second ground for relief he attempts to overcome the procedural bar of Rule 61(i)(3) by claiming his attorney was ineffective for not making the unique claim that a firearm does not constitute a "Deadly Weapon" unless it is "...used or attempted to be used...to cause death or serious physical injury." Glanding also alleges that 11 *Del. C.* § 1448 and § 222(5) are unconstitutionally vague.

---

[46]     362 U.S. 257, 271 (1960), overruled on other grounds by *U.S. v. Salvucci,* 448 U.S. 83 (1980).

18

*State v. Glanding*
ID No. 0105009486A
June 28, 2005

Glanding mischaracterizes the elements of the offense of Possession of a
Firearm by a Person Prohibited. At trial, the State proved beyond a reasonable
doubt each element of the offenses by employing the proper construction of the
sections. Glanding incorrectly reads 11 *Del. C.* § 222(5) and he misstates the
theory of statutory construction to bring about his interpretation of the statute.

Glanding's "interesting" argument urges this Court to define a deadly weapon
for the purposes of 11 *Del.* C. § 1448(b) using the definition contained in 11 *Del.
C.* § 222(5) as one that "is used or attempted to be used" to cause death or serious
injury. However 11 *Del. C.* §222(4) and (5) must be read in their entirety. Section
222(4) defines a "dangerous instrument." Section 222(5) states:

> 'Deadly weapon' includes a firearm, as defined in subdivision (11) of
> this section, a bomb, a knife of any sort (other than an ordinary
> pocketknife carried in a closed position), switchblade knife, billy,
> blackjack, bludgeon, metal knuckles, slingshot, razor, bicycle chain or
> ice pick, *or* any dangerous *instrument*, as defined in subdivision (4) of
> this section, which is used, or attempted to be used, to cause death or
> serious physical injury...(emphasis added).

Clearly the "used or attempted to be used" language applies only to the
immediate preceding pronoun, "dangerous instrument." The phrase "or any
dangerous instrument, as defined in subsection (4) of this section which is used, or
attempted to be used, to cause death or serious physical injury" was added to the
statute in 1992 in response to the narrow interpretation of a "deadly weapon" given

3
151

*State v. Glanding*
ID No. 0105009486A
June 28, 2005

by the Court in *Stansbury v. State*.[47] In *Stansbury*, the Superior Court declined to expand the definition of a deadly weapon to include a bowling ball and a barbell, holding that while these were "...items of common usage, and while they may become deadly instrumentalities, they are not deadly weapons."[48] In adding the "dangerous instrument" language to the statute, the Legislature was concerned with *expanding* the possible list of deadly weapons, not *restricting* it by requiring that weapons first be used to do harm.

In addition to the clear legislative intent, the rule of statutory construction as the "Last Antecedent Rule" also requires reading the phrase following "which" (the used, or attempted to be used" language) as applying only to the immediately preceding noun of "dangerous instrument." The Last Antecedent Rule is that "...relative or qualifying words, phrases or clauses are ordinarily to be applied solely to the words or phrases immediately preceding."[49]

Because the clear legislative intent and principles of statutory construction indicate that there is no need for a "deadly weapon" to be used or attempted to be used before the elements of Possession of a Firearm by a Person Prohibited are

---

[47]    591 A.2d 188 (Del. Super. Ct. 1991); *Taylor v. State*, 679 A.2d 449, 453-54 (Del. 1996).

[48]    *Stansbury*, 591 A.2d at 193.

[49]    *Brown v. Brown*, 29 A.2d 149, 153 (Del. Super. Ct. 1942); *Matter of Surcharge Classification 0133 by Delaware Compensation Rating Bureau*, 655 A.2d 295, 302 (Del. Super. Ct. 1994).

20

*State v. Glanding*
ID No. 0105009486A
June 28, 2005

satisfied, the State met its burden at trial by showing that Glanding was a convicted felon and he possessed numerous firearms that he kept in his home and about his person. Clearly Glanding's argument is without merit.[50]

## CONCLUSION

After thoroughly reviewing the record in this case and the law, it is abundantly clear that Glanding has failed to overcome the procedural bars of Rule 61 and that both of his claims are meritless. Consequently, I recommend that the Court *deny* Glanding's Motion for Postconviction Relief as procedurally barred by Rule 61(i)(3)



Commissioner Andrea M. Freud

oc: Prothonotary
cc: Hon. James T. Vaughn, Jr.
Lloyd A. Schmid, Jr., Esq.
File

---

[50] As is further noted in Trial Counsel's Affidavit, 11 *Del. C.* § 203 provides that penal statutes "…must be construed according to the fair import of their terms to promote justice and effect the purposes of the law…" The statute for which Glanding was convicted makes the purchase, possession or ownership of a deadly weapon illegal (in this case, 15 firearms), regardless if the deadly weapon in question was "used or attempted to be used." See 11 *Del. C.* § 1448(a)(1).

IN THE SUPREME COURT OF THE STATE OF DELAWARE

HENRY GLANDING,                          )
                                         )
    Defendant Below - Appellant,     )       Supreme Court No.
                                         )
v.                                       )       On appeal from Superior Court
                                         )       ID No. 0105009486A,B
THE STATE OF DELAWARE,                   )
    Plaintiff Below - Appellee.      )

COPY

NOTICE OF APPEAL

TO:    Martin O'Connor, DAG
    Department of Justice
    820 North French Street
    Wilmington, Delaware 19801

PLEASE TAKE NOTICE that Henry Glanding, Defendant below – Appellant, does hereby appeal to the Supreme Court of the State of Delaware from the decision and order denying Defendant's Rule 61 Motion for Post Conviction Relief from his criminal conviction and sentence in I.D. No. 0105009486A,B.

of the Superior Court, in and for Kent County, Delaware by Judge James T. Vaughn, Jr. dated November 20, 2005. (decision attached hereto). The name and address of the attorney below for Appellee is:

               Martin O'Connor, DAG
               Department of Justice
               820 N. French Street
               Wilmington, DE 19801

The party against whom the appeal is taken is the State of Delaware.

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| Henry Glanding, | ) | |
| | ) | |
| Defendant Below – | ) | |
| Appellant, | ) | Supreme Court No.631,2005 |
| | ) | |
| v. | ) | On appeal from Superior |
| | ) | Court |
| | ) | ID No. 0105009486 A,B |
| | ) | |
| THE STATE OF DELAWARE, | ) | |
| Plaintiff Below – | ) | |
| Appellee. | ) | |

APPELLANT'S OPENING BRIEF

MICHAEL W. MODICA, ESQUIRE
Bar ID # 2169
Attorney for Henry Glanding
P.O. Box 437
Wilmington, DE 19899
(302)425-3600

Filed March 7, 2006

## TABLE OF CONTENTS

Table of Citations ..................................... ii

Summary of Argument ................................... 1

Nature and Stage of Proceedings ....................... 2

Statement of Facts .................................... 3

Argument

I.  DEFENSE COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF
COUNSEL IN VIOLATION OF THE DEFENDANT'S RIGHTS UNDER
THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED
STATES CONSTITUTION BY FAILING TO CHALLENGE THE
VALIDITY OF THE SEARCH WARRANT.

.............................................................5

II. THE STATE DID NOT PROVE THE ELEMENTS OF 11 DEL. C.
§1448(b) BECAUSE IT DID NOT SHOW THAT THE DEFENDANT
USED OR ATTEMPTED TO USE FIREARMS TO CAUSE DEATH OR
SERIOUS PHYSICAL INJURY

...........................................................17

Conclusion ...........................................22

*State v. Glanding*, Super., ID IK01-10-0159 thru 0173-RI, Vaugh,
J., (11-30-05) (attached)

## Table of Citations

*Dorsey v. State*, 761 A.2d 807 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . .17

*Garner v. State,* 314 A 2d 908 (1973) . . . . . . . . . . . . . . . . . . . . . . . . 8

*Gardner v. State*, Del Supr., 567 A.2d  404 (1989) . . . . . . . . . . . 6

*Glanding v. State*, Del. Supr., No. 236, 2002 (order)
(12-13-2002). (Exhibit A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

*Illinois v. Gates*, 462 U. S. 213, 238 (1983) . . . . . . . . . . . . . . . . 6, 7

*In re, Shylish*, 743 U.S. 165 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Jensen v. State*, Del Supr., 482 A. 2d 105 (1984) . . . . . . . . . . . 6, 7

*Kane v. State*, Del. Supr., 327 A.2d 744 (1974) . . . . . . . . . . . . . . 19

*Matter of Surcharge Classification 0133*, Del. Super.
655 A.2d 295. (footnote 9)(1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Skinner v State* Del. Supr., 607 A.2d 1170 (1992), quoting
*Strickland v. Washington*, 466 US 688 (1984) . . . . . . . . . . . . . . . . 5

*Spinelli v. U.S.*, 393 U.S. 410 (1969)  . . . . . . . . . . . . . . . . . . . . . . 9

*State v. Lillie*, W. Va. Supr., 461 S.E. 2d 101 (1995) . . . . . . . 9

*State v. Transou*, Tenn. App., 928 S. W. 2d 949 (1996) . . . . . . . 9

*State v. Valentine*, Tenn. Supr., 911 S. W. 2d 328 (1995) . . . . 9

*United States v. Davis*, 714 F.2d 896 (9th Cir. 1983) . . . . . . . . 7

*United States v. Harris*, 403 U. S. 573 (1971) . . . . . . . . . . . . . . 9

*United States v. Hendricks*, 743 F.2d 53 (9th Cir. 1984) . . . . . 7

*United States v. Leon,*  468 US 897 (1984)  . . . . . . . . . . . . . . . . . .16

*United States v. McKinney*,143 F 3d 325, 328
7th Circuit 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Redrick*, 90 F.3d 1276 (7th Cir. 1996) . . . . . 9

*Wright v. State*, Del. Supr., 671 A.2d 1353 (1996) . . . . . . . . . . 5

*Winters v. Township of Voorhees*, N.J. Super.,
726 A.2d 1013, 1016 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## SUMMARY OF ARGUMENT

I.    Trial counsel was ineffective for failing to contest the suffering of the search warrant and affidavit in this case. Defendant suffered prejudice from trial counsel's failure to contest the validity of the search warrant and affidavit because there was insufficient reliable information to establish probable cause to support the warrant.

II.   The State failed to prove the elements of 11 Del. C. §1448 (b) because a firearm does not constitute a deadly weapon when it is used or is attempted to be used to cause death or serious physical injury. The State failed to show that any weapons possessed by Defendant were used or attempted to be used to cause death or serious physical injury.

## Nature and Stage of Proceedings

On May 12, 2001 the Defendant was arrested on multiple counts of Possession of a Deadly Weapon by a Person Prohibited as well as a number of drug related offenses.  Glanding was indicted on June 4, 2001, and reindicted for 27 offenses on October 1, 2001.    Thereafter, the Superior Court granted Glanding's motion to sever 16 weapons charges.  Glanding proceeded to trial on the 16 severed charges on March 6, 2002. He was found guilty of 15 counts of Possession of a Firearm by a Person Prohibited.    On April 23, 2002 court sentenced Glanding to a total of 30 years at level 5 suspended after 15 years for probation.

Glanding appealed his convictions to the Delaware Supreme Court which was denied by order dated December 13, 2002.

Defendant followed a Rule 61 Motion for Postconviction Relief which was denied by order of President Judge James T. Vaughn Jr. on November 30, 2005.   Defendant filed a Notice of Appeal from the order on December 23, 2005.

This is Defendant's Opening Brief in support of his appeal.

## Statement of Facts

On direct appeal, the Delaware Supreme Court found the following facts:

On May 11, 2001 Delaware State Police set up surveillance on the Defendant's residence on Lion Hope Road in Clayton, Delaware to observe the actions of the defendant prior to the police executing a search warrant at his residence. Earlier in the day, the police had received information claiming that Defendant was wanted out of Maryland for several felony offenses, and that he was a convicted felon with a report violent history. He was known to carry firearms. The police observed Glanding's residence from approximately 1:00 p.m. until about 8:30 p.m. on May 11 and obtained the sign search warrant around 3:00 p.m. that day.

Between 5:00 p.m. and 8:30 p.m., the police observed a shirtless Glanding working around his yard with what appeared to be a revolver strapped to his waist. Out of concern for their safety, the police decided not to arrest Glanding at his residence, or to execute a search warrant, until Glanding was in his vehicle away from the residence.

At around 8:30 p.m., Glanding left his residence in his Dodge Ram truck and headed south on Lion Hope Road. Approximately one half mile away from the residence the police stopped Glanding using a "felony car jam" in which the police use several vehicles to box in Glanding's truck. Once Glanding's

truck was boxed in, the police extracted him from the truck, placed him on the ground, handcuffed and searched him. The police then searched the passenger compartment of Glanding's truck. The police located a loaded 357 revolver in the console.

After Glanding was stopped and was otherwise occupied with his arrest, the police executed the search warrant at his residence. The police located a number of firearms in a safe in Glanding's living room and more guns in his laundry room.

Glanding was convicted of 15 counts of Possession of a Deadly Weapon By a Person Prohibited. At trial he stipulated that he was a convicted felon having pled guilty in 1980 to Possession with Intent to Deliver Methamphetamine. Glanding was sentenced to a total of 30 years at level 5 imprisonment suspended after 15 years, for nine years of probation.[1]

---

[1] *Glanding v. State*, Del. Supr., No. 236, 2002 (order)(12-13-2002). (A-13).

/4/

ARGUMENT I

DEFENSE COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL
IN VIOLATION OF THE DEFENDANT'S RIGHTS UNDER THE SIXTH AND
FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION BY
FAILING TO CHALLENGE THE VALIDITY OF THE SEARCH WARRANT.

Standard and Scope of Review for Ineffective Assistance of
Counsel

In order to prove ineffective assistance of counsel, the
defendant, in a post-conviction proceeding, must demonstrate that
counsel's representation  "fell below an objective standard of
reasonableness, and that counsel's actions were prejudicial.
There is a reasonable probability that, but for counsel's
unprofessional errors, the result of the trial would have been
different."[2]  In applying the *Strickland* standard, there is a
"strong presumption that the representation was professionally
reasonable."[3]

MERITS

A.   Trial Counsel Was Ineffective By Failing to Contest the
Validity of the Search Warrant.

Trial counsel has a duty to thoroughly review a search
warrant and application to determine if probable cause for
issuance of the search warrant exists within the four quarters of
the warrant application and affidavit.  Here, trial counsel was
ineffective by failing to thoroughly review the warrant
application and affidavit, expressly conceding "that he did not

---

[2] *Skinner v State* Del. Supr., 607 A.2d 1170 (1992), quoting
*Strickland v. Washington*, 466 US 688 (1984).
[3] *Wright v. State*, Del. Supr., 671 A.2d 1353 (1996).

challenge the validity of the search warrant."[4]   Defendant was prejudiced by this failure by the admission of evidence that should have been suppressed due to an invalid search warrant.

**1.   Probable cause for issuance of the search warrant does not exist within the four corners of the warrant application and affidavit.**

Standard and Scope Of Review For Issuance of a Search Warrant

The trial court's decision finding that a search warrant was supported by probable cause is reviewed de novo to determine whether there was a substantial basis for finding a fair probability that evidence would be found at the place to be searched under the totality of the circumstances.[5] Probable cause for the issuance of a search warrant is limited to a review of the four corners of the search warrant affidavit.[6]   The reviewing court must limit its inquiry to the facts considered by the judge who issued the warrant.

Merits

In order for a search warrant to be issued, probable cause for the issuance must be established.  An application for search warrant must be supported by a sworn affidavit that on its face shows facts establishing probable cause to search.   Probable

---

[4] *Glanding v. State*, Del. Supr., No. 236, 2002, Order (Dec. 13, 2002)
[5] *Illinois v. Gates*, 462 U. S. 213, 238 (1983).
[6] *Jensen v. State*, Del Supr., 482 A. 2d 105 (1984); *Gardner v. State*, Del Supr., 567 A.2d 404 (1989).

cause to justify the issuance of a search warrant must be manifest at the time of the application to make the search. In other words, facts supporting probable cause cannot be stale.[7] Although a search may be based on information provided by a confidential informant, the determination of whether an informant's information is sufficient to support a finding of probable cause must be resolved by considering the "totality of the circumstances."[8] In reliance upon *Gates*, the court in *United States v. Hendricks*,[9] cautioned "that courts must continue to conscientiously review the sufficiency of affidavits upon which warrants are issued." The reviewing court must determine whether there is "substantial evidence in the record supporting the magistrate's decision to issue the warrant."[10] In *Gates*, the Supreme Court concluded that probable cause is determined through a "balanced assessment of the relative weights of the various indicia of reliability attendant on an informant's tip." However, an informant's veracity and basis for knowledge are among the elements within the "totality of circumstances" to be considered in determining whether, as a practical matter, there is a fair probability that contraband or evidence of a crime will be found in a particular location. The Court cautioned that an

---

[7] *Jensen v. State*, Del Supr., 482 A.2d 105 (1984).

[8] *Illinois v. Gates*, 462 U. S. 213 (1983).
[9] 743 F.2d 53 (9th Cir. 1984)
[10] *United States v. Davis*, 714 F.2d 896 (9th Cir. 1983).

affidavit must still establish a "substantial" basis for the existence of probable clause and "wholly conclusory statements" and "their conclusions" do not support the finding.

The preclusion against relying upon "wholly conclusory statements" and "their conclusions" applies to statements by informants. Under the "totality of circumstances" test, the magistrate making the probable cause determination must have an independent basis for determining the reliability of a confidential informant other than the bald assertion of reliability by the police officer. Conclusory allegations about past performance of an informant are not sufficient to verify the informant's reliability. For example, a showing that the confidential informant has provided information that led to arrests and/or convictions in the past is some verification of his reliability. In other words, an issuing magistrate must have a basis for justifying whether the officer's characterization of the informant's performance is justified.

Even if there is sufficient information to establish the informant's past reliability, the affidavit should establish the informant's basis for knowledge supporting the conclusions attributed to the informant. The basis of knowledge inquiry includes whether the informant's conclusion is based upon first-hand knowledge or hearsay.

In *Garner v. State*, Del Supr.,[11] the Delaware Supreme Court addressed the issue of what constitutes reliability:

---

[11] 314 A 2d 908 (1973),

145

> To measure something as elusive of concrete
> definition as "reliability," is, of course,
> a difficult task; boundaries of the term
> cannot be drawn with any degree of
> precision. It is certain, however, that a
> bare statement of the belief of the police
> officer, as to the reliability of an
> unnamed informant and the truthfulness of
> his statements, is not sufficient basis for
> a judicial accreditation of the report of
> such informant as "reliable" within the
> constitutional guarantee.[12]

Similarly, a bare statement that the informant information came from a "creditable source" is insufficient. [13]

For instance, in *United States v. Redrick*,[14] it was held that an officer's statement "that the informant provided reliable information in the past" is an unsupported conclusion which does not demonstrate probable cause.   In *State v. Transou*,[15] the contention that the informant "has proved reliable in the past "was held to be insufficient because of the lack of explanatory facts.   In *State v. Valentine*,[16] the reference to an informant as a "reputable and reliable person" was determined to be an "insufficient conclusory statement."   In *State v. Lillie*,[17] the characterization of an informant as a "reliable confidential informant" was held insufficient and not entitled to credit.

The information contained in the search warrant application

---

[12] *United States v. Harris*, 403 U. S. 573 (1971).

[13] *Spinelli v. U.S.*, 393 U.S. 410 (1969).

[14] 90 F.3d 1276 (7th Cir. 1996),
[15] Tenn. App., 928 S. W. 2d 949 (1996),
[16] Tenn. Supr., 911 S. W. 2d 328 (1995),
[17] W. Va. Supr., 461 S.E. 2d 101 (1995)

and affidavit in this case (A-22) fails to meet the totality of
circumstances test for the following reasons:

a) the conclusory statements regarding the reliability of each
informant was insufficient to establish their respective
reliability;

b) there was insufficient factual basis to credit the
information provided by each confidential informant;

c) the probable clause affidavit was based upon conclusory
language, information with out sufficient factual
foundation, and stale information, which did not meet the
probable cause test.

**The conclusory statements regarding the reliability of each
informant was insufficient to establish their respective
reliability.**

The search warrant application in this case referred to
three separate confidential informants to support probable cause
for the search warrant. The police did not refer to confidential
informant #1 as an informant who has provided information which
has led to arrests and/or convictions in the past, or that he was
otherwise reliable. There is no information that this informant
provided reliable information in the past or any other facts
demonstrating that he should be accepted as reliable. The court
cannot give any credit to the statements of this informant
because there are no facts or history to support a finding of his
reliability. Since there is no information to support the
reliability of this informant, there is no basis to give credit
to any of his information.

Confidential informant #2 is referred to as a "past proven
reliable individual who has provided drugs and criminal

147

information to the Delaware State Police in the past and that the information provided was determined to be true and correct." It is significant that the officer is unable to say that this confidential informant has provided information that has led to arrests and/or convictions. There is no information about the frequency, duration or recency of the information provided by this informant in the past. While the information provided about this informant is stronger than for confidential informant #1, it still falls short of meeting the test to support a finding of reliability.

Confidential informant #3 is referred to as a "past proven reliable individual and has assisted the Delaware State Police with drug related investigations which resulted in the arrests and convictions of drug dealers." This statement more closely approaches the information needed to assess the reliability of the confidential informant.

**There was insufficient factual basis to credit the information provided by each confidential informant.**

When a search warrant is based on the tips of informants, as in this case, the proper analysis is whether probable cause exists from the totality of the circumstances to determine a sufficient level of reliability of the informant, and the basis of knowledge for his information. Thus, even if a confidential informant has a prior history of reliability, the court must still assess whether the information provided by the informant is credible. Some factors that help determine whether a court had

sufficient information in the record before it to issue a warrant
are as follows:

1. Whether the informant made firsthand observations;

2. The degree of detail the informant provided;

3. Whether the police corroborated the informant's story
with independent investigation;[18]

The information provided by confidential informant #1 does
little to establish the factual basis of the information he
provided.     First, the statement that the defendant "is a
distributor of methamphetamine and is known to sell that drug at
a bar in Maryland" is a conclusory statement not supported by
firsthand observation.      There is simply no information
establishing this informant's basis for his knowledge.   Second,
the statement that the defendant has a nickname of "hardhead",
and is a member of an outlaw motorcycle club known as the
"Pagans" is not information that advances the probable cause
test.   A person's nickname, and affiliation with a motorcycle
club, are not relevant factors in the probable cause equation.
Furthermore, membership in the Pagans is meaningless as it is not
illegal to be a Pagan.  Conversely, there is no basis to conclude
that all Pagans are criminals.   In short, membership in the
Pagans is a red herring since mere membership in this club is not
sufficient for a finding of probable cause.     Thus, the
information provided by confidential informant #1 is not

---

[18] *United States v. McKinney*, 143 F 3d 325, 328 (7th Circuit 1998).

creditable because of the lack of factual basis for the information provided, as well as the nature of the information provided.

The information provided by confidential informant #2 is also flawed. This informant stated that he observed the defendant distribute large quantities of methamphetamine to numerous subjects attending a party, and that he is a distributor of methamphetamine. While the informant provided this information to the police in March, 2001, the informant did not state the time frame of the party where he allegedly observed the defendant engaged in illegal drug activity. Did he observe this activity a week, month or a year ago? It is well-established that the time frame of information provided by the confidential informant is crucial since probable clause cannot be established by stale information. Here, the claim that the defendant allegedly sold drugs at a party cannot be given any weight since the informant did not provide the time frame when it allegedly occurred. Furthermore, the statement that the defendant's nickname is hardhead, and that he is a member of the Pagans, does nothing to advance the probable cause argument.

Confidential informant #3 made conclusory statements that the defendant is a distributor of methamphetamine and cocaine, and that he has purchased drugs from him several times in the past, and has observed over 50 sales of methamphetamine within the last year, many of which have occurred within the last couple of months. While the information provided by this informant is

stronger, because it is allegedly based upon firsthand observation, it still is diminished by the lack of a precise time frame of the illegal activity. Furthermore, he does not provide any basis to conclude that drugs would **currently** be located at Glanding's residence since the only time he observed drugs at that location was when he purchased drugs from Glanding "in the past". Since the informant does not provide a specific time frame for when he "allegedly" purchased drugs from Glanding at his residence, there is no basis to conclude that drugs would **currently** be found at his residence. Lastly, the informant does not state that his observations of "over 50 sales of methamphetamine within the last year" occurred at Glanding's residence. While this informant does provide more specific information about the time frame of his observations of the defendant, the defective information aforementioned is not credible information supporting probable cause.

**The probable clause affidavit was based upon conclusory language, information without sufficient factual foundation, and stale information which did not meet the probable cause test.**

As stated above, the information provided by the three confidential informants was not worthy of credit because it was based upon information from informants with questionable reliability, was conclusory, and did not include sufficient factual detail to support their respective reliability and assertions.

The balance of the affidavit of probable clause is similarly flawed. The defendant's criminal history is not

relevant because it is not sufficient to establish probable clause. The defendant's criminal history is improperly included to lead the judge to conclude that because Glanding committed crimes in the past, he was probably committing the crime that he was currently being investigated for. The defendant's criminal history is not a factor to be considered in determining whether an individual is currently committing a crime. Thus, this information was prejudicial and improperly infected the probable cause assessment.

The statement that McGee's Bar, located in Maryland, is a distribution center for methamphetamine, and that it is frequented by numerous members of the Pagan motorcycle club, adds nothing to the assertion that drugs would currently be located in the defendant's residence.

The probable cause affidavit also contains stale information which should not have been considered by the court. This information includes allegations that the defendant was involved in illegal drug activity in 1993, approximately 8 years prior to this investigation.

Lastly, the affidavit reiterates and re-emphasizes the allegations that Glanding is a member of the Pagan motorcycle club, as if it were a crime to be a member of the club. Of course, it is not illegal to be a member of the Pagan motorcycle club, therefore it is not sufficient to conclude that if you are a member of the Pagans, that there is probable cause to believe that you are probably committing a crime.

2.   The search warrant and application are defective.

The search warrant is defective on its face, under any scenario.   Pursuant to 11 *Del. C.* § 2310 (a), the police have used the statutory form "search warrant," which is required to state with specificity, that he has reason to believe that a particular place **or location** contains contraband or evidence of a crime.   In this case, the actual search warrant never listed 829 Lion Hope Road, as a specific location to be searched.   The search warrant is blank following the paragraph…. "as I am satisfied that there is probable cause to believe that a certain property, namely." The failure to list the residence following that paragraph is a fatal flaw rendering the search warrant defective.   Furthermore, the reference to addendum #1 does not salvage the search warrant as the addendum does not list the defendant's residence.

3.   **The warrant was so facially deficient that the executing officer did not have a good-faith basis to presume that it was valid.**

In *United States v. Leon,*[19] the Court held that the exclusionary rule should not be applied when the officer conducts the search in objectively reasonable reliance on a warrant issued by the detached neutral magistrate that is subsequently determined to be invalid.   However, the Court held that suppression remained an appropriate remedy when a warrant is so facially deficient that the executing officer cannot reasonably

---

[19] 468 US 897 (1984),

163

presume it to be valid.

Here, the executing officer was unreasonable in relying upon the warrant to search Glanding's residence. The affidavit did not contain reliable information demonstrating a current probability that drugs would be found in the residence. Furthermore, since the actual search warrant did not properly identify Glanding's residence as a place to be searched, the warrant was facially deficient. Therefore, the good-faith exception does not apply to salvage the legality of the search.

Lastly, the good-faith exception does not apply to the Delaware Constitution.[20] (State exclusionary rule requires suppression of evidence seized when warrant was issued without probable clause, regardless of the good-faith of the police.)

---

[20] *Dorsey v. State*, 761 A.2d 807 (2000).

## ARGUMENT II

THE STATE DID NOT PROVE THE ELEMENTS OF 11 DEL. C. §1448(b) BECAUSE IT DID NOT SHOW THAT THE DEFENDANT USED OR ATTEMPTED TO USE FIREARMS TO CAUSE DEATH OR SERIOUS PHYSICAL INJURY.

### Standard and Scope of Review

Claims of Legal error are reviewed de novo.

Merits

A Firearm Does Not Constitute A Deadly Weapon Unless It Is Used Or Is Attempted To Be Used To Cause Death Or Serious Physical Injury.

11 *Del. C.* §1448(b), entitled Possession and Purchase of

Deadly Weapons by Persons Prohibited, provides, in pertinent

part:

> Any prohibited person as set forth in Subsection A of this section, who knowingly possesses, purchases, owns, or controls a deadly weapon or ammunition for a firearm is also prohibited, shall be guilty of Possession of a Deadly Weapon or Ammunition for a Firearm by a Person Prohibited.

A "deadly weapon" is defined in pertinent part under 11 *Del. C.* §222(5) as follows:

> A deadly weapon includes a firearm, as defined in Subdivision 11 of this section..., which is used, or attempted to be used, to cause death or serious physical injury.

Defendant contends that well-established principles of

statutory construction support the interpretation that a firearm

must be used, or attempted to be used, to cause death or serious

physical injury before it can constitute a deadly weapon in

violation of 11 Del. C. §1448(b). In other words, a "firearm"

only meets the definition of "deadly weapon" when it is "used, or

attempted to be used, to cause death or serious physical injury."

When a statute is ambiguous, e.g., either opaque or susceptible to alternative conflicting interpretations, the Court will seek guidance from "extrinsic aids," e.g., a legislative history. If the legislative history and purpose are also ambiguous, the Court may resort to "intrinsic aids," such as technical rules of statutory construction.

Delaware recognizes the "last antecedent rule."[21]     It is a rule of grammatical construction that separation of a qualifying phrase from antecedents by a comma, evidences an intent that the phrase applied to all antecedents instead of solely to the immediately preceding one.[22]

It is also a principle Delaware law that criminal statutes that provide for enhanced penalties are highly penal and as a consequence must be strictly construed.[23]

Thus, under accepted rules of statutory construction, the phrase "which is used, or attempted to be used, to cause death or serious physical injury" applies to all antecedents instead of solely to the immediately preceding one.   In other words, the subject phrase applies to require that a "firearm" be used or attempted to be used to cause death or serious physical injury before it can constitute a deadly weapon under the Delaware Code.

---

[21] *Matter of Surcharge Classification 0133*, Del. Super., 655 A.2d 295. (footnote 9)(1994).
[22] *Winters v. Township of Voorhees*, N.J. Super., 726 A.2d 1013, 1016 (1998).
[23] *Kane v. State*, Del. Supr., 327 A.2d 744 (1974).

The trial court erred by its interpretation that a firearm constituted a deadly weapon without requiring proof that it was used or attempted to be used to cause death or serious physical injury.   The trial court also erred by providing an erroneous jury instruction of the definition of deadly weapon.

Lastly, 11 *Del. C.* §1448(b), in conjunction with 11 *Del. C.* §222(5) is unconstitutionally vague in violation of the defendant's state and federal constitutional due process rights. Consequently, the statute is void for vagueness because it does not provide fair warning of its application or minimal standards to govern its enforcement.[24]

In short, there was insufficient evidence to find the defendant guilty of PDWBPP since there was a complete absence of any evidence that he "used or intended to use [firearms] to cause death or serious physical injury." In other words, defendant's mere possession (actual or constructive) of firearms is insufficient to establish a violation of 11 *Del. C.* §1448(b). Furthermore, since the court erred in interpreting the statute, and provided an erroneous jury instruction, the defendant was deprived of a fair trial in violation of his state and federal constitutional due process rights.   Next, since the subject statutes are unconstitutionally vague, defendant's convictions must be vacated because §1448(b) is unconstitutionally void for vagueness.

Lastly, defense counsel was ineffective by failing to

---

[24] *In re, Shylish,* 743 U.S. 165 (1999).

object to the court's interpretation of 11 *Del. C.* §222(5) and §1448(b), by failing to object to the erroneous jury instruction, by failing to move for dismissal based upon the absence of evidence supporting the offense, by failing to object to the constitutionality of §1448(b), and by failing to raise these issues on direct appeal.

## Conclusion

Defendant respectfully requests that the convictions in this case be reversed, and the case remanded to Superior Court based upon the reasons and authorities herein.

MICHAEL W. MODICA, ESQUIRE
Bar ID # 2169
Attorney for Henry Glanding
P.O. Box 437
Wilmington, DE 19899
(302)425-3600

3/7/06
Date Signed

IN THE SUPREME COURT OF THE STATE OF DELAWARE

HENRY GLANDING,                        :
                                       :
            Defendant Below-           :
            Appellant,                 :
                                       :
      v.                               :      No.  631, 2005
                                       :
STATE OF DELAWARE,                     :
                                       :
            Plaintiff Below-           :
            Appellee.                  :

*Send this copy Henry* (handwritten)

ON APPEAL FROM THE SUPERIOR COURT
OF THE STATE OF DELAWARE
IN AND FOR KENT COUNTY

STATE'S ANSWERING BRIEF

                         John Williams
                         Deputy Attorney General
                         Delaware Bar I.D. No. 365

                         Delaware Department of Justice
                         102 West Water Street
                         Dover, Delaware 19904-6750
                         (302) 739-4211 (ext. 263)

DATE: March 31, 2006

TABLE OF CONTENTS

PAGE

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . ii

NATURE AND STAGE OF THE PROCEEDINGS. . . . . . . . . 1

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . 6

ARGUMENT

     I.   THE SUPERIOR COURT SEARCH WARRANT
         WAS VALID . . . . . . . . . . . . . . . . . 8

     II.  THERE WAS SUFFICIENT EVIDENCE TO
         CONVICT THE ACCUSED OF POSSESSION
         OF A DEADLY WEAPON BY A PERSON
         PROHIBITED. . . . . . . . . . . . . . . . . 19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . 24

Glanding v. State, 2002 WL 31796278 (Del. 2002)
(ORDER). . . . . . . . . . . . . . . . . . . . . . . Exhibit A

State v. Glanding, Del. Super., Cr. A. Nos.
IK01-10-0193 thru IK01-10-0173-R1, Vaughn,
P. J. (November 30, 2005)(ORDER) . . . . . . . . . . Exhibit B

State v. Glanding, Del. Super., Cr. A. Nos.
IK01-10-0159 thru IK01-10-0173-R1, Freud,
Comm. (June 28, 2005)(COMMISSIONER'S
REPORT AND RECOMMENDATION) . . . . . . . . . . . . . Exhibit C

TABLE OF CITATIONS

PAGE

CASES:

Bailey v. State, 588 A.2d 1121
    (Del. 1991) . . . . . . . . . . . . . . . . . . 8

Brown v. Brown, 29 A.2d 149
    (Del. Super. 1942). . . . . . . . . . . . . . . 21

Chimel v. California, 395 U.S. 752
    (1969). . . . . . . . . . . . . . . . . . . . . 11

Dawson v. State, 673 A.2d 1186
    (Del. 1996) . . . . . . . . . . . . . . . . . . 8-10

Fantasia Restaurant & Lounge, Inc. v.
New Castle County Board of Adjustment,
    735 A.2d 424 (Del. 1998). . . . . . . . . . . . 19

Fink v. State, 817 A.2d 781
    (Del. 2003) . . . . . . . . . . . . . . . . . . 12

Flamer v. State, 585 A.2d 736
    (Del. 1990) . . . . . . . . . . . . . . . . . . 10

Gattis v. State, 697 A.2d 1174
    (Del. 1997) . . . . . . . . . . . . . . . . . . 9, 10

Glanding v. State, 2002 WL 31796278
    (Del. 2002)(ORDER). . . . . . . . . . . . . . . 2-4, 7, 11, 20

Handy v. State, 268 A.2d 865
    (Del. 1970) . . . . . . . . . . . . . . . . . . 11

Illinois v. Gates, 462 U.S. 213
    (1983). . . . . . . . . . . . . . . . . . . . . 12

Illinois v. Rodriguez, 497 U.S. 177
    (1990). . . . . . . . . . . . . . . . . . . . . 11

Jensen v. State, 482 A.2d 105
        (Del. 1984) . . . . . . . . . . . . . . . . . . . . 3, 13-14

Ker v. California, 374 U.S. 23
        (1963). . . . . . . . . . . . . . . . . . . . . . . 11

Kimmelman v. Morrison, 477 U.S.
        365 (1996). . . . . . . . . . . . . . . . . . . . . 10

Lopez v. State, 861 A.2d 1245
        (Del. 2004) . . . . . . . . . . . . . . . . . . . . 11, 12

Maryland v. Pringle, 540 U.S. 366
        (2003). . . . . . . . . . . . . . . . . . . . . . . 12

Matter of Surcharge Classification
0133 by Delaware Compensation Rating
Bureau, 655 A.2d 295 (Del. Super.
        1994) . . . . . . . . . . . . . . . . . . . . . . . 21

McMann v. Richardson, 397 U.S. 759
        (1970). . . . . . . . . . . . . . . . . . . . . . . 10

Righter v. State, 704 A.2d 262
        (Del. 1997) . . . . . . . . . . . . . . . . . . . . 8-10

Pierson v. State, 338 A.2d 571
        (Del. 1975) . . . . . . . . . . . . . . . . . . . . 14

Riley v. State, 585 A.2d 719
        (Del. 1990) . . . . . . . . . . . . . . . . . . . . 10

Snyder v. Andrews, 708 A.2d 237
        (Del. 1998) . . . . . . . . . . . . . . . . . . . . 19

Stansbury v. State, 591 A.2d 188
        (Del. Supr. 1991) . . . . . . . . . . . . . . . . . 22

State v. Bright, 305 A.2d 332
        (Del. Super. 1973). . . . . . . . . . . . . . . . . 12

State v. Glanding, Del. Super.,
        Cr. A. Nos. IK01-10-0159
        thru IK01-10-0173-R1, Freud,
        Comm. (June 28, 2005)
        (COMMISSIONER'S REPORT AND
        RECOMMENDATION) . . . . . . . . . . . . . . . . . . 2, 4, 13-17,
                                                            19, 21-22

State v. Glanding, Del. Super.,
    Cr. A. Nos. IK01-10-0159
    thru IK01-10-0173-R1, Vaughn,
    P. J. (November 30, 2005)
    (ORDER) . . . . . . . . . . . . . . . . . . . . . 2, 20

State v. Sisson, 883 A.2d 868
    (Del. Super. 2005). . . . . . . . . . . . . . . 3, 12-14

State v. Walker, 444 A.2d 277
    (Del. Super. 1982). . . . . . . . . . . . . . . 14

State v. Wright, 653 A.2d 288
    (Del. Super. 1994), aff'd.,
    671 A.2d 1353 (Del. 1996) . . . . . . . . . . . 9

Strickland v. Washington, 466 U.S.
    668 (1984). . . . . . . . . . . . . . . . . . . 9-10, 18

Tatman v. State, 494 A.2d 1249
    (Del. 1985) . . . . . . . . . . . . . . . . . . 12

Taylor v. State, 679 A.2d 449
    (Del. 1996) . . . . . . . . . . . . . . . . . . 22

Thompson v. State, 539 A.2d 1052
    (Del. 1988) . . . . . . . . . . . . . . . . . . 11

Traylor v. State, 458 A.2d 1170
    (Del. 1983) . . . . . . . . . . . . . . . . . . 11

Williams v. State, 756 A.2d 349
    (Del. 2000) . . . . . . . . . . . . . . . . . . 19

Williams v. Taylor, 529 U.S. 362
    (2000). . . . . . . . . . . . . . . . . . . . . 9

Wright v. State, 671 A.2d 1353
    (Del. 1996) . . . . . . . . . . . . . . . . . . 9-10

Younger v. State, 580 A.2d 552
    (Del. 1990) . . . . . . . . . . . . . . . . . . 8-9

DELAWARE STATUTES:

11 Del. C. § 222(4). . . . . . . . . . . . . . . . . . 21

11 Del. C. § 222(5). . . . . . . . . . . . . . . . . . 4, 19, 21-23

11 Del. C. § 1448. . . . . . . . . . . . . . . . . . . 1, 4, 19, 21,
                                                      23

11 Del. C. § 1448(a)(1). . . . . . . . . . . . . . . . 20

11 Del. C. § 1448(b) . . . . . . . . . . . . . . . . . 20

11 Del. C. § 1904. . . . . . . . . . . . . . . . . . . 3, 11

11 Del. C. § 2303. . . . . . . . . . . . . . . . . . . 11

DELAWARE SESSION LAWS:

68 Del. Laws ch. 378 (1992). . . . . . . . . . . . . . 22

DELAWARE SUPERIOR COURT CRIMINAL RULES:

Del. Super. Ct. Cr. R. 61(b)(2). . . . . . . . . . . . 9

Del. Super. Ct. Cr. R. 61(i)(3). . . . . . . . . . . . 19, 20

SECONDARY AUTHORITIES:

Delaware Criminal Code with Commentary § 222
     (1973). . . . . . . . . . . . . . . . . . . . . . 22, 23

## NATURE AND STAGE OF THE PROCEEDINGS

Appellee, the State of Delaware, generally adopts the Nature and Stage of the Proceedings as contained in Appellant Henry Glanding's March 7, 2006 Opening Brief. This is the State's Answering Brief in opposition to Glanding's appeal from the Kent County Superior Court's November 30, 2005 Order denying post-conviction relief for Glanding's March 2002 Superior Court convictions for fifteen counts of possession of a deadly weapon by a person prohibited in violation of the provisions of 11 Del. C. § 1448.

## SUMMARY OF ARGUMENT

I.   DENIED.   The Superior Court properly granted a search warrant for suspect Henry Glanding's residence and motor vehicles. (A-22-32).  Since the search warrant was properly issued, Glanding's trial counsel was not ineffective for failing to challenge the warrant at the March 4, 2002 pretrial suppression hearing.  *See* Glanding v. State, 2002 WL 31796278 (Del. 2002)(ORDER) at 2 (Exhibit A).  Glanding can demonstrate no professionally deficient conduct by his trial counsel or any impermissible resulting prejudice concerning the May 11, 2001 search warrant approved by the Superior Court.   (A-22-32).

There was no abuse of discretion by the Superior Court in denying Glanding's post-conviction relief claim that the Delaware State Police search warrant application was improvidently granted. State v. Glanding, Del. Super., Cr. A. Nos. IK01-10-159 thru IK01-10-173-R1, Vaughn, P. J. (November 30, 2005)(ORDER)(Exhibit B).  The Superior Court Commissioner utilized the correct totality of circumstances test in evaluating the four corners of the search warrant application (A-22-32), and properly concluded that Glanding had not sustained his burden of proof by demonstrating by a preponderance of the evidence that insufficient probable cause existed to permit the issuance of the search warrant.  State v. Glanding, Del. Super., Cr. A. Nos. IK01-10-0159 thru IK01-10-0173-

R1, Freud, Comm. (June 28, 2005)(COMMISSIONER'S REPORT AND
RECOMMENDATION) at 13-18 (Exhibit C).

The information contained in the State Police search warrant
application (A-22-32) was credible. The Superior Court correctly
found that the information supplied by the different confidential
informants was believable and not stale. *Id.* at 13, 15-17 (Exhibit
C). Independent police investigation confirmed much of the
pertinent background information provided by the confidential
informants. *Id.* at 17-18 (Exhibit C). A judge's decision to grant
a search warrant application is entitled to "great deference" by a
reviewing court. *See* State v. Sisson, 883 A.2d 868, 876 (Del.
Super. 2005)(citing Jensen v. State, 482 A.2d 105, 111 (Del. 1984)).
Under these circumstances Glanding has failed to demonstrate any
ineffective assistance by his trial counsel in 2001-02 in not
challenging the content of the Superior Court search warrant.

Whether or not there was any deficiency in the search warrant,
the State Police still had probable cause under 11 Del. C. § 1904 to
arrest Glanding on May 11, 2001 for possession of a deadly weapon by
a person prohibited. Independent police investigation revealed that
Glanding was a convicted felon who was prohibited from possessing a
deadly weapon. (A-25, 27). During the police surveillance of
Glanding prior to the motor vehicle stop, the officers personally
observed Glanding wearing "what appeared to be a revolver strapped
to his waist." Glanding, *supra* at 2 (Exhibit A). On the basis of
this police information Glanding could have been arrested for a

163

firearm possession offense even without a warrant and his truck where a loaded .357 revolver was discovered could be searched incident to that arrest.

II.   DENIED.   Trial counsel was not ineffective in March, 2002 for failing to challenge the sufficiency of the jury instruction for the offense of possession of a deadly weapon by a person prohibited.   There is no legal authority for Henry Glanding's novel post-conviction relief argument that the State was required to prove that his 15 firearms were used or attempted to be used to cause death or serious physical injury in order to convict the defendant of possession of a deadly weapon by a person prohibited.

As the Superior Court Commissioner correctly points out, "Glanding mischaracterizes the elements of the offense . . ." Glanding, *supra* at 19 (Exhibit C).   Since Glanding stipulated at his 2002 jury trial that he was a convicted felon [Glanding, *supra* at 2 (Exhibit A)], all the State was required to prove was that the accused had possession of the 15 firearms discovered by the Delaware State Police in this truck and Clayton residence.   Glanding's statutory construction argument ignores the last antecedent rule and is simply erroneous.   The two statutory provisions at issue [11 Del. C. §§ 222(5) and 1448] are not unconstitutionally vague and the additional proof requirement Glanding wishes to engraft upon the deadly weapon possession offense is applicable only to deadly instruments, not to the firearms discovered in this prosecution.

Since Glanding's statutory interpretation contention is legally
meritless, his former counsel was not ineffective for failing to
raise such a claim.

STATEMENT OF FACTS

In affirming Henry Glanding's March 2002 Kent County Superior Court convictions for fifteen counts of possession of a deadly weapon by a person prohibited, this Court on direct appeal on December 13, 2002, found the following pertinent operative facts:

> The evidence at trial reflects that on May 11, 2001, the Delaware State Police set up surveillance on the appellant's residence on Lion Hope Road in Clayton, Delaware, to observe the actions of the appellant prior to the police executing a search warrant at the appellant's residence. Earlier in the day, the police had received information that the appellant, Henry Glanding, was wanted out of Maryland for several felony offenses, and that Glanding, who was a convicted felon with a reported violent history, was known to carry a firearm. The police observed Glanding's residence from approximately 1:00 p.m. until about 8:30 p.m. on May 11 and obtained the signed search warrant around 3:00 p.m. that day.
>
> "Between 5:00 p.m. and 8:30 p.m., the police observed a shirtless Glanding working around his yard with what appeared to be a revolver strapped to his waist. Out of concern for their safety, the police decided not to arrest Glanding at his residence, or to execute the search warrant, until Glanding was in his vehicle and away from the residence.
>
> At around 8:30 p.m., Glanding left his residence in his Dodge Ram truck and headed south on Lion Hope Road. Approximately one-half mile away from the residence, the police stopped Glanding in a "felony car jam" in which the police used several vehicles to box in Glanding's truck. [footnote omitted]. Once Glanding's truck was boxed in, the police extracted Glanding from the truck, placed him on the ground, handcuffed him and searched him. The police then searched the passenger compartment of Glanding's truck. The police located a loaded .357 revolver in the console.
>
> A few minutes after Glanding was stopped and was otherwise occupied with his arrest, the police executed

the search warrant at his residence.    The police located
a number of firearms and ammunition in a safe in
Glanding's living room and more guns in Glanding's
laundry room.

Glanding v. State, 2002 WL 31796278 (Del. 2002)(ORDER) at 2 (Exhibit

A).

I.    THE SUPERIOR COURT SEARCH
      WARRANT WAS VALID.

## Standard and Scope of Review

The denial of a motion for post-conviction relief is reviewed
on appeal for an abuse of discretion. *See* Righter v. State, 704
A.2d 262, 264 (Del. 1997); Dawson v. State, 673 A.2d 1186, 1190
(Del. 1996). Questions of law are reviewed *de novo*. Righter, 704
A.2d at 264; Bailey v. State, 588 A.2d 1121, 1124 (Del. 1991)(citing
Younger v. State, 580 A.2d 552, 554 (Del. 1990)).

## Argument

Henry Glanding asserts in his motion for post-conviction
relief that his trial counsel was ineffective for not contesting the
validity of the May 11, 2001 Kent County Superior Court search
warrant (A-22-32) in an attempt to suppress the physical evidence
(15 firearms) seized by the Delaware State Police on May 11, 2001,
when Henry Glanding was arrested.  Specifically, Glanding argues
that there was insufficient probable cause for the Superior Court to
grant the search warrant because the information received from a
confidential informant (CI) was not "creditable" and some of the
information about Glanding's alleged illegal drug activity in 1993
was stale.

193

In order to substantiate an ineffective assistance of counsel claim, Glanding must show that his trial counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the trial proceeding in March 2002 would have been different. Strickland v. Washington, 466 U.S. 668, 688, 694 (1984); Williams v. Taylor, 529 U.S. 362, 391 (2000). Accord, e.g., Righter v. State, 704 A.2d 262, 264 (Del. 1997); Gattis v. State, 697 A.2d 1174, 1178 (Del. 1997); Dawson v. State, 673 A.2d 1186, 1190 (Del. 1996). Mere allegations of ineffectiveness of trial counsel are insufficient, and a criminal defendant must make, and substantiate, specific allegations of actual prejudice or risk summary dismissal. Gattis, 697 A.2d at 1178-79; Wright v. State, 671 A.2d 1353, 1356 (Del. 1996); Younger v. State, 580 A.2d 552, 556 (1990); Del. Super. Ct. Cr. R. 61(b)(2).

Under Strickland, 466 U.S. at 689, Glanding has the burden of proving by a preponderance of the evidence his post-conviction claim that trial counsel was ineffective for not challenging the validity of the May 11, 2001 search warrant (A-22-32) issued by the Superior Court prior to Glanding's arrest that same day. State v. Wright, 653 A.2d 288, 294 (Del. Super. 1994), aff'd, 671 A.2d 1353 (Del. 1996). Not only does Glanding have the burden of proof to establish ineffective assistance of trial counsel, but as the United States Supreme Court has observed, "Strickland's standard, although by no

means insurmountable, is highly demanding." <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 382 (1996).

It is not constitutionally required that legal counsel's performance be error free in order to satisfy the Constitutional effectiveness standard. *See* <u>McMann v. Richardson</u>, 397 U.S. 759, 770-71 (1970). There is also a strong presumption that legal counsel's representation was professionally reasonable. <u>Strickland</u>, 466 U.S. at 689; <u>Righter</u>, 704 A.2d at 264; <u>Gattis</u>, 697 A.2d at 1178; <u>Dawson</u>, 673 A.2d at 1190, 1196; <u>Wright</u>, 671 A.2d at 1356; <u>Flamer v.</u> <u>State</u>, 585 A.2d 736, 753 (Del. 1990); <u>Riley v. State</u>, 585 A.2d 719, 727 (Del. 1990). The presumption is that legal counsel's representation was professionally reasonable and judicial scrutiny of counsel's actions is highly deferential. <u>Strickland</u>, 466 U.S. at 689; <u>Wright</u>, 671 A.2d at 1356. In order to succeed in his post-conviction claim of ineffective assistance of trial counsel in not challenging the validity of the search warrant, Glanding must rebut the "strong presumption" that trial counsel's representation fell within the "wide range of reasonable professional assistance," and a reviewing court must eliminate the "distorting effects of hindsight" in assessing trial counsel's performance. <u>Strickland</u>, 466 U.S. at 689; <u>Gattis</u>, 697 A.2d at 1178.

Initially, Glanding's post-conviction complaints about the validity of the Superior Court's May 11, 2001 search warrant (A-22-32) overlook the fact that regardless of the validity of that search warrant the Delaware State Police, who were conducting surveillance

of Glanding's Clayton, Delaware residence on that date [Glanding v.
State, 2002 WL 31796278 (Del. 2002)(ORDER) at 2 (Exhibit A)], still
had probable cause under 11 Del. C. § 1904 to make a warrantless
arrest of Glanding. See Lopez v. State, 861 A.2d 1245, 1248-49
(Del. 2004); Thompson v. State, 539 A.2d 1052, 1055 (Del. 1988).
Probable cause existed for a warrantless felony arrest of Glanding
because "Between 5:00 p.m. and 8:30 p.m., the police observed a
shirtless Glanding working around his yard with what appeared to be
a revolver strapped to his waist." Glanding, supra at 2 (Exhibit
A). Since the Delaware State Police already knew that Glanding was
a convicted felon (A-25, 27), and prohibited from carrying or
possessing a firearm (A-27), the visual observation of Glanding
wearing "what appeared to be a revolver strapped to his waist" was a
sufficient basis to arrest Glanding for possession of a deadly
weapon by a person prohibited even without a Superior Court search
warrant.

When the Delaware State Police made the "felony car jam"
stop of Glanding's truck about 8:30 p.m. on May 11, the truck where
Glanding's loaded .357 revolver was discovered [Glanding, supra at 2
(Exhibit A)] could be searched incident to the defendant's arrest.
11 Del. C. § 2303. See Traylor v. State, 458 A.2d 1170, 1173-74
(Del. 1983)(search of automobile glove box incident to arrest);
Handy v. State, 268 A.2d 865, 866 (Del. 1970); Illinois v.
Rodriguez, 497 U.S. 177, 185 (1990); Chimel v. California, 395 U.S.
752, 763 (1969); Ker v. California, 374 U.S. 23, 51 (1963).

Likewise, the interior of Glanding's truck could also be searched without a warrant pursuant to the motor vehicle exception. *See* Tatman v. State, 494 A.2d 1249, 1251-52 (Del. 1985); State v. Bright, 305 A.2d 332, 335 (Del. Super. 1973).

Second, the Superior Court Judge did not err in issuing the search warrant (A-22-32) for Glanding's residence where the other 14 firearms were found after Glanding's arrest because probable cause existed to authorize that police search. "The probable cause standard is incapable of precise definitions . . . because it deals with probabilities and depends on the totality of the circumstances." Maryland v. Pringle, 540 U.S. 366, 371 (2003). *See* Fink v. State, 817 A.2d 781, 787 (Del. 2003)("In determining whether probable cause to obtain a search warrant existed, this court has adopted a totality of  circumstances test."); State v. Sisson, 883 A.2d 868, 876 (Del. Super. 2005). "Nevertheless, the substance of all the definitions of probable cause is a reasonable ground for belief of guilt, that is particularized with respect to the person to be arrested." Lopez, 861 A.2d at 1248.

Utilizing this totality of the circumstances approach, the search warrant in Glanding's case (A-22-32) contains sufficient particularized facts to authorize a search of Glanding's residence and motor vehicles. There is a Fourth Amendment preference for searches conducted pursuant to a warrant [Illinois v. Gates, 462 U.S. 213, 236 (1983)], and that was what was done in Glanding's case. Furthermore, "Great deference must be paid by a reviewing

court to the determination of a judge who has made a finding of probable cause to issue a search warrant." Sisson, 883 A.2d at 876. See also Jensen v. State, 482 A.2d 105, 111 (Del. 1984)("A determination of probable cause by the issuing magistrate will be paid great deference by a reviewing court and will not be invalidated by a hypertechnical, rather than a common sense, interpretation of a warrant affidavit.").

Not only is the Superior Court Judge's decision to issue the search warrant in Glanding's investigation entitled to "great deference" by this Court, but that decision must be upheld because it is also legally correct. Glanding can demonstrate no ineffective assistance by his trial counsel in not challenging the search warrant prior to the March, 2002 trial because, as the Superior Court Commissioner points out, " . . . it was supported by probable cause." State v. Glanding, Del. Super., Cr. A. Nos. IK01-10-0159 thru IK01-10-0173-R1, Freud, Comm. (June 28, 2005)(COMMISSIONER'S REPORT AND RECOMMENDATION) at 13 (Exhibit C). The Superior Court Commissioner in recommending the denial of post-conviction relief on this first contention by Glanding noted:

> The probable cause supporting the warrant was obtained through statements of Confidential Informants ('C.I.'s'), some of whom are C.I.'s who in the past have provided reliable information and through firsthand observations of Glanding by police officers that not only corroborated information provided by the C.I.'s, but gave the officers additional cause to search Glanding's house and person. Since the search warrant was supported by probable cause and would have been upheld, Glanding cannot show that Counsel's failure to challenge it materially prejudiced him.

> Glanding's claim that the May 11, 2001 search
> warrant suffered from a lack of probable cause is also
> without merit. The Warrant and Affidavit set forth facts
> gathered during police investigations and information
> provided by C.I.'s some of whom were past proven and
> reliable, that is they provided reliable information in
> the past.  These C.I.'s also had prior dealings with
> Glanding on numerous occasions and their information was
> corroborated by other independent C.I.'s and the police
> investigation.

Glanding, *supra* at 13-14 (Exhibit C).

The Superior Court utilized the proper legal standard (the

"four-corners" test) in analyzing the 2001 search warrant

application for probable cause. *See* Sisson, 883 A.2d at 876;

Pierson v. State, 338 A.2d 571, 573 (Del. 1975). Not only did the

Superior Court Commissioner utilize the correct "four-corners" test

in reviewing the sufficiency of the factual allegations of

Glanding's search warrant application (A-22-32), but she also

utilized the proper legal standard that only a probability of

criminal conduct is required to be shown, not a *prima facia* showing

of criminal liability, in order to find probable cause. Glanding,

*supra* at 14 (Exhibit C). *See* Sisson, 883 A.2d at 876; Jensen, 482

A.2d at 112; State v. Walker, 444 A.2d 277, 280 (Del. Super. 1982).

After properly limiting the scope of review to the "four-

corners" of the search warrant application and applying the correct

evidentiary standard, the Superior Court Commissioner next correctly

analyzed the totality of the circumstances as set forth in the

search warrant application to assess the validity of the request and

199

the prior 2001 Superior Court issuance of the search warrant.   In
conducting this analysis, the Superior Court Commissioner stated:

> In measuring the totality of circumstances when a
> C.I.'s tip is involved, the Court should consider such
> issues as the reliability of the C.I., the details
> contained in the tip and the degree to which the tip is
> corroborated by independent police surveillance and
> information. [footnote omitted]. If a C.I's tip is
> sufficiently corroborated, it may form the basis for
> probable cause even though nothing is known about the
> C.I.'s credibility. [footnote omitted]. In the instant
> case, three C.I.'s independently gave police information
> that Glanding regularly sold methamphetamine and cocaine,
> both at his residence and at a Maryland bar called
> 'Mickey's'. All three also informed the police that
> Glanding was a high-ranking member of the motorcycle gang
> known as the 'Pagans.' Glanding's membership in this
> gang is not itself the basis for the Affidavit's probable
> cause. However, probable cause is strengthened when the
> C.I.'s statement that the Pagan gang is involved in the
> methamphetamine trade is tied with that C.I.'s statement
> and the other C.I.'s statements that Glanding was also
> known to trade in methamphetamine and that some of the
> C.I.'s have purchased methamphetamine from Glanding on
> numerous occasions and others had observed such sales.
>
> The detail provided in the C.I.'s tips further
> strengthens the totality of the circumstances analysis
> leading to a finding of probable cause.  C.I. 3 knew
> Glanding's address, described his house in detail, said
> that 'he' had observed Glanding conducting over 50 sales
> of methamphetamine, many of them in the months before the
> warrant was obtained and has traveled with Glanding to
> make a methamphetamine delivery.  The informant gave the
> name of the Maryland bar where Glanding is known to sell
> drugs and told police that Glanding keeps a record of his
> drug sales in a notebook and the notebook is kept at his
> residence.  The informant provided Glanding's gang
> nickname and told police that Glanding owns numerous guns
> and always keeps one about his person.  The level of
> detail provided in this one informant's statement alone
> supports a finding that the totality of circumstances led
> to probable cause for the warrant to issue.

Glanding, supra at 15-16 (Exhibit C).

Not only did the Superior Court Commissioner correctly determine that the information received from the various confidential informants was credible, but she also properly concluded that the statements of the confidential informants were not impermissibly stale, as Glanding contended. The Commissioner in addressing the staleness contention pointed out: "Because the C.I.'s revealed a long history of drug dealing by Glanding, primarily at his residence, the temporal proximity of the statements to the issuance of the warrant is not crucial. Further the statement of C.I. 3, the informant who provided the most detailed information, was procured within *seven* days of the warrant application. [footnote omitted]. Because C.I. 3's statement was obtained within one week of the warrant application and because of the ongoing nature of Glanding's drug trade, the challenge for staleness of the information is without merit." Glanding, *supra* at 17 (Exhibit C).

Finally, the Superior Court Commissioner in rejecting Glanding's various challenges to the 2001 search warrant discussed the corroboration of the tip information received from the confidential informants through the independent investigation conducted by the Delaware State Police in Glanding's case. Glanding, *supra* at 17-18 (Exhibit C). the State Police were able to confirm numerous details in the information provided by the confidential informants in Glanding's investigation. The police investigation revealed that Glanding was a member of the Pagan

motorcycle gang, that he lived at the Clayton, Delaware residence described by the third confidential informant, and a review of Glanding's prior criminal record revealed an extensive drug related arrest history beginning in 1974 and continuing into the 1990's. Glanding, *supra* at 17 (Exhibit C).

Given this substantial quantum of information, much of which was independently corroborated by the police investigation, there was more than sufficient probable cause for the issuance of the 2001 search warrant in Glanding's case. Under these circumstances, Glanding can demonstrate no ineffective assistance by his trial counsel in not explicitly challenging the probable cause basis for the search warrant after the defendant's May, 2001 arrest. As the Superior Court Commissioner explained:

> When taken in their entirety, the statements of the C.I.'s corroborated by the police and other statements of C.I.'s, police investigation of Glanding and his own past history of involvement in the drug trade, provided ample cause to believe that instrumentalities or evidence of crime would be found at Glanding's residence and on his person. Because such a full showing of probable cause was made, a challenge of the validity of the search warrant by Trial Counsel would not have been successful. Because Glanding cannot show a reasonable probability that the result at trial would have been different had counsel challenged the search warrant, his claim of ineffective assistance of counsel is clearly without merit.

Glanding, *supra* at 18 (Exhibit C).

The Superior Court properly denied Glanding post-conviction relief on his first claim attacking the adequacy of his 2001 search warrant. Glanding could not establish either prong of the

182

Strickland ineffective assistance of counsel test in this instance.
That is, Glanding has not demonstrated that trial counsel's conduct
was professionally deficient, or that Glanding has suffered any
impermissible prejudice as a result of any alleged inadequate
representation by his trial counsel. Under these circumstances,
there was no abuse of discretion by the Superior Court in denying
post-conviction relief and rejecting all of Glanding's challenges to
the adequacy of his search warrant.

II.   THERE WAS SUFFICIENT EVIDENCE
TO CONVICT THE ACCUSED OF
POSSESSION OF A DEADLY WEAPON
BY A PERSON PROHIBITED.

## Standard and Scope of Review

There is plenary or *de novo* review of a question of statutory interpretation to determine if the trial court committed legal error in formulating or applying legal principles. *See* Williams v. State, 756 A.2d 349, 351 (Del. 2000)("This Court reviews *de novo* the Superior Court's construction of a statute."); Fantasia Restaurant & Lounge, Inc. v. New Castle County Board of Adjustment, 735 A.2d 424, 431 (Del. 1998); Snyder v. Andrews, 708 A.2d 237, 241 (Del. 1998).

## Argument

As the Superior Court Commissioner pointed out, in his second claim for post-conviction relief, Henry Glanding " . . . attempts to overcome the procedural bar of Rule 61(i)(3) by claiming his attorney was ineffective for not making the unique claim that a firearm does not constitute a 'deadly weapon' unless it is ' . . . used or attempted to be used . . . to cause death or serious physical injury.'" and that 11 Del. C. §§ 222(5) and 1448 "are unconstitutionally vague." State v. Glanding, Del. Super., Cr. A. Nos. IK01-10-0159 thru IK01-10-0173-R1, Freud, Comm. (June 28,

184

2005)(COMMISSIONER'S REPORT AND RECOMMENDATION) at 18 (Exhibit C).
There was no abuse of discretion by the Superior Court in denying
post-conviction relief on this second statutory construction
contention.  State v. Glanding, Del. Super., Cr. A. Nos. IK01-10-
0159 thru IK01-10-0173-R1, Vaughn, P. J. (November 30,
2005)(ORDER)(Exhibit B).  Glanding can make no showing of sufficient
cause or resulting prejudice to escape the procedural default bar of
Del. Super. Ct. Cr. R. 61(i)(3) as to this argument because the
claim is legally meritless and prior legal counsel was not
ineffective for failing to raise such a novel statutory construction
issue.

        11 Del. C. § 1448(a) provides:  "Any person as set forth in
subdivision (a) of this Section who knowingly possesses, purchases,
owns or controls a deadly weapon or ammunition for a firearm while
so prohibited shall be guilty of possession of a deadly weapon or
ammunition for a firearm by a person prohibited."  At his March 2002
Kent County Superior Court jury trial, "Glanding stipulated that he
was a convicted felon."  Glanding v. State, 2002 WL 31796278 (Del.
2002)(ORDER) at 2 (Exhibit A).  Since the Delaware State Police
found a loaded .357 revolver in the console of Glanding's truck when
it was stopped on May 11, 2001, as well as 14 other firearms in the
living room and laundry room of Glanding's residence [Id. at 2
(Exhibit A)], there was a sufficient evidentiary basis for the jury
to convict Glanding of 15 counts of possession of a deadly weapon by
a person prohibited.  11 Del. C. §§ 1448(a)(1) and (b).

Glanding's legal argument that the State's trial evidence was insufficient because there was no showing that any of the 15 guns recovered by the police was used or intended to be used to cause death or serious physical injury[1] is based upon an erroneous interpretation of both 11 Del. C. § 1448, which details the substantive offense, and 11 Del. § 222(5), which specifically defines a "deadly weapon" as including "a firearm." There is no requirement under Delaware law that the State must also prove that a firearm was used or intended to be used to cause death or serious physical injury in order to convict an admitted felon of possession of a deadly weapon by a person prohibited. Glanding cites no controlling legal authority to support his idiosyncratic interpretation of the applicable Delaware statutes.

The Superior Court Commissioner correctly noted that the flaw in Glanding's statutory construction argument is that it ignores the last antecedent rule by attempting to engraft the qualifying language applicable only to dangerous instruments onto the initial firearm enumeration of 11 Del. C. § 222(5). Glanding, supra at 19-20 (Exhibit C). See Matter of Surcharge Classification 0133 by Delaware Compensation Rating Bureau, 655 A.2d 295, 302 (Del. Super. 1994); Brown v. Brown, 29 A.2d 149, 153 (Del. Super. 1942). That is, the State must prove that a dangerous instrument as defined in 11 Del. C. § 222(4) "is used, or attempted to be used, to cause

---

[1]Opening Brief at 20.

186

death or serious physical injury" to qualify as "deadly weapon"
under the provisions of 11 Del. C. § 222(5). Since the deadly
weapons found in Glanding's prosecution were 15 firearms, not
"dangerous instruments," all the State was required to prove was
that Glanding, an admitted convicted felon, possessed those
firearms.

The Superior Court Commissioner in rejecting Glanding's
statutory interpretation argument also properly analyzed the 1992
legislative amendment of 11 Del. C. § 222(5) in response to a 1991
Superior Court decision in Stansbury v. State, 591 A.2d 188, 193
(Del. Super. 1991)("We find that the barbell and bowling ball used
by Stansbury to murder Watson are items of common usage, and while
they may become deadly instrumentalities, they are not deadly
weapons.") to include dangerous instruments such as a bowling ball
and a barbell when those instrumentalities are used or attempted to
be used to cause death or serious physical injury. Glanding, *supra*
at 19-20 (Exhibit C). *See* Taylor v. State, 679 A.2d 449, 453-54
(Del. 1996)("In reaction to the narrower interpretation of deadly
weapon in *Stansbury*, the General Assembly again amended § 222(5) in
1992."); 68 Del. Laws ch. 378 (1992).

This statutory analysis by the Superior Court [Glanding, *supra*
at 19-20 (Exhibit C)] is consistent with the 1973 Commentary to §
222 of the Delaware Criminal Code, which observes, in part:

    The definition of 'deadly weapon' is more narrow
    than that given in present Delaware law. [footnote
    omitted]. The present Delaware meaning of that term is

> more like the meaning given to 'dangerous instrument'.
> The reason for this change is to provide the means of
> breaking down several of the crimes which previously had
> only one degree.  Possession of a truly deadly weapon may
> be treated in such a scheme as a more serious offense
> than possession of a dangerous instrument.

Delaware Criminal Code with Commentary § 222 at p. 26 (1973).  Given

this Delaware statutory and legislative history of the "deadly

weapon" definition contained in 11 Del. C. § 222(5), there is no

basis for Glanding's contention that the State was required to prove

that his 15 firearms were used, or attempted to be used, to cause

death or serious physical injury.  Finally, since there is no patent

or latent ambiguity in the two questioned statutory provisions [11

Del. C. §§ 222(5) and 1448], there is no basis to argue that those

statutes are unconstitutionally vague.  Accordingly, the Superior

Court correctly determined that Glanding was not entitled to post-

conviction relief on this basis.

CONCLUSION

Based upon the authorities cited and arguments contained herein, this Court must affirm the Kent Count Superior Court's denial of post-conviction relief.

John Williams
Deputy Attorney General
Delaware Bar I.D. No. 365

Delaware Department of Justice
102 West Water Street
Dover, Delaware 19904-6750
(302) 739-4211 (ext. 263)

DATE:   March 31, 2006

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| HENRY GLANDING, | ) |
| | ) No. 631, 2005 |
| Defendant Below, | ) |
| Appellant, | ) Court Below: Superior Court |
| | ) of the State of Delaware in |
| v. | ) and for Kent County |
| | ) |
| STATE OF DELAWARE, | ) ID # 0105009486A, B |
| | ) |
| Plaintiff Below, | ) |
| Appellee. | ) |

Submitted: May 10, 2006
Decided: May 16, 2006

Before **STEELE**, Chief Justice, **HOLLAND** and **JACOBS**, Justices.

## *O R D E R*

This 16th day of May, 2006, upon consideration of the briefs of the parties, and given our standard of review it appears to the Court that the judgment of the Superior Court should be affirmed on the basis of and for the reasons set forth in its Order dated November 30, 2005.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is **AFFIRMED.**

BY THE COURT:

Chief Justice

# MICHAEL W. MODICA
ATTORNEY AT LAW
715 N. KING STREET, SUITE 300
P.O. BOX 437
WILMINGTON, DELAWARE 19899

TELEPHONE (302) 425-3600
FACSIMILE (302) 425-5712
E-MAIL: MODICALAW@AOL.COM

July 29, 2005

Mr. Henry Glanding
SBI #132504
Delaware Correctional Center
1181 Paddock Rd.
Smyrna, DE 19977

Dear Henry:

Enclosed please find proposed legislation to clear any confusion regarding the meaning of the term "possession" for purposes of the offense of Possession of a Deadly Weapon by Person Prohibited. This legislation was clearly the result of the issue raised in your appeal. This is for your information.

I am waiting for Judge Vaughn to rule on the Commissioner's proposed decision. I will let you know as soon is a decision is issued.

Very truly yours,

Michael W. Modica

MWM/tss

191

2-COPIES

# State of Delaware
## The Official Website for the First State

Visit the Governor | General Assembly | Courts | Other Elected Officials | Federal, State & Local Sites

Directory | Help | Search Delaware:                    Citizen Services | Business Services | Visitor Info.

General Assembly

**Back**

### 143rd General Assembly
### *House Bill # 164*

| | |
|---|---|
| **Primary Sponsor:** | Schwartzkopf |
| **CoSponsors:** | Reps. Buckworth, DiPinto, Ewing, Hudson, Keeley, Lee, Spence, Williams; Sens. Adams, Blevins, Bunting, Simpson, Vaughn |
| **Introduced on :** | 05/04/2005 |
| **Long Title:** | AN ACT TO AMEND TITLE 11 OF THE DELAWARE CODE RELATING TO POSSESSION OF WEAPONS. |
| **Synopsis:** | This Act adds clarity to the sections of the Delaware Criminal Code that prohibit certain persons from possessing firearms or ammunition or that prohibit the possession of certain types of weapons, such as sawed-off shotguns. The definition of "possession" adopted by the Act is consistent with the definition used in the Delaware Code for other types of contraband. |

There has been inconsistency and overlap in the use of these definitions in cases involving possession of firearms during the commission of a felony and cases of possession or control by persons legally prohibited from doing so. This Act will alleviate this problem. The Act will not ease the requirement that in the prosecution of the former there must be sufficient evidence of more ready accessibility of a deadly weapon during the commission of a crime. However, in the latter type of case, in which the offense alleged is that a person specifically prohibited by law had control of a firearm, the possession element will be defined as it is with other illegal contraband. The same definition of possession will also be applicable to cases where possession of a weapon involved is illegal per se.

The Act also corrects a drafting error in the statute prohibiting possession of weapons with altered serial numbers.

| | |
|---|---|
| **Current Status:** | Stricken  On  05/10/2005 |

Fiscal Note: Not Required

| | |
|---|---|
| **Full text of Legislation:** (in HTML format) | Legis.html |
| **Full text of Legislation:** (in MS Word format) | Legis.Doc  (You need Microsoft Word to see this document.) |
| **Actions History:** | |

May 10, 2005 - Stricken
May 04, 2005 - Introduced and Assigned to Judiciary Committee in House

**myLIS**

Register        Login

192

## Certificate of Service

I, HENRY GLANding Jr ,hereby certify that I have served a true

And correct cop(ies) of the attached: ( PETiTioN UNdER 28 U.S.C. § 2254

FOR A WRiT OF HAbEAS COEpus ) upon the following

parties/person (s):

UNITED STATES DiSTRICT CouRT FoR the

TO: DiSTRiCT OF DELAWARE

J. CALeb Boggs Building

844 KiNg STREET

LOCKER Box 18

Wilm. DEC. 19908

TO: _____

TO: _____

TO: _____

BY PLACING SAME IN A SEALED ENVELOPE, and depositing same in the United
States Mail at the Delaware Correctional Center, Smyrna, DE 19977.

On this_____day of ___ 1 - 26 - 07 _____ ,2007

Henry W Glanding Jr.

"KNOWLEDGE OF POSSESSION"

THE READING OF AND THE CASE LAW FOR THIS WAS CHANGED ON

DECIDED ON 12-13-2002.

STATUTE WAS AMENDED AGAIN ON JUNE 30, 2003

STATUTE WAS AMENDED AGAIN ON JUNE 30, 2005

"I WAS found guilty with THE READING OF KNOWLEDGE OF POSSESSION" READING

To be guilty of a VIOLATION of THIS SECTION, A PERSON NEED ONLY KNOW THAT HE OR SHE possessed a WEAPON; THIS SECTION DOES NOT REQUIRE THE PERSON TO KNOW THAT IT WAS CRIMINAL TO do so. KIPP V. STATE, DEL. SUPR. 704 A.2d 839 (1998)

AFTER I WAS found guilty of this STATUTE 11 DEL C. § 1448, THE READING of "KNOWLEDGE OF POSSESSION" WAS changed To READ AS So long as defendant KNEW of defendants own POSSESSION OF WEAPONS, THE ISSUE OF WEATHER defendant KNEW THAT defendant WAS NOT supposed To have them AS A person under disability WAS ENTIRELY IRRELEVANT. GLANDING V. STATE, 812 A.2d 899 (DEL. 2002)

THERE WAS NOTHING IN OR AT my TRIAL To do with disability OR disabled persons!

4.

the STATE uses FIREARM So thay do NOT
have TO define A DEADly WEAPON. BUT thay
CAN STILL find me Guilty of A DEADly WEAPON
without Reading " which is used, or ATTEmpTeD TO be
used, TO CAuse deaTh or Serious Physicac InjuRy."
My INdICTMENT REAds P.F.B.P.P. buT Im found in
VIOLATION of 11.DEC.C. & 1448. BUT SEARCH WARRANT APPLICATION
REAds. P.D.W.B.P.P. DEAdly WEApon.
     This STATUTE hAs bEEN AmENded 3 TIMES SENCE

my CONVICTION.

ONE EVEN using my NAME And CASE #!

Also ONE using or from A REBAULT or ISSUES
RAise in my 61 PosT Conv. ARgueMENT.



IN THE MATTER OF:
   Glanding, Henry W JR.
   829 Lion Hope Road
   Grey One-story Ranch Style Home
   Facing East, A Front door located on
   The East Side and a Side Door on the
   North Side of the residence. The
   Residence is Located on the W/S of CR
   143 approximately ¾ Mile N/O CR 300.

   {  SEARCH WARRANT
   {  SS:
   {  APPLICATION AND AFFIDAVIT
   {  *No Notice of Night Time Search.*

STATE OF DELAWARE       DATE OF APPLICATION    COMPLAINT NO.
COUNTY OF Kent          May 11, 2001        08-01-7206
****************************************************************
Be it remembered that on this *11th* day of *May*, A.D. *2001*, before me
(Authority) *JAMES T. VAUGHN JR SUPERIOR COURT JUDGE*
NAME (S) OF AFFIANT (S):
Detective M. Calloway 7950      of DSP SIU-South
Detective D. Boulerice 7710   of DSP SIU-South

personally appeared and being duly sworn (affirmed) according to law,
depose (s) and say (s) that there is probable cause to believe that
certain property is evidence of or the fruit of a crime or is
contraband or is particular premises or places or in the possession
of particular person(s) as described below.

ITEMS TO BE SEARCHED FOR AND SEIZED:
See attached addendum #1

SPECIFIC DESCRIPTION OF PREMISES AND/OR PLACE(S) AND/OR VEHICLE(S)
AND/OR PERSON(S) TO BE SEARCHED:

  829 Lion Hope Road Grey One-story Ranch Style Home Facing East, A
Front door located on The East Side and a Side Door on the North Side
of the residence. The Residence is Located on the W/S of CR 143
approximately ¾ Mile N/O CR 300. Any and all out buildings. Any and
all vehicles located on the property.

NAME OF OWNER(S), OCCUPANT(S) OR POSSESSOR(S) OF PREMISES AND/OR
PLACE(S) AND/OR VEHICLE(S) AND/OR PERSON(S) TO BE SEARCHED:
Henry W. Glanding JR. WMN. 44 D.O.B. 111556 6'01" 210lbs 829 Lion
Hope Road, Clayton, DE. 19938

VIOLATION OF (Describe Conduct or Specify Statute)
Possession with Intent to Deliver Methamphetimene.
Possession with Intent to Deliver Cocaine.
Possession of a Deadly Weapon by Person Prohibited

*14*

IN THE MATTER OF:

Glanding, Henry W JR.                    {    SEARCH WARRANT
829 Lion Hope Road                       {    SS:
Grey One-story Ranch Style Home          {
Facing East, A Front door located on     {    IN THE: DAYTIME   WARRANT
The East Side and a Side Door on the     {WAS SERVED IN NIGHT TIME
North Side of the residence. The         hours with NO WARNING or
Residence is Located on the W/S of CR    NOTICE given 11.DEL.C. § 2308
143 approximately ¾ Mile N/O CR 300.

STATE OF DELAWARE            DATE OF APPLICATION   COMPLAINT NO.:
COUNTY OF KENT                    051101              08-01-7206

THE STATE OF DELAWARE TO:
DETECTIVE M. Calloway and Detective D. Boulerice of the DELAWARE
STATE POLICE with the assistance of any police officer or constable
or any other necessary or proper person or persons or assistance.

GREETINGS:

Upon the annexed affidavit and application or complaint for a search
warrant as I am satisfied that there is probable cause to believe
that a certain property, namely: No Address or Name

ITEMS TO BE SEARCHED FOR AND SEIZED:
See attached addendum #1.

used or intended to be used for:
illegal sale and/or use of illegally controlled substances.
and is being concealed on the (premises) (person) described in the
annexed affidavit and application or complaint;
NOW THEREFORE, YOU ARE HEREBY COMMANDED within ten (10) days of the
date hereof search the above-named person, persons, house, conveyance
or place for the property specified in the annexed affidavit and
application and to search any occupant or occupants found in the
house, place or conveyance above named for such property, serving
this warrant and making the search in the daytime or the nighttime
and, if the property, papers, articles or things, or any part
thereof, be found there, to seize it, prepare a written inventory of
the property seized and to return the property and persons in whose
custody or possession the property was found to be dealt with
according to the law.

DATED the 11ᵗʰ day of May , A.D. 2001

_____
Judge or Justice of the Peace
(Designate name, title and court)
    SUPERIOR COURT JUDGE

No Court
Seal.

15

Robert Kracyla - Direct

1    those lines, we kind of use the drug investigators

2    to go ahead and brief us on all the intelligence

3    they have.  They will go ahead and tell us who the

4    target is, what the threat level is perceived, and

5    typically the only time we would be called if it was

6    something that was of a high risk nature.

7            I remember this investigation contacting

8    the drug detectives and then explaining the

9    association with the Pagan motorcycle gang.  Also

10   the criminal history was brought in, the threat of

11   weapons, and it was our determination that once we

12   found out that there was a warrant out of Maryland,

13   which was the reason we were there, to make the

14   arrest, we felt that it would be unsafe for our team

15   to go ahead and make entry into the residence.  We

16   didn't want to make an entry into the residence if

17   we didn't have to, and we did have a daytime search

18   warrant, so we were just basically going to try and

19   wait it out up until 2200 hours, ten o'clock at

20   night, until he would come out.  That way we don't

21   put our guys or our team members at unnecessary

22   risk.

23           So what we did was we said we would go

This
CLEARLY
SHOWS
A DAYTIME
SEACH
WARRANT

WITH A
NIGHT TIME
SEARCH.

A DAYTIME SEARCH WARRANT STOPS AT 10 O'CLOCK.

SEARCH WARRANT   11. DEL. C. & 2308
GENERAL RULE.

MOST JURISDICTIONS REQUIRE SEARCH WARRANTS
TO BE EXECUTED DURING DAYTIME HOURS UNLESS A
SPECIAC SHOWING OF NEED TO SEARCH AT NIGHT IS
MADE TO THE ISSUING MAGISTRATE AND
"NOTED ON THE WARRANT"

DAYTIME WARRANT'S RUN TO 6:00 AM TO 10:00 PM.

SEARCH OF ~~VEHIC~~ Vehicles NOT ON DISCRIBED PREMISES
11. DEL. C. & 2308

WHERE VEHICLES ARE NOT SPECIFICACLY DESCRIBED IN A
SEARCH WARRANT OR ARE NOT ON THE "PREMISES DESCRIBED
IN THE WARRANT", THE WARRANT DOES NOT JUSTIFY THE
SEARCH. WARRANT FOR SEARCH OF PREMISES AND VEHICLES
DID NOT JUSTIFY SEARCH OF VEHICLES THAT WAS STOPPED
NEARLY 1/2 MILE FROM RESIDENCE AND WAS LED WITHIN
THE TERRITORIAC COVERAGE OF THE WARRANT.

MY VEHICLES WAS STOPPED 1.5 MILES FROM MY HOUSE.
ALSO OFFICER WOULD NOT SAY OR SHOW COPY OF
SEARCH WARRANT. BECUSE I DID ASK FOR COPY
OF SAID WARRANT.

15-B

Also Judge Vaughn Signed Search Warrant.
Judge Vaughn heard most of my hearing's
Bail.
Arranments
Post 61.

Judge Vaughn should of been becuse
Conflict of intrest.



IM: Henry Branding Jr
SBI# 132504 UNIT W-West 4-13-B,
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977

United States District Court for the

J. Caleb Boggs Building
844 King Street
Locker Box 18
Wilm Del. 19801

SEARCH WARRANT 11. DEC. C. § 2308

GENERAL RULE.

Most Jurisdictions require Search Warrants
To be executed during dayTime hours unless a
special showing of need To Search at night is
made To the issuing magistrate and
"Noted on the Warrant"

DayTime Warrant Runs To 6:00Am To 10:00 P0 Am.
"Search of Vehicles not on Discribed Premises
11. DEC. C. § 2308"

Where Vehicles are not specifically discribed in a
Search Warrant or are not on the "premises described
in the Warrant" the Warrant does not Justify the
Search. Warrant for Search of premisses and Vehicles
did not Justify Search of Vehicles that was
stopped. Nearly ½ mile from Residences and was led
within the Territorial coverage of the Warrant.

My Vehicle was Stopped 1.5 miles from my house
Also officers would not say or show copy of
Search Warrant. Because I did ask for
Copy of Said Warrant.

194

Also Judge Vaughn Signed Search warrant.
Judge Vaughn heard most of my hearings.
Bail...
Arraignments
Post 61.

Judge Vaughn should of step down
Conflict of Intrest.