## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **HENRY W. GLANDING, JR.** | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civ.Act.No. 07-469-*** |
| | ) | |
| **ELIZABETH BURRIS,** Acting Warden | ) | |
| and **JOSEPH R. BIDEN, III**, Attorney | ) | |
| General for the State of Delaware | ) | |
| | ) | |
| Respondents. | ) | |

### ANSWER

Pursuant to Rule 5 of the Rules Governing Section 2254 Actions, 28 U.S.C. foll. § 2254, respondents state the following in response to the petition for a writ of habeas corpus:

### Discussion

A grand jury in June 2001 indicted Henry W. Glanding, Jr., charging him with, amongst other charges, fifteen counts of possession of a deadly weapon by a person prohibited and one count of trafficking in cocaine. (Del. Super. Ct. Crim Dkt. 0105009486A, D.I. 3). Prior to trial, Glanding's trafficking charge was severed from the weapons charges.[1] (Del. Super. Ct. Crim Dkt. 0105009486A, D.I. 46). In March 2002, a Superior Court jury convicted Glanding on all fifteen counts of possession of a deadly

---

[1] In April 2003, Glanding pled guilty to one count of trafficking in cocaine and was sentenced to five years incarceration, suspended after three years for two years of probation. (Del. Super. Ct. Crim Dkt. 0105009486B, D.I. 38). From a review of the record, it does not appear that Glanding appealed his trafficking conviction to the Delaware Supreme Court. It does not appear that Glanding is challenging his trafficking conviction in the instant petition.

weapon by a person prohibited.  (Del. Super. Ct. Crim Dkt. 0105009486A, D.I. 49).

Glanding was subsequently sentenced, in April 2002, to thirty years imprisonment,

suspended after fifteen years for nine years probation.  (Del. Super. Ct. Crim Dkt.

0105009486A, D.I. 50).  The Delaware Supreme Court affirmed Glanding's firearms

convictions in December 2002. *See Glanding v. State*, 2002 WL 31796278 (Del. 2002)

(*Glanding I*) (Ex. A).  In November 2004 Glanding filed a motion for postconviction

relief, which was ultimately denied by Superior Court in November 2005.  (D.I. 3 at 74-

90, 121-33; Del. Super. Ct. Crim Dkt. 0105009486A, D.I. 79, 81).  That result was

affirmed by the Delaware Supreme Court in May 2006. *See Glanding v. State*, 2006 WL

1360160 (Del. 2006) (*Glanding II*) (Ex. B).

Petitioner raises three grounds for relief: a) his attorney provided constitutionally

deficient representation by not challenging the validity of the search warrant; b) that the

State did not proffer sufficient evidence to convict Glanding of possession of a deadly

weapon by a person prohibited; and c) he was convicted of a charge that does not exist

under Delaware law, possession of a firearm by a person prohibited.  Glanding, however,

is not entitled to relief because the claims presented in his petition are untimely under 28

U.S.C. §2244(d) and are, additionally, without merit.

Because Glanding's petition was filed in July 2007, it is subject to the

Antiterrorism and Effective Death Penalty Act ("AEDPA") signed into law by the

President on April 24, 1996. *See generally Lindh v. Murphy*, 521 U.S. 320, 336 (1997)

(holding the AEDPA applies to "such cases as were filed after the statute's enactment.");

*Lawrie v. Snyder*, 9 F. Supp.2d 428, 433 n.1 (D. Del. 1998); *Dawson v. Snyder*, 988 F.

Supp. 783, 802-03 (D. Del. 1997).    Under 28 U.S.C. §2244(d)(1)(A), therefore,

2

Glanding's federal habeas petition must have been filed within one year of the date that Glanding's convictions became final.[2] Glanding's convictions became final, for purposes of habeas relief, on March 19, 2003, ninety days after the Delaware Supreme Court affirmed his convictions in *Glanding I*. Thus, Glanding's petition must have been filed on or before March 19, 2004 to be timely. Glanding's petition, dated July 26, 2007, was obviously filed past the March 2004 deadline. The petition is thus untimely and must be dismissed, unless the time period can be statutorily or equitably tolled. *See Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999).

In turn, the tolling mechanism of §2244(d)(2) does not save Glanding's petition from the running of the limitations period. When applicable, §2244(d)(2) tolls the one-year period of § 2244(d)(1) during the time that a properly filed state postconviction action is pending in the state courts. Glanding filed a motion for postconviction relief in November 2004. (Del. Super. Ct. Crim Dkt. 0105009486A, D.I. 70). While Glanding's postconviction motion was timely under state law, it did not act to toll the limitations period because the limitations period had already run. Because Glanding has filed this federal habeas action more than three years beyond the §2244 bar, it is untimely.

Of course, as the Court has repeatedly noted, the limitations period might be subject to equitable tolling. *See, e.g., Thomas v. Snyder*, 2001 WL 1555239, at *3-4 (D. Del. Nov. 28, 2001). Equitable tolling, however, applies only where the petitioner "has in some extraordinary way been prevented from asserting his or her rights." *Miller v. New Jersey State Dep't of Corrections*, 145 F.3d 616, 618 (3d Cir. 1998). Here, Glanding has failed to demonstrate or even allege any extraordinary circumstances that prevented him

---

[2] Glanding does not allege, nor can respondents discern, any reason to believe that the terms of 28 U.S.C. §2244(d)(1)(B)-(D) are applicable.

from filing his petition with the Court in a timely manner. Glanding has, in fact, never been diligent in asserting his rights –he waited almost two years after his conviction was affirmed by the Delaware Supreme Court to file his motion for postconviction relief, and waited more than an additional year to file the present action after the state supreme court affirmed the trial court's denial of his motion for postconviction relief. *See Pace v. DiGuglielmo*, 544 U.S. 408 (2005); *LaCava v. Kyler*, 398 F.3d 271, 276-77 (3d Cir. 2005). Glanding cannot credibly allege that the legal arguments or facts were unavailable to him during the limitations period. In short, Glanding's claims are untimely under § 2244(d), and there is no basis upon which any relevant time may be tolled.

*Claim One: Ineffective Assistance of Counsel*

Glanding claims that his attorney was ineffective for failing to challenge the validity of the search warrant which led to the discovery of his weapons cache. Because Glanding presented this claim to the Delaware Supreme Court in *Glanding II*, it has been properly exhausted. Glanding, however, is not entitled to federal habeas relief because he has not demonstrated that the Delaware courts' resolution of his particular claims:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Hameen v. Delaware*, 212 F.3d 226, 235 (3d Cir. 2000); *Werts v. Vaughn*, 228 F.3d 178, 196-97 (3d Cir. 2000); *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 885 (3d Cir.) (*en banc*), *cert. denied*, 528 U.S. 824 (1999) (determining the standard of review governing petitions

for a writ of habeas corpus under revised § 2254(d)). Thus, under revised § 2254, a habeas petitioner is not entitled to relief unless he can establish that the decision of the state court was contrary to, or involved an objectively unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. *See Gattis v. Snyder*, 278 F.3d 222, 228 (3d Cir.), *cert. denied*, 537 U.S. 1049 (2002); *Matteo*, 171 F.3d at 885; *Lawrie v. Snyder*, 9 F. Supp. 2d 428, 434 (D. Del. 1998). Moreover, factual determinations by state trial and appellate courts are presumed correct absent clear and convincing evidence to the contrary, and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding. *See* §§ 2254(d)(2), (e)(1). *See also Williams,* 529 U.S. at 402-13; *Affinito v. Hendricks*, 366 F.3d 252, 256-57 (3d Cir. 2004); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000), *cert. denied*, 531 U.S. 1084 (2001).

To prevail on a claim of ineffective assistance of counsel, Glanding must establish that (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's error, the result would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Wells v. Petsock*, 941 F.2d 253, 259 (3d Cir. 1991). The *Strickland* standard is "clearly established" for purposes of §2254(d). *Williams v. Taylor*, 529 U.S. 362, 391 (2000). A habeas petitioner must allege facts which, if accepted as true, would satisfy both prongs of the *Strickland* test: deficient performance and prejudice to the defense. *See Wells*, 941 F.2d at 259-60; *cf. Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996).

Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689. Thus, to sustain an ineffectiveness claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Strickland,* 466 U.S. at 693, 696; *Wells,* 941 F.2d at 259-60; *Dooley v. Petsock,* 816 F.2d 885, 891-92 (3d Cir. 1987). "Where prejudice is lacking, the court need not determine whether the performance was subpar." *Marshall v. Hendricks,* 307 F.3d 36, 86 (3d Cir. 2002).

Glanding has failed to demonstrate that he suffered any prejudice from his counsel's alleged deficiencies. The Delaware Supreme Court, in *Glanding I,* described the circumstances of Glanding's arrest and the search of his home:

> The evidence at trial reflects that on May 11, 2001, the Delaware State Police set up surveillance on the appellant's residence on Lion Hope Road in Clayton, Delaware, to observe the actions of the appellant prior to the police executing a search warrant at the appellant's residence. Earlier in the day, the police had received information that the appellant, Henry Glanding, was wanted out of Maryland for several felony offenses, and that Glanding, who was a convicted felon with a reported violent history, was known to carry a firearm. The police observed Glanding's residence from approximately 1:00 p.m. until about 8:30 p.m. on May 11 and obtained the signed search warrant around 3:00 p.m. that day.
>
> 5) Between 5:00 p.m. and 8:30 p.m., the police observed a shirtless Glanding working around his yard with what appeared to be a revolver strapped to his waist. Out of concern for their safety, the police decided not to arrest Glanding at his residence, or to execute the search warrant, until Glanding was in his vehicle and away from the residence.
>
> 6) At around 8:30 p.m., Glanding left his residence in his Dodge Ram truck and headed south on Lion Hope Road. Approximately one-half mile away from the residence, the police stopped Glanding in a "felony car jam" in which the police used several vehicles to box in Glanding's truck. Once Glanding's truck was boxed in, the police extracted Glanding from the truck, placed him on the ground, handcuffed him and searched

> him. The police then searched the passenger compartment of Glanding's
> truck. The police located a loaded .357 revolver in the console.

*Glanding I*, 2002 WL 31796278 at *1. The Superior Court, citing *Strickland*, found that

Glanding's trial counsel was not ineffective for failing to challenge the validity of the

search warrant because the warrant was clearly supported by probable cause and would

have been upheld in any suppression hearing. (D.I. 3 at 122). The Supreme Court

affirmed the Superior Court's holding. *See Glanding II*, 2006 WL 1360160. Against

this backdrop, Glanding has not established that the state court's decision warrants relief

under § 2254.

*Claim Two: 11 Del. C. §1448*

Glanding next claims that the State did not proffer sufficient evidence to establish

that he committed the crime of possession of a deadly weapon by a person prohibited. In

the alternative, Couch argues that 11 Del. C. §1448 is unconstitutionally vague. Because

Glanding's sufficiency of evidence claim amounts to little more than a question of the

interpretation of state substantive law, it is not cognizable on federal habeas. *See Getz v.*

*Snyder*, 1999 WL 127247 at *4 (D.Del. 1999) (Ex. C). Further, assuming *arguendo* that

this claim presents a federal issue, because Glanding did not fairly present his claim that

11 Del. C. §1448 is unconstitutionally vague to the Delaware Supreme Court, it is

nonetheless unexhausted.

Glanding first argues that the prosecution did not adduce sufficient evidence at

trial to establish that he committed the crimes of possession of a deadly weapon by a

person prohibited because the State did not show that the firearms he owned were "used

or attempted to be used to cause death or serious physical injury." While Glanding's

argument is couched in the garb of a sufficiency of evidence claim, it is instead a claim

that the trial court misinterpreted the definition of deadly weapon found in 11 Del. C. §222(5) when read in conjunction with 11 Del. C. §1448(b). (*See* D.I. 2 at 11-12). The Delaware Superior Court concluded, and the Delaware Supreme Court affirmed that, to be convicted of possession of a deadly weapon by a person prohibited, all that needed to be shown was that Glanding was a convicted felon and that he possessed numerous firearms. (D.I. 3 at 110). Federal courts are bound to accept the Delaware Supreme Court's construction of Delaware statutes. *See Missouri v. Hunter*, 459 U.S. 359, 368 (1983). Because "federal habeas corpus relief does not lie for errors of state law," Glanding is not entitled to relief on this claim. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). *See also Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Getz*, 1999 WL 127247 at *4.

Glanding also claims that 11 Del. C. §1448 is unconstitutionally vague. (*See* D.I. 2 at 12). Glanding, however, did not fairly present this claim to the state courts. Accordingly, this claim is unexhausted and procedurally defaulted. Glanding, therefore, is not entitled to relief.

A state petitioner seeking federal habeas relief must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b); *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Rose v. Lundy*, 455 U.S. 509, 515 (1982); *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Alston v. Redman*, 34 F.3d 1237, 1241-42 (3d Cir. 1994). In order to demonstrate that a claim has been exhausted in state court, a petitioner "must show that he presented each claim to the Delaware Supreme Court." *Bailey v. Snyder*, 855 F. Supp. 1392, 1399 (D. Del. 1993); *see also Picard*, 404 U.S. at 275; *Stevens v. Delaware Corr'l Center*, 295 F.3d 361, 369 (3d Cir. 2002); *Lines v. Larkin*, 208 F.3d 153, 160 (3d Cir. 2000); *Burkett*

*v. Love*, 89 F.3d 135, 138 (3d Cir. 1996); *Toulson v. Beyer*, 987 F.2d 984, 986 (3d Cir. 1993). The habeas petitioner must afford each level of the state courts a fair opportunity to address the claims. *See Doctor v. Walters*, 96 F.3d 675, 678 (3d Cir. 1993). To exhaust state remedies, a petitioner must have raised in the state courts the legal and factual basis of the claims he presents to the federal habeas court. *See* 28 U.S.C. § 2254(b); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Landano v. Rafferty*, 897 F.2d 661, 670-71 (3d Cir. 1990).

Glanding did not fairly present his vagueness claim to the state courts. In order to "fairly present" his vagueness claim to the state supreme court, Glanding could have explicitly referred to a specific federal constitutional provision. *See McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999) (citing *Evans v. Court of Common Pleas*, 959 F.2d 1227 (3d Cir. 1992)). A prisoner can also fairly present a claim by relying "on pertinent federal cases employing constitutional analysis," relying on state court decisions "employing constitutional analysis in like situations," phrasing the claim "in terms so particular as to call to mind a specific right protected by the Constitution," or alleging "a pattern of facts that is well within the mainstream of constitutional litigation." *McCandless*, 172 F.3d at 261 (quoting *Evans*, 959 F.2d at 1232) (internal quotations omitted). Glanding did not pursue either of these options.

The portion of Glanding's memorandum in support of his petition for federal habeas report is merely a copy of the page raising this claim before the Delaware Superior Court in his motion for postconviction relief. The vagueness argument was clearly not the basis for the challenge to §1448 before the Delaware Superior Court or the Delaware Supreme Court. (*See* D.I. 3 at 88, 157). The only case cited by Glanding in

this portion of his brief was *In re Shylish*, 743 U.S. 165 (1999), a case which apparently does not exist. Glanding, therefore, did not fairly present his vagueness argument to the Delaware Supreme Court, and the claim is now procedurally defaulted. However, Glanding cannot return to Superior Court to present this claim: any motion for postconviction relief would be dismissed under Delaware Superior Court Criminal Rule 61(i)(1) and (i)(2). Because there is no available state remedy, Glanding is excused from the exhaustion requirement. *See Teague v. Lane*, 489 U.S. 288, 297-98 (1989); *Dorsey v. Carroll*, 393 F.Supp.2d 272, 276 (D.Del. 2005).

Though Glanding's vagueness claim is excused from the exhaustion requirement, his claim is nonetheless procedurally defaulted. Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates cause for the default and resulting prejudice, or a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000). Review of Glanding's claim is thus barred unless he both shows cause for failing to have fairly raised this claim and actual prejudice stemming from the alleged constitutional errors. *E.g. Dorsey*, 393 F.Supp.2d at 277. Glanding, in his petition for federal habeas relief, provides no justification for failing to raise this claim in the state courts. As a result, Glanding has not established cause for his procedural default, and that warrants dismissal of his claim. *E.g., Elliott v. Kearney*, 2004 WL 724958, *4 n.5 (D. Del. Mar. 31, 2004).

*Claim Three: Possession of a firearm by a person prohibited*

Glanding's third claim is that he was convicted of a crime that did not exist, namely possession of a firearm by a person prohibited. (*See* D.I. 2 at 14). Because

Glanding did not present this claim to the state supreme court, review is barred unless he shows cause for failing to have fairly raised this claim and actual prejudice stemming from the alleged constitutional errors. As cause for his procedural default, Glanding merely states that he "requested his Counsel to argue this ground but counsel failed to do so." (D.I. 1 at 9). Reading Glanding's pleadings liberally, he appears to argue that his counsel was ineffective for failing to raise this claim on direct appeal or on appeal from the denial of his motion for postconviction relief. As previously noted, to sustain an ineffectiveness claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Strickland,* 466 U.S. at 693, 696. *Wells,* 941 F.2d at 259-60; *Dooley v. Petsock,* 816 F.2d 885, 891-92 (3d Cir. 1987). "Where prejudice is lacking, the court need not determine whether the performance was subpar." *Marshall v. Hendricks,* 307 F.3d 36, 86 (3d Cir. 2002).

Glanding simply cannot establish that his attorney was ineffective for failing to argue that he was convicted under a statute that did not exist. An indictment is sufficient when it: "'(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution.'" *United States v. Kemp,* 500 F.3d 257, 280 (3d Cir. 2007). The record demonstrates that Glanding was charged, specifically, under the language of 11 Del. C. §1448(b). (*See* D.I. 3 at 2-9). While the titles of the charges on the indictment were "possession of a firearm by a person prohibited," rather than "possession of a deadly weapon by a person prohibited," it is of no relevance. A firearm is a deadly weapon within the meaning of 11 Del. C. §1448. *See* 11 Del. C. §222(5).

11

The title of the charges in Glanding's indictment thus served to provide more detail as to the conduct alleged. Glanding, therefore can establish no prejudice from his attorney's failure to challenge the indictment and, as such, cannot establish cause for his procedural default. Accordingly, Glanding is not entitled to relief on this claim.

Conclusion

Based upon the Superior Court docket sheet, it appears that transcripts of Glanding's trial, verdict, and sentencing have been prepared. In the event that the Court directs the production of any transcript, respondents cannot state with specificity when such transcript would be available. However, respondents reasonably anticipate that such production would take 90 days from the issuance of any such order by the Court.

/s/ James T. Wakley
Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
DATE: December 14, 2007                Del. Bar. ID No. 4612

Westlaw.

812 A.2d 899                                                                      Page 1
812 A.2d 899, 2002 WL 31796278 (Del.Supr.)
**(Cite as: 812 A.2d 899, 812 A.2d 899 (Table))**

**H**
Glanding v. State
Del.Supr.,2002.
(The decision of the Court is referenced in the Atlantic Reporter in a 'Table of Decisions Without Published Opinions.')
Supreme Court of Delaware.
Henry GLANDING, Defendant Below, Appellant,
v.
STATE of Delaware, Plaintiff Below, Appellee.
No. 236, 2002.

Submitted Oct. 7, 2002.
Decided Dec. 13, 2002.

Defendant was convicted following jury trial in the Superior Court, Kent County, of 15 counts of possession of a deadly weapon by a person prohibited. Defendant appealed, and counsel filed motion to withdraw. The Supreme Court held that: (1) search of passenger compartment of defendant's truck was contemporaneous with his lawful arrest and was thus authorized; (2) conviction for possession of deadly weapon by a person prohibited did not require knowledge that it was criminal to possess deadly weapon; and (3) severance of deadly weapon charges from other counts in indictment was not plain error.

Judgment affirmed; motion moot.
West Headnotes
[1] Arrest 35 71.1(5)

35 Arrest
  35II On Criminal Charges
    35k71.1 Search
      35k71.1(4) Scope of Search
        35k71.1(5) k. Particular Objects Searched or Seized. Most Cited Cases
Search of passenger compartment of defendant's truck that occurred after defendant was permissibly extracted from truck, placed on ground, handcuffed, and searched was contemporaneous with his lawful arrest and was thus authorized. U.S.C.A. Const.Amend. 4.

[2] Weapons 406 4

406 Weapons
  406k4 k. Manufacture, Sale, Gift, Loan, Possession, or Use. Most Cited Cases
Conviction for possession of deadly weapon by a person prohibited does not require that a defendant know that it was criminal to possess deadly weapon, but only that defendant know he or she possessed the weapon. 11 Del.C. § 1448(b).

[3] Criminal Law 110 1035(2)

110 Criminal Law
  110XXIV Review
    110XXIV(E) Presentation and Reservation in Lower Court of Grounds of Review
      110XXIV(E)1 In General
        110k1035 Proceedings at Trial in General
          110k1035(2) k. Preliminary Proceedings. Most Cited Cases
Severance of 15 counts of possession of deadly weapon by a person prohibited, of which defendant was ultimately convicted, from remaining counts in indictment was not plain error; defendant failed to show severance prejudiced his defense on deadly weapon charges. 11 Del.C. § 1448(b); Sup.Ct. Rules, Rule 8.

Court Below-Superior Court of the State of Delaware, in and for Kent County in Cr. ID No. 0105009486A.

Before WALSH, HOLLAND and BERGER, Justices.

*ORDER*

**\*1** This 13th day of December 2002, upon consideration of the appellant's brief filed pursuant to Supreme Court Rule 26(c), counsel's motion to withdraw, and the State's response thereto, it appears to the Court that:

(1) In October 2001, Glanding was reindicted by a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Ex. A

grand jury for twenty-seven offenses. Sometime thereafter, the Superior Court granted Glanding's motion to sever sixteen charges: fifteen counts of Possession of a Deadly Weapon by a Person Prohibited and one count of Possession of Ammunition by a Person Prohibited, from the other offenses. Glanding proceeded to trial on the sixteen severed charges.[FN1]

> FN1. Glanding is scheduled to go to trial on the remaining charges on December 16, 2002. *State v. Glanding*, Del.Super., Cr. ID No. 0105009486B.

(2) Prior to trial, the Superior Court held a suppression hearing on Glanding's motion to suppress. Glanding, in part, challenged the search of his Dodge Ram truck, contending that the warrantless search of the truck was impermissible, and that the search warrant, which included "any and all vehicles located on the property," did not include Glanding's truck because it was not "located on the property" at the time it was searched. The Superior Court denied the motion, finding that the search of the passenger compartment of Glanding's truck was contemporaneous with Glanding's arrest and was thus lawful. Moreover, the Superior Court found that the truck was a valid subject of the search warrant, even if was not "located on the property" at the time of the search, and that, in any event, the items found in the vehicle would have inevitably been discovered.

(3) At the two-day jury trial in March 2002, Glanding stipulated that he was a convicted felon.[FN2] Glanding was convicted of fifteen counts of Possession of a Deadly Weapon by a Person Prohibited. The Superior Court dismissed the charge of Possession of Ammunition by a Person Prohibited. Glanding was sentenced to a total of thirty years at Level V imprisonment, suspended after fifteen years, for nine years of probation. This is Glanding's direct appeal.

> FN2. Glanding pleaded guilty in 1980 to Possession with Intent to Deliver Methamphetamine. *State v. Glanding*,

Del.Super., Cr. ID No. 80001340DI (Dec. 19, 1980).

4) The evidence at trial reflects that on May 11, 2001, the Delaware State Police set up surveillance on the appellant's residence on Lion Hope Road in Clayton, Delaware, to observe the actions of the appellant prior to the police executing a search warrant at the appellant's residence. Earlier in the day, the police had received information that the appellant, Henry Glanding, was wanted out of Maryland for several felony offenses, and that Glanding, who was a convicted felon with a reported violent history, was known to carry a firearm. The police observed Glanding's residence from approximately 1:00 p.m. until about 8:30 p.m. on May 11 and obtained the signed search warrant around 3:00 p.m. that day.

5) Between 5:00 p.m. and 8:30 p.m., the police observed a shirtless Glanding working around his yard with what appeared to be a revolver strapped to his waist. Out of concern for their safety, the police decided not to arrest Glanding at his residence, or to execute the search warrant, until Glanding was in his vehicle and away from the residence.

*2 6) At around 8:30 p.m., Glanding left his residence in his Dodge Ram truck and headed south on Lion Hope Road. Approximately one-half mile away from the residence, the police stopped Glanding in a "felony car jam" in which the police used several vehicles to box in Glanding's truck.[FN3] Once Glanding's truck was boxed in, the police extracted Glanding from the truck, placed him on the ground, handcuffed him and searched him. The police then searched the passenger compartment of Glanding's truck. The police located a loaded .357 revolver in the console.

> FN3. The purpose of the "felony car jam" is to decrease any chance of a pursuit.

7) A few minutes after Glanding was stopped and was otherwise occupied with his arrest, the police executed the search warrant at his residence. The police located a number of firearms and ammunition in a safe in Glanding's living room and more

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

812 A.2d 899                                                                    Page 3
812 A.2d 899, 2002 WL 31796278 (Del.Supr.)
**(Cite as: 812 A.2d 899, 812 A.2d 899 (Table))**

guns in Glanding's laundry room.

8) Glanding's defense counsel has filed a brief and a motion to withdraw pursuant to Supreme Court Rule 26(c). The standard and scope of review applicable to the consideration of a motion to withdraw and an accompanying brief under Rule 26(c) is twofold. First, the Court must be satisfied that defense counsel has made a conscientious examination of the record and the law for claims that could arguably support the appeal. Second, the Court must conduct its own review of the record and determine whether the appeal is so totally devoid of at least arguably appealable issues that it can be decided without an adversary presentation.[FN4]

> FN4.*Penson v. Ohio,* 488 U.S. 75, 83, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988); *McCoy v. Court of Appeals of Wisconsin,* 486 U.S. 429, 442, 108 S.Ct. 1895, 100 L.Ed.2d 440 (1988); *Anders v. California,* 386 U.S. 738, 744, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

9) Glanding's counsel asserts that, based upon a complete and careful examination of the record, there are no arguably appealable issues. Glanding's counsel informed him of the provisions of Rule 26(c) and provided Glanding with a copy of the motion to withdraw and the accompanying brief. Glanding also was informed of his right to supplement his attorney's presentation. Glanding responded with a document that raises several issues for this Court's consideration. The State has responded to the position taken by Glanding's counsel as well as the points raised by Glanding and has moved to affirm the Superior Court's decision.

10) Glanding raises five issues for this Court's consideration: (i) the search of his Dodge Ram truck was improper; (ii) the affidavit of probable cause was unsigned; (iii) the prosecutor erred when he argued to the jury that it did not matter whether or not Glanding knew he was breaking a law; (iv) Glanding would not have agreed to sever the charges if he'd known beforehand that the analysis of suspected methamphetamine that was seized from his

truck was negative; and (v) ineffective assistance of counsel. Glanding's claims are without merit.

[1] 11) Glanding's first arguably appealable issue is that the search of his truck was improper. Glanding's claim is without merit. The Superior Court correctly determined that the warrantless search of the passenger compartment area of Glanding's truck was contemporaneous with Glanding's lawful arrest and was thus clearly authorized.[FN5] Having concluded that the warrantless search of the passenger compartment of Glanding's truck was valid as a search incident to his lawful arrest, the Court need not address Glanding's allegation that the search warrant did not authorize a search of Glanding's truck once it left the property.

> FN5.*Traylor v. State,* 458 A.2d 1170, 1173-74 (Del.1983) (citing *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981)).

*3 12) Glanding's second arguably appealable issue is that the "affidavit of probable cause" is invalid because it was "unsigned ." This claim was not presented in the Superior Court, and Glanding has not demonstrated plain error concerning the claim.[FN6] Furthermore, at the suppression hearing, Glanding's counsel expressly conceded that he did not challenge the validity of the search warrant.[FN7] In any event, the "affidavit of probable cause" that is Exhibit B to the Justice of the Peace Court arrest warrant, and the probable cause sheet that is attached to the search warrant, both are signed and both appear to have been properly executed. Glanding's claim is without merit.

> FN6. Supr. Ct. R. 8; *Wainwright v. State,* 504 A.2d 1096, 1100 (Del.1986). Plain error is error that is "so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."*Id.*

> FN7. H'rg Tr., Mar. 4, 2002, at 95.

[2] 13) Glanding's third arguably appealable issue is that the prosecutor erred when he allegedly told the jury that it was not necessary for the State to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

prove that Glanding knew that he was a person prohibited from possessing a deadly weapon. This claim is without merit. Under title 11, section 1448(b) of the Delaware Code, a defendant is guilty of Possession of a Deadly Weapon by a Person Prohibited when the defendant is a prohibited person who knowingly possesses a deadly weapon.[FN8] Thus, to be guilty of the offense, the defendant need only know that he or she possessed the weapon. Section 1448 does not require the defendant to know, as Glanding suggests, that it was criminal to do so.[FN9]

> FN8.Del.Code Ann. tit. 11, § 1448 (2001).
>
> FN9.*Kipp v. State,* 704 A.2d 839, 842 (Del.1998).

[3] 14) Glanding's fourth arguably appealable issue is that he would not have agreed to sever the charges if he had known beforehand that the substance that was seized from his truck would not test positive as methamphetamine, as was suspected. This claim was not presented in the Superior Court, and Glanding has not demonstrated plain error concerning the claim.[FN10] A decision to sever charges is within the sound discretion of the trial court and is not disturbed on appeal absent a showing of actual prejudice by the defendant.[FN11] In this case, Glanding has not sustained his burden of demonstrating that severing his deadly weapon possession charges from his other charges prejudiced his defense on the deadly weapon charges.

> FN10. Supr. Ct. R. 8; *Wainwright v. State,* 504 A.2d 1096, 1100 (Del.1986).
>
> FN11.*Coffield v. State,* 794 A.2d 588, 595 (Del.2002).

15) In his fifth arguably appealable issue, Glanding raises claims of ineffective assistance of counsel. This Court will not consider claims of ineffective assistance of counsel that are raised for the first time on appeal.[FN12] In this case, Glanding did not raise his ineffective assistance of counsel claims in the Superior Court. Accordingly, we will not consider the claims in this appeal. Glanding, however,

may raise his ineffective assistance of counsel claims in a motion for postconviction relief that is filed in the Superior Court.[FN13]

> FN12.*Desmond v. State,* 654 A.2d 821, 829 (Del.1994).
>
> FN13. Super.Crim. R. 61.

16) This Court has reviewed the record carefully and has concluded that Glanding's appeal is wholly without merit and devoid of any arguably appealable issue. We also are satisfied that Glanding's appellate counsel has made a conscientious effort to examine the record and has properly determined that Glanding could not raise a meritorious claim in this appeal.

*4 NOW, THEREFORE, IT IS ORDERED that the State's motion to affirm is GRANTED. The judgment of the Superior Court is AFFIRMED. The motion to withdraw is moot.

Del.Supr.,2002.
Glanding v. State
812 A.2d 899, 2002 WL 31796278 (Del.Supr.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

901 A.2d 119
901 A.2d 119, 2006 WL 1360160 (Del.Supr.)
**(Cite as: 901 A.2d 119, 901 A.2d 119 (Table))**

Page 1

**H**

Glanding v. State
Del.Supr.,2006.
(The decision of the Court is referenced in the At-
lantic Reporter in a 'Table of Decisions Without
Published Opinions.')
Supreme Court of Delaware.
Henry GLANDING, Defendant Below, Appellant,
v.
STATE of Delaware, Plaintiff Below, Appellee.
**No. 631,2005.**

Submitted: May 10, 2006.
Decided: May 16, 2006.

Court Below: Superior Court of the State of
Delaware in and for Kent County, ID #
0105009486A, B.

Before STEELE, Chief Justice, HOLLAND and
JACOBS, Justices.

*ORDER*

STEELE, Chief Justice.
*1 This 16th day of May, 2006, upon consideration
of the briefs of the parties, and given our standard
of review it appears to the Court that the judgment
of the Superior Court should be affirmed on the
basis of and for the reasons set forth in its Order
dated November 30, 2005.

NOW, THEREFORE, IT IS ORDERED that the
judgment of the Superior Court is AFFIRMED.

Del.Supr.,2006.
Glanding v. State
901 A.2d 119, 2006 WL 1360160 (Del.Supr.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Ex. B

Westlaw.

Not Reported in F.Supp.2d                                                    Page 1
Not Reported in F.Supp.2d, 1999 WL 127247 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**

Getz v. Snyder
D.Del.,1999.
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
Charles R. GETZ, Jr. Petitioner,
v.
Robert W. SNYDER, Warden, and M. Jane Brady,
Attorney General of the State of Delaware, Respondents.
**No. CIV. A. 97-176-SLR.**

Feb. 18, 1999.

David P. Buckson, Esquire, Camden, Delaware,
Counsel for Petitioner.
Loren C. Meyers, Esquire, Timothy J. Donovan, Jr.,
Esquire, William E. Molchen, Esquire, and Thomas
E. Brown, Esquire of the Delaware Department of
Justice, Wilmington, Delaware, Counsel for Respondents.

MEMORANDUM OPINION
ROBINSON, District J.

I. INTRODUCTION

*1 Charles R. Getz, Jr. ("petitioner") is a state prisoner serving a life sentence at the Delaware Correctional Center ("DCC") in Smyrna, Delaware. Respondents Robert W. Snyder and M. Jane Brady are the warden of DCC and the Attorney General of the State of Delaware, respectively. In August 1989, a Delaware Superior Court jury found petitioner guilty of the first degree rape [FN1] of his eleven year old daughter. [FN2] On April 10, 1997, petitioner filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254. [FN3] (D.I.1) In his application for federal habeas corpus relief under 28 U.S.C. § 2254, petitioner sets forth thirty-five grounds for relief. The parties have briefed these issues in full. For the following reasons, the court will deny petitioner's application.

FN1. Following petitioner's indictment, but before his sentencing, the Delaware legislature recodified and renamed first degree rape as "Unlawful Sexual Intercourse in the First Degree" at 11 Del. C. § 775 (1995). The legislature explicitly provided that the amendments would not apply to crimes, "committed, or alleged to have been committed, before the dates of the enactment of these amendments."See 65 Del. Laws ch. 494, § 5. Because petitioner was indicted before the enactment of the amendments, the state prosecuted him under the old first degree rape statute. See 11 Del. C. § 764 (1979).

FN2. Initially, a Superior Court jury convicted petitioner of first degree rape in 1986. On direct appeal, however, the Delaware Supreme Court overturned that conviction due to the trial court's erroneous introduction of "other crimes evidence" in violation of the Delaware Rules of Evidence. See Getz v. State, 538 A.2d 726, 734 (Del.1988); see also Del. R. Evid. 404(b). On remand, petitioner's second trial ended in a mistrial when a prejudicial cartoon was discovered in the jury room. See D.I. 6 at A387.

FN3. Petitioner filed his initial brief pro se.On April 23, 1997, the court received a notice of attorney appearance for petitioner from David P. Buckson, Esquire. (D.I.9) Because petitioner drafted his opening brief and large portions of his reply brief, the court will construe the petition liberally. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

II. BACKGROUND

The court gleans the following facts from the Delaware Supreme Court's findings in its opinion in petitioner's direct appeal, Getz v. State, No. 364, 1990 WL 168288 (Del. Sept. 13, 1990) ("Getz I "), the Kent County Superior Court's opinion in peti-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Ex. C

Not Reported in F.Supp.2d                                    Page 2
Not Reported in F.Supp.2d, 1999 WL 127247 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

tioner's motion for postconviction relief, *Getz v. State.* Crim.A.No. IK 86-04-0085RI, 1994 WL 465543 (Del.Super.Ct. Jul. 15, 1994) ("*Getz II* "), the Delaware Supreme Court's opinion affirming the denial of postconviction relief, *Getz v. State.* No. 301, 1994 WL 622022 (Del. Oct. 31, 1994) ("*Getz III* "), and the court's independent review of the state court proceedings and the briefs submitted by the parties.[FN4]

> FN4. Petitioner objects to the facts as re-
> cited by the Delaware Supreme Court and
> requests that the court accept petitioner's
> own factual allegations as true. (D.I. 36 at
> 3) Section 2254, however, requires courts
> considering habeas corpus petitions to ac-
> cept a state court's findings of fact as cor-
> rect in the absence of clear and convincing
> evidence to the contrary. *See*28 U.S.C. §
> 2254(e)(1). Petitioner has presented no
> evidence to rebut this presumption of cor-
> rectness.

At the time of the offense, the victim and her older brother lived with petitioner and his second wife-the victim's stepmother. (D.I. 33 at 2) The step-mother testified that she awoke on the night of March 27, 1986 and discovered that petitioner had left the bedroom. While searching the house for pe-titioner, the stepmother encountered him leaving the victim's room. The victim testified that petition-er had entered her room, removed her underwear, and began having sexual intercourse with her. (D.I. 6 at A434) The victim claimed that petitioner stopped when he heard her stepmother approaching the room. (D.I. 6 at A435) The stepmother confron-ted the victim the following morning, but the victim initially denied having intercourse with petitioner. (D.I. 6 at A435) During a domestic dispute ten days later between petitioner and the victim's stepmoth-er, the victim's younger brother called the local po-lice to petitioner's home. The victim then told the police that petitioner engaged in sexual intercourse with her.

At petitioner's third trial, the jury heard testimony from Dr. Walter Kuhn, who conducted a pelvic ex-

am on the victim. Dr. Kuhn explained that the vic-tim's hymen was only partially intact and that this was consistent with the sexual intercourse de-scribed by the victim. Following testimony from the victim, her stepmother, police officers, rape counselors, and the defendant, the jury found peti-tioner guilty of first degree rape. The Delaware first degree rape statute provides that:

*2 A male is guilty of rape in the first degree when he intentionally engages in sexual intercourse with a female without her consent, and:

(1) In the course of the offense he inflicts serious physical, mental or emotional injury upon the vic-tim, or

(2) The victim was not the defendant's voluntary social companion on the occassion of the crime and had not previously permitted him sexual contact.

11 Del. C. § 764 (1979). For purposes of § 764, Delaware law presumes a lack of consent when the victim is less than sixteen years old. *See*11 Del. C. § 767(3). In petitioner's case, the victim was eleven years old at the time of the offense.

Following petitioner's conviction, his trial attorney filed a direct appeal with the Delaware Supreme Court along with a motion to withdraw as counsel pursuant to Delaware Supreme Court Rule 26(c).[FN5] In his motion to withdraw, petitioner's attorney listed four grounds for relief. Petitioner supplemented this brief with a sixty-eight page brief of his own alleging fifteen separate errors by the trial court. Claiming violations of his Fifth, Sixth, and Fourteenth Amendment rights, petitioner argued that the trial court erred in denying various motions, including motions to dismiss the indict-ment, to suppress evidence, and a motion for ac-quittal due to insufficient evidence. *See Getz I* at * *2. The Supreme Court affirmed petitioner's con-viction, stating that "the issues on appeal are clearly controlled by Delaware law, there is sufficient evid-ence to support the jury's verdict and there is no ab-use of judicial discretion."*Id.* at * *3.

> FN5.Rule 26(c) states, in pertinent part,
> that
> [i]f the trial attorney, after a conscientious

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 3
Not Reported in F.Supp.2d, 1999 WL 127247 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

examination of the record and the law, concludes that an appeal is wholly without merit, the attorney may file a motion to withdraw. Such motion will be accompanied by the following:
(i) ... A brief referring to anything in the record which may arguably support the appeal.

Following his unsuccessful direct appeal, petitioner filed a preliminary injunction in United States District Court against several Delaware state officials. The district court dismissed petitioner's motion as frivolous pursuant to 28 U.S.C. § 1915(d).*See Getz v. Delaware et al.,* Civ.A. No. 91-504-JLL (D.Del. Sept. 17, 1991), *appeal dismissed,*No. 91-3688 (3d Cir. May 20, 1992), *cert. denied,*506 U.S. 924 (1992). Petitioner then filed a motion for postconviction relief under Delaware Superior Court Rule 61.

In his Rule 61 motion, petitioner asserted ten separate grounds for relief, "several of which [were] variations on the same theme."*Getz II* at *1. Specifically, petitioner assailed the constitutionality of Delaware's rape statute, charged the prosecution with selective enforcement of the rape statute, reasserted several errors by the trial court, and claimed ineffective assistance of both trial and appellate counsel. *See id .* at *2. The Superior Court refused to address many of these issues on their merits, holding either that petitioner's claims were procedurally barred under Rule 61(i)(3) [FN6] or barred as formerly adjudicated under Rule 61(i)(4).[FN7]*See Getz II.*On October 31, 1994, the Supreme Court of Delaware affirmed the Superior Court's denial of postconviction relief. *See Getz III.*Petitioner then filed the habeas corpus petition currently under review.

FN6.Superior Court Criminal Rule 61(i)(3) states:
Any ground for relief that was not asserted in the proceedings leading to the judgment of conviction, as required by the rules of this court, is thereafter barred, unless the movant shows

(A) Cause for relief from the procedural default and
(B) Prejudice from violation of the movant's rights.

FN7.Superior Court Criminal Rule 61(i)(4) states, in pertinent part, that "[a]ny ground for relief that was formerly adjudicated, whether in the proceedings leading to the judgment of conviction [or] in an appeal ... is thereafter barred, unless reconsideration of the claim is warranted in the interest of justice ."

III. STANDARD OF REVIEW

*3 On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996). The AEDPA amended the standards for reviewing state court judgments in § 2254 proceedings. Since petitioner filed his habeas petition on September 13, 1996, following the enactment of the AEDPA, the court will apply the amended standards set forth in the AEDPA to petitioner's claims for federal habeas corpus relief.[FN8]*See Lindh v. Murphy,* 521 U.S. 320, 336 (1997).

FN8. The Third Circuit has held that "habeas petitions filed on or before April 23, 1997, may not be dismissed for failure to comply with § 2244(d)(1)'s time limit." *Burns v. Morton,* 134 F.3d 109, 111 (3d Cir.1998). Accordingly, the instant petition is not time-barred.

The federal habeas corpus statute, 28 U.S.C. § 2254 (1997), provides that a district court will consider a petition for a writ of habeas corpus presented by an individual "in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."28 U.S.C. § 2254(a). A district court need not consider a petition unless the petitioner has fulfilled certain procedural requirements, such as having "exhausted the remedies available in the courts of the State."*Id. §* 2254(b)(1)(A). State remedies are unexhausted if

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                Page 4
Not Reported in F.Supp.2d, 1999 WL 127247 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

the petitioner "has the right under the law of the State to raise, by any available procedure, the question presented."*Id.* § 2254(c). Thus, a petitioner must raise before the state court of last resort the factual and legal premises of the claims for relief asserted in the § 2254 petition. *See Chaussard v. Fulcomer,* 816 F.2d 925 (3d Cir.1987); *Gibson v. Scheidemantel,* 805 F.2d 135, 138 (3d Cir.1986). The principle of comity underlies this exhaustion requirement, which allows state courts the first opportunity to pass on alleged defects in the criminal proceedings. A petitioner need not raise issues on collateral appeal that he addressed on direct appeal. *See Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir.1997). Generally, unexhausted state claims "must be dismissed without prejudice." *Doctor v. Walters,* 96 F.3d 675, 678 (3d Cir.1996). As an alternative to dismissal, the court may deny the petition on the merits despite petitioner's failure to exhaust state remedies.*Id.* § 2254(b)(2).

The AEDPA prohibits district courts from granting a habeas petition for any claim heard on the merits at the state level unless such previous adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or unless the prior adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."*Id.* § 2254(d)(1)-(2). Additionally, the AEDPA increases the deference a federal court must pay to the factual findings and legal determinations made by state courts. *See Dickerson v. Vaughn,* 90 F.3d 87, 90 (3d Cir.1996) (finding amended § 2254 to be a "more deferential test" with respect to state courts' legal and factual findings). Like the prior § 2254(d), amended § 2254(e)(1) provides that factual determinations made by a state court are presumed correct. *See*28 U.S.C. § 2254(e)(1). The amended § 2254(e) goes further, however, by placing on the petitioner the burden of rebutting the presumption by clear and convincing evidence. *See id.*With these precepts in mind, the court now turns to an analysis of petitioner's claims.

## IV. DISCUSSION

*\*4* In his voluminous opening brief, petitioner alleges thirty-five grounds for habeas corpus relief. Several of these grounds present no constitutional question because they rest solely on substantive state law. Other grounds for relief are procedurally barred. The court will address first those claims that rest on state law and those that are procedurally barred. The court then will address grounds for relief adjudicated on the merits by the state courts below.

### A. Grounds that Rest on State Law

Petitioner asserts several grounds for relief for which he has exhausted state remedies, but which rest solely on interpretations of state substantive law. In ground one, petitioner argues that the Superior Court lacked jurisdiction to try him because the facts of his case satisfy the elements of incest FN9 (a misdemeanor crime within the exclusive jurisdiction of the Delaware Family Court), rather than the charged crime of first degree rape. *See Getz III* at \* \*3;*see also*11 Del. C. § 766(a)-(b) (Incest). In grounds five and six, petitioner argues that Delaware state courts have erroneously and impermissibly interpreted the Delaware first degree rape statute to include within the definition of first degree rape voluntary sexual relations between a custodial parent and his minor child.FN10In ground seven, petitioner argues that the Delaware legislature repealed the penalties for first degree rape. Grounds eight through eleven attack the sufficiency of petitioner's indictment. In grounds twenty-one and twenty-two, petitioner argues that the trial court permitted certain testimony in violation of the Delaware rules of evidence. Petitioner advanced all of these claims either on direct or on collateral appeal, thus exhausting his state remedies. *See Getz III* at \* \*3.

> FN9. Delaware law defines incest as, *inter alia,* sexual intercourse between "a male and his child." *See*11 Del. C. § 766(a).

> FN10. Petitioner contests the Delaware Superior Court's holding in *State v. Hamilton,*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 127247 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 5

501 A.2d 778 (Del.Super.Ct.1985), aff'd,515 A.2d 397 (Del.1986). In *Hamilton*, the Superior Court held that a custodial parent cannot claim that his child was his "voluntary social companion" so as to remove sexual intercourse with the child from the definition of first degree rape. *See id.* at 780.

The United States Supreme Court has stated on numerous occasions that claims based on questions of state substantive law are not cognizable on federal habeas review. *See Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991); *Wainwright v. Sykes,* 433 U.S. 72, 81 (1977). In *Sykes,* the Court explained that any questions of state substantive law are excluded from consideration in federal habeas corpus proceedings. *See*433 U.S. at 81. The Court has noted that "federal courts may intervene in the state judicial processes only to correct wrongs of a constitutional dimension."*Wainwright v. Goode,* 464 U.S. 78, 83 (1983). The Third Circuit also has recognized that federal courts may not second-guess a state supreme court's interpretation of a state penal statute. *See Helton v. Fauver,* 930 F.2d 1040, 1044 (3d Cir.1991) (citing *Missouri v. Hunter,* 459 U.S. 359, 368 (1983)). Even a "state court's misapplication of its own law does not generally raise a constitutional claim."*Geschwendt v. Ryan,* 967 F.2d 877, 888-89 (3d Cir.1992). This limitation on federal habeas review applies even if the petition is " 'couched in terms of equal protection and due process.' " *Branan v. Booth,* 861 F.2d 1507, 1508 (11th Cir.1988) (citation omitted).

1. Grounds One, Five, and Six

*5 In ground one, petitioner argues that the facts of his case, if true, satisfy the definition of incest, not rape. Whether a given set of facts constitutes rape or incest in the State of Delaware is fundamentally a question of state substantive law. *See Helton,* 930 F.2d at 1044. Ground one presents no constitutional issues for this court to resolve. Consequently, ground one will be dismissed.

Grounds five and six present issues similarly within

the exclusive jurisdiction of the Delaware courts. Here, petitioner claims that the Superior Court's decision in *Hamilton* impermissibly broadened the first degree rape statute by preventing him from claiming that his minor child was his "voluntary social companion" during sexual intercourse. *See Hamilton,* 501 A.2d at 778. Petitioner also contends that the trial court retroactively applied the *Hamilton* interpretation of "voluntary social companion" in violation of the petitioner's due process rights. He further claims that the *Hamilton* court's interpretation constituted *ex post facto* lawmaking in violation of Article I, § 10 of the Constitution.

The United States Supreme Court has noted that "an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post facto* law," and it can deprive an individual of due process by punishing him or her for conduct "that was innocent when done." *See Bouie v. City of Columbia,* 378 U.S. 347, 353-56 (1964). The facts of the instant case demonstrate that the *Hamilton* decision could not have been applied retroactively to petitioner. The Superior Court decided *Hamilton* in 1985, and petitioner engaged in sexual intercourse with his daughter in 1986. Thus, mere chronology establishes that petitioner had fair warning that engaging in nonconsensual sexual intercourse with his daughter violated Delaware's first degree rape statute.[FN1]

> FN1. Even if the *Hamilton* decision were applied retroactively to petitioner, the Superior Court construction of the phrase was not an "unforeseeable" judicial enlargement of the statute. The first degree rape statute clearly prohibits a male from engaging in unconsented sexual intercourse with a woman not his voluntary social companion. To construe "voluntary social companion" to include one's daughter would not only defy common sense but also render the state's incest law a nullity. *See*11 Del. C. § 771.

Petitioner's attack on the substance of the *Hamilton* decision is similarly meritless. When ruling on a

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 1999 WL 127247 (D.Del.)

(Cite as: Not Reported in F.Supp.2d)

Page 6

habeas corpus petition, a federal district court must "take[ ] the statute with the interpretation placed upon it by the courts of that state...."*United States ex rel. Kirchner v. Johnstone,* 454 F.Supp. 14, 16 (E.D.Pa.1978). The principles of comity and federalism dictate that federal courts must defer to state court interpretations of state statutes. Accordingly, the court will not dispute the *Hamilton* court's construction of "voluntary social companion" contained in the Delaware first degree rape statute.FN12

> FN12. Because claim B of ground thirteen raises the same objection as grounds five and six, it is dismissed.

### 2. Ground Seven

Petitioner contends in ground seven that the Delaware legislature repealed the penalties for first degree rape in its 1986 amendments to the state criminal code. Petitioner argues that, while the legislature retained the crime of first degree rape for crimes committed before July 9, 1986, the legislature did not "save" the enhanced sentencing penalties for first degree rape.

**\*6** The legislature amended the sentencing provisions for first degree rape contained in 11 Del. C. § 4209A by "striking first degree rape as it appears in the section title and in the section and by substituting in lieu thereof the phrase 'unlawful sexual intercourse in the first degree.'" 65 Del. Laws ch. 494, § 3. Petitioner maintains that, in the absence of an explicit savings clause for the first degree rape penalties, the legislature intended to repeal those penalties. Hence, petitioner argues, the trial court should not have applied the amended provisions of § 4209A in sentencing him to life imprisonment. (D.I. 4 at 82-83; D.I. 36 at 14-16)

In an opinion addressing this very issue, the Delaware Supreme Court held that the legislature had preserved the first degree rape penalties. *See Wicks v. State,* 559 A.2d 1194 (Del.1989). In *Wicks,* the Supreme Court examined the legislative history of the 1986 amendments and concluded that the legislature did not intend to "impose a lesser

sentence for those individuals who happened to commit the most serious sexual offenses before July 9, 1986, but fortuitously were not convicted and sentenced until after that date."*Id.* at 1196.Thus, the Delaware Supreme Court has spoken definitively on the statutory construction issue raised by petitioner. Federal courts may not question or overrule the state supreme court's holding on the construction of a state penal statute. *See Helton,* 930 F.2d at 1044. Therefore, the court will dismiss ground seven of the petition.FN13

> FN13. The court also will dismiss claims I and J of ground thirteen because they merely restate the same allegation as ground seven.

### 3. Grounds Eight through Eleven

In these putative grounds for relief, petitioner attacks the sufficiency of the indictment. In ground eight, he claims that his first degree rape indictment failed to allege the element of force.FN14*See* D.I. 4 at 84-85. In grounds nine through eleven, he claims that the indictment failed to allege facts regarding his state of mind, that the date of the alleged offense was based on false testimony, and that the time of the offense alleged in the indictment was vague. *See* D.I. 4 at 86-94. Petitioner raised grounds nine through eleven on direct appeal, thus exhausting state remedies.

> FN14. Habeas corpus review of this claim is procedurally barred because petitioner failed to present this issue to the Delaware Supreme Court and because petitioner has not shown cause for his failure to raise the issue and actual prejudice resulting therefrom. Because this issue concerns state substantive law, consideration of its merits would be barred anyway, and the court will consider it along with the related claims in this section for ease of analysis.

Challenges to the sufficiency of indictments do not raise cognizable issues in habeas corpus appeals. *See Knewel v. Egan,* 268 U.S. 442, 446 (1925); *United States ex rel. Potts v. Rabb,* 141 F.2d 45, 47

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 127247 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

(3d Cir.1944). The Delaware Supreme Court found that petitioner's indictment comported with Delaware law and that it provided a "plain, concise and definite written statement of the essential facts constituting the offense charged."*See Getz I* at * *2 (citing Super. Ct.Crim. R. 7(c)). In light of *Knewel,* further federal court review of the Delaware Supreme Court's conclusion is inappropriate. *See McGuire,* 502 U.S. at 67-68;*Sykes,* 433 U.S. at 81. Grounds eight through eleven will be dismissed.FN15

> FN15. In ground two, petitioner alleges that the trial court erroneously refused to consider his motion to dismiss the indictment on grounds that it alleged the wrong offense. Because the sufficiency of indictments is a matter of state substantive law, the court also will dismiss ground two.

### 4. Grounds Twenty-One and Twenty-Two

In his twenty-first and twenty-second grounds for relief, petitioner challenges the admission of certain testimony at his trial. He argues that the trial court erroneously denied his motion *in limine* to exclude his wife's testimony that she saw petitioner leave the victim's room on the night of the rape. (D.I. 4 at 160-61; D.I. 6 at A386F-G) He also argues that the trial court erred in permitting the prosecution to ask petitioner when he last had sexual relations with his wife. (D.I. 4 at 162-63) Petitioner raises no constitutional objections. In essence, petitioner alleges errors in the trial court's application of the Delaware rules of evidence.

*7 The United States Supreme Court has stated unequivocally that, "[s]uch an inquiry ... is no part of a federal court's habeas review of a state conviction."*McGuire,* 502 U.S. at 67. In *McGuire,* the Supreme Court reviewed a federal court of appeals decision granting habeas relief on the grounds that a state trial court had improperly interpreted the California rules of evidence. In reversing the lower court, the United States Supreme Court determined that state evidentiary rulings were matters of state substantive law. It also reemphasized that "it is not

the province of a federal habeas court to reexamine state-court determinations of state-law questions."*McGuire,* 502 U.S. at 67-68, 72. In the case at bar, the Delaware Supreme Court found that the testimony in dispute was relevant and nonprejudicial pursuant to Delaware rules of evidence. This court may not question that determination. *See id.*

Even assuming petitioner raised due process objections to the admission of this testimony, petitioner suffered no due process violations. Petitioner claims that his wife's testimony was inconsistent with her prior testimony and with the victim's account of the crime. The weighing of inconsistencies in testimony is a matter for the jury, not a federal court conducting a habeas corpus review. Petitioner contends that the prosecutor's questions relating to petitioner's marital sexual practices inflamed the jury. The record reveals, however, that the prosecutor limited his questions to the frequency that petitioner engaged in sexual intercourse with his wife. *See* D.I. 6 at A550L-R. The court finds that such questions, even if irrelevant, did not " 'so infect [ ] the entire trial that the resulting conviction violate[d] due process." ' *McGuire,* 502 U.S. at 72 (quoting *Cupp v. Naughten,* 414 U.S. 141, 147 (1973)). Accordingly, the court will dismiss grounds twenty-one and twenty-two.

### B. Procedurally Barred Grounds

The court finds that the following grounds for relief are procedurally barred because petitioner failed to properly present them to the Delaware Supreme Court. In ground twenty-six, petitioner contends that the trial court's jury instructions were defective because the court failed to inform the jury that the prosecution had to prove that petitioner used force or placed the victim in fear of her life. *See* D.I. 4 at 172-73. Petitioner raised this ground for the first time in a motion for reargument on the Supreme Court's denial of postconviction relief. *See* D.I. 5 at A250, A250C. Rejecting the motion on procedural grounds, the Supreme Court refused to address the merits of petitioner's motion. In ground thirty-four, petitioner alleges for the first time ten separate errors by the Delaware Supreme Court in its "Rule

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 127247 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

" review of petitioner's direct appeal.<sup>FN16</sup>

> FN16. Petitioner claims to have raised these grounds for relief in ground nine of his postconviction appeal to the Supreme Court. *See* D.I. 4 at 197. Ground nine of his postconviction brief raises only ineffective assistance of appellate counsel claims. Accordingly, the court finds that petitioner failed to raise the issues contained in ground thirty-four before the Delaware Supreme Court.

Petitioner has failed to present these claims to the Delaware Supreme Court. Thus, he has failed to exhaust his state remedies with respect to these two claims. Because Delaware Superior Court Rule 61(i)(2) prevents petitioner from seeking further postconviction relief, petitioner is excused from the exhaustion requirement. *See Teague v. Lane,* 489 U.S. 288, 297-98 (1989) (finding that because "collateral relief would be unavailable to petitioner," "fundamental fairness" requires that the exhaustion requirement be deemed fulfilled).

*8 Nonetheless, Rule 61(i)(2) acts as a procedural bar to these grounds for relief. *See Flamer v. Chaffinch,* 827 F.Supp. 1079, 1087-88 (D.Del.1993) (stating that in "a federal habeas review, a procedural bar requires a finding that the procedural default is based on independent and adequate state law grounds," and finding analogous Rule 61(i)(3) an adequate ground to bar federal habeas review), *aff'd,* 68 F.3d 710 (3d Cir.1995) (en banc). A federal district court may not consider a procedurally barred claim unless petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in the fundamental miscarriage of justice."*Coleman v. Thompson,* 501 U.S. 722, 750 (1991). To show "cause," petitioner must establish "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."*Murray v. Carrier,* 477 U.S. 478, 488 (1986). To establish a "miscarriage of justice," petitioner must show "that it is more likely than not

that no reasonable juror would have convicted him."*Dawson v. Snyder,* 988 F.Supp. 783, 805 (D.Del.1997) (citing *Schlup v. Delo,* 513 U.S. 298, 326). The miscarriage of justice exception applies only in extraordinary cases. *See Murray,* 477 U.S. at 496.

Petitioner presents no evidence of cause for his failure to raise these grounds for relief. Instead, petitioner claims in his reply brief that the court should excuse his default because of his inexperience in the law. *See* D.I. 36 at 66. The Supreme Court, however, did not so qualify its explicit prohibition against considering procedurally defaulted claims. *See Coleman,* 501 U.S. at 750. Because petitioner has failed to demonstrate cause, the court need not reach the question of whether petitioner suffered any actual prejudice from these alleged violations of law. *Bailey v. Snyder,* 855 F.Supp. 1392, 1402 (D.Del.1993), *aff'd,* 68 F.3d 736 (3d Cir.1995).

Petitioner also has failed to demonstrate that a "miscarriage of justice" would occur if the court did not review his procedurally barred claims. To demonstrate a miscarriage of justice, petitioner must present colorable claims of actual innocence. *See Sawyer v. Whitley,* 505 U.S. 333, 339 (1992). The petitioner must show "a fair probability that ... the trier of the facts would have entertained a reasonable doubt of his guilt."*Kuhlmann v. Wilson,* 477 U.S. 436, 454 n. 17 (1986) (internal citations and quotations omitted).

Petitioner has presented no colorable evidence of his actual innocence. Petitioner merely argues that the jury would have acquitted him had the judge instructed it in the necessity of proving force. (D.I. 4 at 173) Force, however, is not an element of first degree rape in Delaware.<sup>FN17</sup>In order to prove first degree rape under § 764, the state must show that "the victim was not the defendant's voluntary social companion on the occasion of the crime and had not previously permitted him sexual contact in addition to ... the defendant's intentional engagement in sexual intercourse without the victim's consent."*Tyre v. State,* 412 A.2d 326, 328 n. 1 (Del.1979) (construing 11 Del. C. § 746 (1979)).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 127247 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Thus, because the element of force is not essential to a first degree rape conviction, the trial court's refusal to include the element of force in its jury instruction does not establish a miscarriage of justice.

> FN17. Petitioner cites *Miller v. State,* 233 A.2d 164 (Del.1967) for the proposition that force is an essential element of first degree rape. In *Miller,* the Delaware court had to construe the elements of common law rape because the first degree rape statute in existence at the time, 11 Del. C. § 781 (1953), did not define the elements of rape. The first degree rape statute under which the state prosecuted petitioner, however, does specify the elements of rape, and force is not an essential element of that crime. *See* 11 Del. C. § 746 (1979). The court also will dismiss claim D of ground thirteen because it merely restates petitioner's belief that force is essential to a first degree rape conviction.

**\*9** Petitioner's complaints about the Delaware Supreme Court's Rule 26 review procedures on petitioner's direct appeal also do not raise any colorable claims of actual innocence. As such, even if the Supreme Court did not follow its own internal review procedures, no miscarriage of justice would occur by denying habeas corpus review of petitioner's claims. Accordingly, the court will dismiss grounds twenty-six and thirty-four.

### C. Grounds for Relief Not Addressed by the Delaware Supreme Court

Petitioner presented the following grounds for relief to the Delaware Supreme Court on direct appeal from his conviction. Thus, petitioner has exhausted his state remedies with respect to these claims. The Supreme Court, however, refused to address these grounds on their merits because petitioner had failed to provide the court with a transcript of the Superior Court proceedings. *See Getz I* at \* *2 (citing *Trioche v. State,* 525 A.2d 151 (Del.1987)). In its answer to petitioner's application for habeas corpus relief, the state concedes that the Supreme

Court erred and that it, in fact, did have the Superior Court transcripts. *See* D.I. 33 at 74-75; D .I. 6 at A647 (Superior Court order for preparation of transcript). If petitioner had failed to provide a transcript of his trial, the Supreme Court's refusal to consider his grounds for relief would serve as a procedural bar to habeas corpus review. Since the court cannot determine whether the Supreme Court received the transcript, the court will review on the merits those claims not addressed by the Supreme Court.

#### 1. Ground Three-Selective Prosecution

Petitioner claims that the state violated his due process and equal protection rights by selectively prosecuting him for first degree rape, rather than incest. *See* D.I. 4 at 72-74. The Constitution permits the government "the conscious exercise of some selectivity" in the enforcement of its criminal laws, *see Oyler v. Boles,* 368 U.S. 448, 456 (1962); however, any systematic discrimination in enforcement or "unjust and illegal discrimination between persons in similar circumstances," *Yick Wo v. Hopkins,* 118 U.S. 356, 374 (1886), violates equal protection and renders the prosecution invalid. *See United States v. Torquato,* 602 F.2d 564, 568 (3d Cir.1979); *United States v. Berrigan,* 482 F.2d 171, 174 (3d Cir.1973). In order to state a claim of selective prosecution, petitioner bears the burden of showing that the government intentionally and purposefully discriminated against him by failing to prosecute other similarly situated persons. *See Torquato,* 602 F.2d at 569-70 & n. 8 (quoting *United States v. Berrios,* 501 F.2d 1207, 1211 (2d Cir.1974)). Petitioner need not show that he belongs to a protected racial, ethnic, or religious class. *See Torquato,* 602 F.2d at 569 n. 9.

Petitioner objects to the Delaware Attorney General's policy of "charging the highest offense appropriate." *See* D.I. 4 at 72. The Constitution, however, does not require prosecutors to charge the least serious offense applicable to a given set of facts. *See United States v. Batchelder,* 442 U.S. 114, 123-24 (1979) (noting that "when an act violates more than one criminal statute, the Government may prosec-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 127247 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

ute under either so long as it does not discriminate against any class of defendants"). Petitioner also argues that the rule of lenity requires the state to prosecute him for incest rather than rape. The rule of lenity demands resolution of ambiguities in criminal statutes in favor of defendants, but it operates only after the court determines that a statute is ambiguous. *See United States v. Shabani,* 513 U.S. 10, 17 (1994); *United States v. Turcks,* 41 F.3d 893, 901 (3d Cir.1994). No court has found the Delaware first degree rape statute ambiguous. Therefore, petitioner may not invoke the rule of lenity.

**\*10** Petitioner also proffers evidence of others who engaged in sexual intercourse with minors, but who received more lenient sentences than he. *See* D.I. 4 at 74; D.I. 7 at A833-61. This evidence does not demonstrate that these other individuals were "similarly situated" to petitioner. Moreover, it fails to demonstrate purposeful discrimination by the prosecution against petitioner. Thus, petitioner cannot state a claim of selective enforcement.[FN18] Ground three will be dismissed.[FN19]

> **FN18.** To the extent that ground three raises an Eighth Amendment cruel and unusual punishment claim, the court finds that petitioner has not shown that his punishment includes "elements of severity, arbitrary infliction, unacceptability in terms of contemporary standards, or gross disproportion."*Ingraham v. Wright,* 430 U.S. 651, 658 (1977).

> **FN19.** In ground twenty-nine, petitioner bases an ineffective assistance of counsel claim on his trial counsel's failure to "investigate matters of law and fact" relating to selective prosecution. *See* D.I. 4 at 181. Because there was no evidence to support such a charge, trial counsel's failure to object to selective prosecution did not fall below an objectively reasonable standard of professional behavior. *See Strickland v. Washington,* 466 U.S. 668,

686 (1984). Therefore, insofar as petitioner's ineffective assistance of counsel claim rests on ground three, it is dismissed. Because claim A of ground thirteen raises the same selective enforcement objection, it is dismissed.

2. Ground Four-Denial of a Speedy Trial

Petitioner argues that the state strategically delayed his trial for three years in violation of his Sixth Amendment right to a speedy trial. *See* D.I. 4 at 75-76. The Sixth Amendment provides that "in all criminal prosecutions, the accused will enjoy the right to a speedy and public trial."U.S. Const. amend. VI. The Sixth Amendment right to a speedy trial applies to the states through the Fourteenth Amendment. *See Klopfer v. North Carolina,* 386 U.S. 213, 218 (1967). The United States Supreme Court has noted that courts must assess alleged violations of an accused's right to a speedy trial on an *ad hoc* basis. *See Barker v. Wingo,* 407 U.S. 514, 530 (1972). In *Barker,* the Supreme Court identified four factors that courts must consider in assessing an alleged denial of a speedy trial. These factors are (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) the prejudice to the defendant. *See id.*

The record reveals that approximately sixteen months elapsed between petitioner's conviction in the first trial and the reversal of that conviction by the Delaware Supreme Court. Nearly eleven months elapsed after the reversal and the commencement of petitioner's second trial, which resulted in a mistrial. Following the mistrial, seven months passed before the state renewed its prosecution in petitioner's third and final trial.

The state contends, and petitioner does not dispute, that most of the delay was attributable to the Supreme Court's consideration of petitioner's direct appeal. Petitioner also does not dispute that the substitution of defense counsel caused four months of the delay. Courts have found that delays related to the substitution of defense counsel do not raise speedy trial concerns. *See United States v. Ashford,*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

924 F.2d 1416, 1421 (7th Cir.1991); _United States v. Bolton_, 905 F.2d 319, 322 (10th Cir.1990). Two months passed without trial because of the unavailability of state witnesses. The United States Supreme Court has found that delays due to the unavailability of material witnesses are reasonable. See _Barker_, 407 U.S. at 531.

The record reveals that petitioner complained about trial delay in a letter to his attorney, _see_ D.I. 6 at A344, but petitioner never filed a formal complaint with the trial court. The Third Circuit has noted that "if a defendant is to tip the _Barker_ scales significantly in his favor on the factor of assertion of the right ... some formal motion should be made to the trial court or some notice given to the prosecution."_Hakeem v. Beyer_, 990 F.2d 750, 765 (3d Cir.1993). Plaintiff took neither of these steps.

*11 Petitioner also contends that this delay prejudiced his defense and that the prosecution used the delay "to justify to the jury[ ] the reason for the conflicting testimony of the witnesses."D.I. 4 at 76; D.I. 36 at 11. Petitioner, however, presents no compelling evidence of prejudice. Indeed, petitioner admits that the delay adversely affected the consistency of the testimony presented by the prosecution. _See_ D.I. 4 at 76. Thus, it appears that the delay prejudiced the prosecution more than it did the defendant.

Accordingly, the court finds that petitioner has failed to demonstrate a violation of his Sixth Amendment right to a speedy trial. The reasons for the delay were justified by an appeal that led to a reversal of his conviction, substitution of defense counsel, a mistrial, and the unavailability of material witnesses. Petitioner has not demonstrated prejudice from the delay between his indictment and his final trial. Moreover, petitioner never alerted the trial court to his speedy trial concerns. Consequently, the court will dismiss ground four.

3. Ground Twenty-Failure to Disclose _Brady_ Material

Petitioner argues that the prosecution failed to produce exculpatory evidence in violation of _Maryland v. Brady_, 373 U.S. 83 (1963). Under _Brady_, the prosecution must disclose exculpatory evidence to the accused that is material to either guilt or punishment. See _Brady_, 373 U.S. at 87. In order to establish a _Brady_ violation, a defendant must first demonstrate that the prosecution had the requested information within its actual or constructive possession. See _United States v. Veksler_, 62 F.3d 544, 550 (3d Cir.1995). Even if the prosecution had the evidence within its possession, not every failure to disclose evidence favorable to the accused requires a reversal of a conviction. See _Veksler_, 62 F.3d at 550. The undisclosed evidence must be material, and "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."_Pennsylvania v. Ritchie_, 480 U.S. 39, 57 (1987) (internal quotation and citation omitted). A conviction need not be vacated where the prosecution has not disclosed repetitious or cumulative evidence to the accused. See _United States ex rel. Marzeno v. Gengler_, 574 F.2d 730, 735 (3d Cir.1978).

Petitioner bases his _Brady_ claims on a letter that he, not his defense counsel, wrote in July 1988 requesting the Delaware Attorney General to disclose allegedly exculpatory evidence. _See_ D.I. 6 at A324-28. The Attorney General did not respond to this letter, and petitioner argues that this constituted a _Brady_ violation. Much of petitioner's letter, however, requested legal advice and interpretations of the criminal code. See D.I. 6 at A324-28, ¶¶ 1-4, 7, 8, 13-16. Because such information is not exculpatory evidence, _Brady_ does not apply. His letter also requested the following information: (1) a detailed account of the state police investigation and proof that a thorough investigation was conducted; (2) proof that the victim's statements in the police report were her own and evidence that the victim voluntarily made those statements; (3) evidence of the time and date of the alleged offense; (4) proof that petitioner penetrated the victim with his penis; (5) evidence of the victim's serious physical, mental, or emotional injury; (6) evidence of the petitioner's intent; (7) test results conducted on the victim by a rape crisis unit; and (8) all other evidence

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 12
Not Reported in F.Supp.2d, 1999 WL 127247 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

regarding petitioner. *See* D.I. 6 at A324-28, ¶¶ 5, 6, 9-12, 17, 18.

**\*12** Petitioner has failed to demonstrate that the state possessed this allegedly exculpatory evidence. Indeed, petitioner admits that the state did not have any of this evidence when he notes in his reply brief that, "the state had no evidence to disclose because no evidence exists to prove any of the elements of the crime."*See* D.I. 36 at 56. Thus, petitioner's allegations are self-contradictory and fail to demonstrate that the prosecution actually or constructively possessed any of this allegedly exculpatory evidence. *See Veksler, 62 F.3d at 550.*

Moreover, the record reveals that petitioner's defense counsel had access to the allegedly exculpatory evidence prior to trial. For instance, during his August 1989 pretrial oral arguments, petitioner's trial counsel refers to police reports, the victim's prior testimony, and the date and time of the alleged offense reported by the police officers. *See* D.I. 6 at A396-400. The state also presented its evidence at two previous trials and at least one preliminary hearing before the start of petitioner's third trial. *See* D.I. 6 at A396-400. Petitioner knew from the victim's previous testimony that she voluntarily reported the rape and that she suffered serious emotional injury from the encounter. Petitioner also knew from his previous trials that no evidence existed of his intent to rape or of penetration. Indeed, the prosecution relied on the victim's testimony and circumstantial evidence in order to prove these elements of its case.

Petitioner has failed to demonstrate that the prosecution possessed the listed evidence. Furthermore, the record reveals that petitioner had access to the listed evidence before his third trial. Therefore, petitioner has not stated a *Brady* violation. The court will dismiss ground twenty.

### D. Other Grounds for Relief

The Delaware Supreme Court addressed the merits of the following grounds for relief either on direct appeal or on petitioner's postconviction appeal. Accordingly, petitioner has exhausted state remedies

with respect to these claims. The court will review the Supreme Court's rulings for unreasonable applications of clearly established federal law and for unreasonable factual determinations in light of the evidence presented. *See*28 U.S.C. § 2254(d)(1)-(2).

### 1. Ground Thirteen-Constitutional Challenges to the Delaware Rape Statute and the Trial Court's Jury Instructions

Petitioner argues that the Delaware first degree rape statute is "void for vagueness" and that the trial court violated his due process rights by refusing to instruct the jury on incest as a leser included offense of first degree rape. In support of these arguments, petitioner advances several grounds of relief already dismissed by the court. The court, however, will conduct an independent constitutional review of the statute and the jury instructions.

#### a. Void for Vagueness

The void for vagueness doctrine requires legislatures to set reasonably clear guidelines for law enforcement officials and courts in order to prevent arbitrary and discriminatory enforcement of a criminal statute. *See Smith v. Goguen, 415 U.S. 566, 572-73 (1974).* The United States Supreme Court has explained that the void for vagueness doctrine "simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed."*United States v. National Dairy Prods. Corp., 372 U.S. 29, 32-33 (1963).* In assessing a statute for vagueness, a court must ask whether the statute is

**\*13** sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalities ... consonant alike with ordinary notions of fair play and the settled rules of law; and a statute that either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.

*Connally v. General Const. Co., 269 U.S. 385, 391 (1926); see also San Filippo v. Bongiovanni, 961*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

F.2d 1125, 1136 (3d Cir.1992). Simply because a criminal statute could have been written more precisely does not render it unconstitutionally vague. See *United States v. Powell*, 423 U.S. 87, 94 (1975).

Petitioner assails several elements of the Delaware first degree rape statute as ambiguous. Petitioner argues that the terms "voluntary social companion," "sexual intercourse," and "without consent" are ambiguous. Petitioner's arguments are without merit. The Delaware rape statute clearly establishes that:

A male is guilty of rape in the first degree when he intentionally engages in sexual intercourse with a female without her consent, and:

(1) In the course of the offense he inflicts serious physical, mental or emotional injury upon the victim, or

(2) The victim was not the defendant's voluntary social companion on the occassion of the crime and had not previously permitted him sexual contact.

11 Del. C. § 764 (1979). According to the code, sexual intercourse occurs upon "any penetration, however slight." *Id.* § 773. The code further defines "without consent" as, *inter alia,* sexual intercourse with a female less than sixteen years old. See *id.*§ 767(3). Moreover, as noted above, in 1985 the Delaware Superior Court ruled that a minor child of a custodial parent could not be that parent's "voluntary social companion." See *Hamilton*, 501 A.2d at 778.

The court finds that the statute is clear and that it defines the crime of first degree rape with sufficient definiteness. Men of reasonable intelligence would comprehend that the statute prohibits sexual intercourse with an eleven year old girl. Sexual intercourse with one so young could not be consensual; intercourse under those circumstances almost certainly would inflict serious physical, mental, or emotional injury. Because the statute put petitioner on notice of the unlawfulness of his actions, petitioner's void for vagueness argument is without merit.[FN20]

FN20. Petitioner premises an ineffective

assistance of counsel claim in ground twenty-nine on his trial counsel's failure to raise objections based on the rule of lenity and the void for vagueness doctrine. Because objecting on these grounds would have been meritless, trial counsel's failure to object did not fall below an objective standard of reasonableness or result in prejudice to petitioner. See *Strickland*, 466 U.S. at 686.

b. Lesser Included Offense Instruction

In a related claim, petitioner argues that the Superior Court violated his due process rights when it refused to instruct the jury on the crime of incest as a lesser included offense of first degree rape. (D.I. 4 at 170-71) The trial court denied petitioner's request, noting that incest required proof of an additional element. See D.I. 6 at A557-58. On direct appeal, the Supreme Court affirmed the trial court's conclusion. See *Getz I* at * *2.

*14 The Third Circuit has noted that "jury instructions in State trials are matters of state law.... reviewable by a federal court on collateral attack where the instruction violates specific federal constitutional standards imposed on the States through the due process clause of the Fourteenth Amendment."*Hallowell v. Keve*, 555 F.2d 103, 106 (3d Cir.1977). Several courts have held that the failure to give lesser included offense instructions in a noncapital case does not present a constitutional question. See *Pitts v. Lockhart*, 911 F.2d 109, 112 (8th Cir.1990); *Bonner v. Henderson*, 517 F.2d 135, 136 (5th Cir.1975). Nonetheless, the court will review the constitutionality of refusing to instruct the jury on the crime of incest.

Delaware law defines a lesser included offense, in pertinent part, as one that "is established by the proof of the same or less than all the facts required to establish the commission of the offense charged."11 Del. C. § 206(b)(1) (1979). Delaware courts must instruct a jury on a lesser included offense only where "there is a rational basis in the evidence for a verdict acquitting the defendant of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                      Page 14
Not Reported in F.Supp.2d, 1999 WL 127247 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

the offense charged and convicting him of the included offense."11 Del. C. § 206(c) (1979). The United States Supreme Court has ruled that federal courts must give lesser included offense instructions where "the elements of the lesser offense are a subset of the elements of the charged offense."Schmuck v. United States, 489 U.S. 705, 716 (1989) (interpreting Fed.R.Crim.P. 31(c)). The Court explained that a lesser included offense instruction is not required, "[w]here the lesser offense requires an element not required for the greater offense...."Id.

Delaware's first degree rape statute requires proof of intentional sexual intercourse, by a male, without the consent of a woman, and proof either that the male inflicted serious mental, emotional or physical harm or proof that the victim was not the defendant's voluntary social companion and that she had not previously permitted him sexual contact. See11 Del. C. § 764 (1979). Incest, on the other hand, requires proof of sexual intercourse between blood relations. See id.§ 771. A showing of kinship is not an element of first degree rape. Thus, the Delaware Supreme Court did not err in its assessment that incest was not a lesser included offense of first degree rape. See Getz I at * *2. This determination also comported with the United States Supreme Court's test for lesser included offenses. See Schmuck, 489 U.S. at 716. Accordingly, the Delaware Supreme Court did not violate any "clearly established federal law as determined by the Supreme Court of the United States."See28 U.S.C. § 2254(d)(1). The court will dismiss ground thirteen in its entirety.FN21

> FN21. Petitioner also argues that the Delaware first degree rape statute violates the Equal Protection Clause because it punishes only males for engaging in unconsented sexual intercourse. The United States Supreme Court has rejected this argument. See Michael M. v. Superior Court of Sonoma County, 450 U.S. 464 (1981) (plurality opinion). Accordingly, the court will not consider this ground for relief.

### 2. Grounds Twelve and Fourteen-Denial of Motions for Acquittal

Before the start of petitioner's third trial, petitioner's trial counsel presented a motion for judgment of acquittal. See D.I. 6 at A381-82. Petitioner's counsel argued before the trial court that acquittal was necessary because of conflicting testimony about the exact time of the offense. See D.I. 6 at A395-409. Petitioner claims that the trial court violated his due process rights by summarily denying the motion "without review or consideration on the merits or law."See D.I. 4 at 95, 133.

*15 A court may grant federal habeas relief where a state court's error in interpreting or applying its own law rendered the trial so fundamentally unfair that it deprived petitioner of due process. See McGuire, 502 U.S. at 67-68. Thus, the court must look to Delaware law to determine if the trial court correctly applied Delaware law and, if not, whether petitioner's due process rights were violated.

Under Delaware law, courts treat a motion for judgment of acquittal made prior to the presentation of evidence as a motion made under Rule 12 of the Superior Court Criminal Rules. See State v. Crawford, 297 A.2d 55, 55 (Del.Super.Ct.1972).Rule 12 permits written or oral motions. SeeSuper. Ct.Crim. R. 12(b). Where factual issues are involved in deciding a motion, Rule 12 only requires a court to "state its essential findings on the record."Super. Ct.Crim. R. 12(e).

The record reveals that, contrary to petitioner's assertions, the court heard extensive oral arguments on the motion for judgment of acquittal. See D.I. 6 at A395-409. In denying the motion, the court stated that

[t]he defendant's motion for judgment of acquittal for insufficient evidence is not ripe at this time because the State's evidence has not been presented. That motion will be denied as premature without prejudice to any motion for judgment of acquittal at the close of the State's case.

See D.I. 6 at A409. The trial court's disposition of the motion for judgment of acquittal fulfilled the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                        Page 15
Not Reported in F.Supp.2d, 1999 WL 127247 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

bare' requirements of Rule 12 and, moreover, the trial court's ruling did not "so infect[ ] the entire trial that the resulting conviction violate[d] due process."*McGuire, 502 U.S. at 72*. Accordingly, petitioner's due process claim is without merit. Grounds twelve and fourteen will be dismissed.

### 3. Ground Twenty-Three-Denial of a Motion to Disqualify the State Prosecutor

In ground twenty-three, petitioner claims that the trial court denied him his Sixth Amendment right to compulsory process by refusing to disqualify the state prosecutor so that the defense could call him as a witness. *See* D.I. 4 at 164-65. Petitioner contends that the state prosecutor, accompanied by petitioner's trial counsel, went to petitioner's home to observe the crime scene. At the time, the victim and her stepmother were living there. While there, petitioner claims that the prosecutor "coached" the victim and her stepmother (as well as a police officer) on their upcoming testimony in petitioner's third trial. Petitioner instructed his trial counsel to move to disqualify the prosecutor. The trial court denied the motion. *See* D.I. 6 at A418.

The Sixth Amendment, applicable to the states through the Fourteenth Amendment, provides the accused in a criminal prosecution the right to offer the testimony of favorable witnesses and "to have compulsory process for obtaining witnesses in his favor."U.S. Const. amend. VI; *see also Washington v. Texas, 388 U.S. 14, 18-19 (1967); Government of the Virgin Islands v. Mills, 956 F.2d 443, 445 (3d Cir.1992)*. This right, however, is not absolute. *See Mills, 956 F.2d at 446*. In order to establish a violation of the Sixth Amendment's right to compulsory process, petitioner must demonstrate that

*16 he was deprived of the opportunity to present evidence in his favor ... that the excluded testimony would have been material and favorable to his defense ... and ... that the deprivation was arbitrary or disproportionate to any legitimate evidentiary or procedural purpose.

*Id.* (citing *Rock v. Arkansas, 483 U.S. 44, 56 (1987)*).

In the present case, petitioner has not demonstrated that the trial court denied him an opportunity to present favorable evidence. Petitioner, through his counsel, had the opportunity to elicit from the police officer, the victim, and her stepmother whether or not the prosecutor had "coached" their testimony. Petitioner also could impeach the three witnesses with inconsistencies in their prior testimony. Furthermore, the prosecutor denied on the record that he urged any of the witnesses to change their testimony. *See* D.I. 6 at A413. Thus, requiring the prosecutor to take the stand would not have elicited any new, favorable evidence to the defense.

Neither can petitioner establish that the prosecutor's testimony would have been material. Petitioner's defense counsel admitted at trial that he submitted the motion at petitioner's insistence. *See* D.I. 6 at A412, 417. Petitioner's trial counsel also conceded that

the only thing I can say is I don't know what fruit will come out of that questioning, but the defendant believes he has a right to put [the prosecutor] on the stand and ask him specifically, I presume, if he in fact talked to anyone. If he says no, then that's going to end it.

D.I. 6 at A417. In light of these admissions, the trial court's refusal to disqualify the prosecutor was not arbitrary or "disproportionate to any legitimate evidentiary or procedural purpose."*See Mills, 956 F.2d at 446*. Ruling on a similar issue, the Third Circuit has noted that a trial court "may properly refuse to allow the defense to call the prosecutor if it does not believe that 'he possesses information vital to the defense.' " *United States v. Newman, 476 F.2d 733, 738 (3d Cir.1973)* (quoting *Gajewski v. United States, 321 F.2d 261, 268-69 (8th Cir.1963)*). The court finds that the Delaware Supreme Court did not violate clearly established federal law in affirming the trial court's denial of the motion to disqualify. Accordingly, the court will dismiss ground twenty-three.

### 4. Grounds Sixteen and Seventeen-Witness Bribery and "Coaching"

Petitioner alleges that the prosecution "coached" the victim and other witnesses and induced the victim and her stepmother to testify against petitioner by a promise of monetary awards from the Delaware Victim's Compensation Board. *See* D.I. 4 at 140-51. The Delaware Supreme Court addressed both of these allegations and decided them adversely to petitioner. Petitioner presented the improper "coaching" allegation to the Supreme Court on his direct appeal, and the Court dismissed it, finding that the "the prosecutor conducted himself appropriately throughout the trial."*Getz I* at * *2. Petitioner presented his allegations of witness bribery to the Supreme Court on his postconviction relief appeal. In its ruling, the Court noted that petitioner relied upon unsworn, hearsay statements of his family members in support of this allegation. *See Getz III* at * *2. The Court also affirmed the Superior Court's determination that "the record did not support a finding that the victim was promised money by the State in exchange for her testimony at trial."*Id.* at * *3.

**\*17** The federal habeas corpus statute requires federal courts to accept as correct the factual determinations of state courts, unless the petitioner rebuts this presumption of correctness with clear and convincing evidence. *See*28 U.S.C. § 2254(e)(1). Petitioner has presented only the sworn affidavits of himself and his mother to rebut the factual determinations of the state courts. *See* D.I. 7 at A870-72. Without clear and convincing evidence of witness bribery and improper coaching, the court will accept the factual determinations of the state courts as correct. Accordingly, grounds sixteen and seventeen are dismissed.

### 5. Ground Nineteen-Illegal Search and Seizure

Petitioner claims that the trial court violated the Fourth Amendment in dismissing his motion to suppress Dr. Kuhn's medical examination of his daughter. Petitioner rightly claims that, under the Delaware Rules of Evidence, guardians may exercise a minor child's privilege to refuse to disclose that child's medical records. *See*Del. R. Evid. 503(b)-(c). Nonetheless, the trial court denied peti-

tioner's motion. *See* D.I. 6 at A423. The trial court reasoned that, since the State exercised custody over the victim following petitioner's arrest, Rule 503(c) inevitably would have entitled the State to the information contained in Dr. Kuhn's report. *See* D.I. 6 at A423. The Delaware Supreme Court affirmed the denial of the motion. *See Getz I* at * *2.

The United States Supreme Court has held that, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."*Stone v. Powell*, 428 U.S. 465, 494 (1976) (footnotes omitted). The holding in *Powell* applies squarely to petitioner's claims. The record reveals that the trial court afforded petitioner a full and fair opportunity to argue his motion to suppress. *See* D.I. 6 at A420-23. Accordingly, the court will dismiss ground nineteen.

### 6. Ground Twenty-Four-Prosecutorial Misconduct in Closing Arguments

In support of this ground for relief, petitioner asserts nineteen separate counts of prosecutorial misconduct during the state's closing arguments. *See* D.I. 4 at 166-69. Petitioner specifically alleges instances of improper vouching and assails the prosecutor's closing for its reliance on "known false evidence." Petitioner also contends that the prosecutor stated personal opinions about petitioner's guilt. The Delaware Supreme Court dismissed petitioner's allegations on direct appeal, noting that "the prosecutor conducted himself appropriately throughout the trial."*See Getz I* at * *2.

When conducting a habeas corpus review of a state prosecutor's closing arguments, the court must determine if the prosecutor's comments " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process." ' *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)). The Third Circuit has noted that "[t]he prosecutor is entitled to considerable latitude in summation to ar-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 127247 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

gue the evidence and any reasonable inferences that can be drawn from that evidence." *United States v. Werme*, 939 F .2d 108, 117 (3d Cir.1991). Nonetheless, the prosecutor may not vouch for the credibility of state witnesses. Vouching occurs when the prosecutor assures the jury of the credibility of state witnesses through personal knowledge or by other information outside of the testimony and evidence presented to the jury. *See United States v. Walker,* 155 F.3d 180, 184 (3d Cir.1998).

*18 After a thorough review of the prosecutor's closing arguments, the court cannot find any evidence of impropriety. At no point in the closing arguments did the prosecutor personally vouch for the credibility of state witnesses. Although the prosecutor argued that the victim and her stepmother testified truthfully, his arguments relied upon the evidence before the jury and upon the jury's common sense. In sum, the prosecutor's closing arguments were "based on reasonable inferences which the jury could draw from the evidence at trial."*United States v. Green*, 25 F.3d 206, 210 (3d Cir.1994). The prosecutor made no inflammatory remarks and did not misstate the evidence.[FN22] None of his comments infected the trial with unfairness or prejudice. *See Darden*, 477 U.S. at 181. Accordingly, ground twenty-four will be dismissed.[FN23]

> FN22. The prosecutor's comments about petitioner's sexual urges, taken in isolation, could be construed as improper. *See* D.I. 6 at A643-44. No evidence was presented on petitioner's sexual urges. The prosecutor, however, was merely rebutting claims raised in defense counsel's closing that suggested the state's case rested solely on petitioner's sexual frustrations. *See* D.I. 6 at A631 ("[The state] wants you [the jury] to believe that [petitioner] is having sex with his daughter because he wasn't having it with his wife.").

> FN23. Petitioner also raises an ineffective assistance of counsel claim premised upon his trial counsel's failure to object to the prosecutor's closing arguments. *See* D.I. 4

at 169. Since those arguments were proper, trial counsel's failure to object did not prejudice petitioner.

### 7. Ground Twenty-Seven-Improper Jury Instruction on the Element of Intent

Petitioner argues that the trial court's jury instructions on the element of intent violated his due process rights by impermissibly placing the burden of disproving intent upon him and by denying him the presumption of innocence. *See* D.I. 4 at 174-76. The Due Process Clause requires the prosecution to prove beyond a reasonable doubt every fact necessary to constitute the crime attributed to the accused. *See In re Winship*, 397 U.S. 358, 364 (1970). The United States Supreme Court has held that jury instructions violate due process when they raise a mandatory presumption of intent from an act of the accused. *See Sandstrom v. Montana*, 442 U.S. 510, 521-23 (1979); *United States v. United States Gypsum Co.*, 438 U.S. 422, 435, 446 (1978); *Morissette v. United States*, 342 U.S. 246, 274-75 (1952). A mandatory presumption may be either conclusive or rebuttable. A conclusive presumption removes the presumed element from consideration once the state has proved the predicate acts giving rise to the presumption. *See Francis v. Franklin*, 471 U.S. 307, 314 n. 2 (1985). A rebuttable presumption does not remove the presumed element from the case but, rather, requires the jury to accept the element as proved unless the defendant rebuts the presumption. *See id.; see also Sandstrom*, 442 U.S. at 524;*Mullaney v. Wilbur*, 421 U.S. 684 (1975). Permissive inferences, on the other hand, violate the Due Process Clause only "if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury."*Franklin*, 471 U.S. at 314-15. In reviewing jury instructions for constitutional infirmity, a court must "focus initially on the specific language challenged."*Id.* at 315.Thus, the court must analyze the Superior Court's jury instructions to determine if they raise a mandatory or permissive presumption.

The trial court gave the following instructions to the jury:

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 127247 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 18

I have instructed you [that] an element of the offense of rape in the first degree is that the defendant acted intentionally. It is, of course, difficult to know what is going on in another person's mind; therefore, our law permits the jury to draw an inference or, in other words, to reach a conclusion about the defendant's state of mind from the facts and circumstances surrounding the act the defendant is alleged to have done.
*19 In reaching this conclusion, you may consider whether a reasonable man in the defendant's circumstance would have had or lacked the requisite intention. You should, however, keep in mind at all times that it is the defendant's state of mind which is at issue here and in order to convict the defendant you are required to find beyond a reasonable doubt that he in fact had the intention required for guilt.

D.I. 6 at A571-72. Although the trial court's instruction permitted the jury to infer intent from the defendant's actions, the instructions did not require the jury to do so. Indeed, the court reiterated the importance of finding intent beyond a reasonable doubt. The trial court's instructions merely created a permissive inference of intent that did not relieve the state of its burden of persuasion. Consequently, the jury instructions did not violate petitioner's due process rights.FN24 Ground twenty-seven will be dismissed.FN24

> FN24. Petitioner premises an ineffective assistance of counsel claim on trial counsel's failure to object to the jury instructions. Because the jury instructions did not violate the Due Process Clause, any objection would have been overruled. Thus, petitioner cannot establish prejudice from his trial counsel's failure to object. His ineffective assistance of counsel claim will be dismissed.

8. Improper Supplemental Jury Instruction

During deliberations, the jury informed the trial court of its inability to reach a unanimous verdict. The court then gave the jury a supplemental, *Allen* instruction-so-called after the United States Su-

preme Court decision recognizing the constitutionality of supplemental jury instructions. *See Allen v. United States,* 164 U.S. 492 (1896); *see also* D.I. 6 at A584-88. The trial court's *Allen* charge reminded the jury that the current trial had been time-consuming and expensive and that there was no "reason to believe that the case [could] be tried again better or more exhaustively than it [had] been in this trial."*See* D.I. 6 at A585. The court added that no juror should surrender his or her "conscientious convictions" and that the jurors should consult with each other "with a view to reaching a verdict" if doing so would not do violence to each juror's individual judgment. *See* D .I. 6 at A586. The court concluded its supplemental instruction with the following charge:
In the performance of this high duty, you are at liberty to disregard any comments of both the court and counsel, including of course, the remarks I am now making. Remember at all times no juror is expected to yield his conscientious conviction which he may have as to the weight and effect of the evidence, and remember also that after full deliberation and consideration of all of the evidence it is your duty to agree upon a verdict if you can do so without violating your individual judgment and conscience.

D.I. 6 at A587.

Petitioner argues that the trial court's *Allen* charge had a coercive effect upon the jury. Petitioner contends that the trial court's reminder that the jury could "disregard any comments of both court and counsel" undermined the court's prior instructions on presumption of innocence and the need to find petitioner guilty beyond a reasonable doubt. Petitioner further claims that the trial court prejudiced the jury by commenting on the cost and expense of the trial and the quality of the jury. The Delaware Supreme Court found no errors in the trial court's supplemental charge. The court will review that determination in light of clearly established federal law. *See*28 U.S.C. § 2254(d)(1).

*20 A review of the trial court's supplemental charge begins with an analysis of the charge "in its

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 127247 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 19

context and under all the circumstances." *Jenkins v. United States,* 380 U.S. 445, 446 (1965). Although the trial court encouraged the jury to reach a unanimous decision, the trial court did not require the jury to do so. The trial court stressed that jurors should reach a unanimous verdict only if doing so would not do violence to their individual consciences. Pointing out the cost of the trial and the necessity of trying it again if the jury could not reach a verdict did not unduly prejudice the jury. The Third Circuit has upheld similar supplemental reminders as constitutional. *See Landano v. Rafferty,* 856 F.2d 569, 574-75 (3d Cir.1988); *Government of the Virgin Islands v. Gereau,* 502 F.2d 914, 936 (3d Cir.1974).

The trial court's contention that the jurors could disregard any statements by the court and counsel also must be viewed in context. *See* D.I. 6 at A587. The trial court was not suggesting, as petitioner contends, that the jury could disregard the court's instructions on the law and on the necessity of proving petitioner's guilt beyond a reasonable doubt. Instead, this statement merely emphasized that individual jurors should disregard the court's supplemental instructions on the desirability of reaching a final judgment if their individual consciences would not permit them to reach a majority verdict. This interpretation is confirmed by the next sentence read by the judge, where he reminded the jurors that

at all times no juror is expected to yield his conscientious conviction which he may have as to the weight and effect of the evidence, and remember also that after full deliberation and consideration of all of the evidence it is your duty to agree upon a verdict if you can do so without violating your individual judgment and conscience.

D.I. 6 at A587. Viewed as whole, the trial court's supplemental instructions were neither coercive nor prejudicial to petitioner. Because the supplemental instructions did not violate petitioner's due process rights, ground twenty-eight will be dismissed.[FN25]

> FN25. Petitioner's ineffective assistance of counsel claim, premised on his trial coun-

sel's failure to object to the supplemental instructions, also will be dismissed. Because the supplemental instructions passed constitutional muster, trial counsel's failure to object was neither objectively unreasonable nor prejudicial to petitioner.

### 9. Ground Fifteen-Lack of Evidentiary Support for the Conviction

Petitioner contends that his conviction lacked evidentiary support. In support of his claim, petitioner raises many arguments already rejected by the court. Petitioner contends that the testimony was contradictory and that the state failed to prove several elements of the crime. The Delaware Supreme Court also rejected these arguments, finding that "[t]he evidence presented by the State fully supports the conviction of [petitioner] of Rape First Degree. All elements of the crime are present."*Getz I* at * *1.

The United States Supreme Court has explained that, in reviewing the constitutionality of a state court conviction, a federal court must determine if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."*Jackson v. Virginia,* 443 U.S. 307, 319 (1979). The Court noted that this standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts."*Id.* A federal court presented with alleged inconsistencies in the record must presume that the trier of fact resolved these conflicts in favor of the prosecution. *See id.* at 326.A review of the record convinces the court that a reasonable factfinder could have found petitioner guilty beyond a reasonable doubt of first degree rape.

*21 The state submitted the following testimony and evidence to the jury. The prosecution elicited testimony from the victim that petitioner engaged in sexual intercourse with her. The victim also testified that petitioner was interrupted when he heard

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the victim's stepmother approach the victim's bedroom. This testimony was corroborated by the stepmother who testified that she saw petitioner leaving the victim's bedroom. The stepmother also claimed that, after leaving the victim's room, petitioner returned to the stepmother's bedroom. The stepmother noticed that petitioner had an erection, and she testified that petitioner immediately engaged in sexual intercourse with her. The state also presented medical evidence of damage to the victim's hymen-damage consistent with, but not conclusive of, sexual intercourse. Petitioner took the stand and denied having sexual intercourse with his daughter. He also disputed the testimony of the stepmother and claimed that he was not in the house at the time of the alleged rape.

Petitioner's conviction clearly turned on the credibility of the witnesses. Credibility determinations are solely within the province of the factfinder. *See Jackson, 443 U.S. at 319.* A reasonable factfinder could have disbelieved petitioner's testimony and accepted the testimony and evidence presented by the State. The State's evidence, if believed, establishes that petitioner had vaginal intercourse with his eleven year old daughter and that, in doing so, he caused her severe mental and emotional anguish. The circumstantial evidence presented also would enable a reasonable factfinder to infer that petitioner had the requisite intentional state of mind during the rape. Thus, the court must conclude that a reasonable factfinder could have found petitioner guilty of first degree rape. Ground fifteen will be dismissed.

### 10. Ground Eighteen-Recusal of the Trial Judge During Postconviction Proceedings

Petitioner argues that the trial judge interfered with his attempts to obtain documents for his postconviction appeal and that, therefore, the same judge should have recused himself from petitioner's postconviction hearing. D.I. 4 at 152-53. Petitioner bases his allegation of interference on a letter from his trial counsel stating that the trial counsel's superiors in the public defender's office had instructed him to not comply with petitioner's request for doc-

uments. *See* D.I. 7 at A868. The letter also obliquely suggests that the trial judge, in an October 27, 1992 letter, informed petitioner of trial counsel's refusal to supply the requested documents. *See* D.I. 7 at A868. The trial judge's letter, however, only advises petitioner that petitioner's postconviction discovery request was premature. *See* D.I. 7 at A867.

From this inconsistency, petitioner infers that the trial judge conspired with petitioner's trial counsel to withhold documents from petitioner. The evidence does not support this inference. Because the record fails to establish any bias toward petitioner by the trial judge, no constitutional harm arose from the trial judge's review of petitioner's postconviction appeal.

### 11. Grounds Thirty to Thirty-One-Ineffective Assistance of Counsel

**\*22** In his motion, petitioner argues that his Sixth Amendment rights were violated by his trial counsel's refusal to (1) object to various pretrial rulings, (2) interview state witnesses, and (3) present twenty-five character witnesses on petitioner's behalf. The Sixth Amendment provides that an accused has the right to the assistance of counsel in all criminal proceedings. U.S. Const. amend. VI. The United States Supreme Court has interpreted this right to include the right to effective assistance of counsel. *See Strickland, 466 U.S. at 686.* The right to effective assistance of counsel exists to protect an accused's fundamental right to a fair trial. *See id. at 684;see also Nix v. Whiteside, 475 U.S. 157, 175 (1986); United States v. Cronic, 466 U.S. 648, 653 (1984).*

In order to prevail on a claim of ineffective assistance of counsel, petitioner must show both that his counsel's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result of these alleged deficiencies. *See Strickland, 466 U.S. at 686;see also Burger v. Kemp, 483 U.S. 776, 788-89 (1987); Darden v. Wainwright, 477 U.S. 168, 184 (1986); Kimmelman v. Morrison, 477 U.S. 365, 375 (1986).* Under

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 127247 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

*Strickland,* a petitioner establishes prejudice by demonstrating that "but for counsel's unprofessional errors, the result of the proceeding would have been different."*Strickland, 466 U.S. at 694.* In determining the reasonableness of counsel's actions, the court must give considerable deference to the attorney's decisions. The Supreme Court has noted that:

A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.* at 688-89 (quoting *Michel v. Louisiana, 350 U.S. 91, 101 (1955)).*

Petitioner must illustrate not only the derelictions of his counsel, but also that "there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different."*Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir.1996)* (citing *Strickland, 466 U.S. at 668).* When evaluating counsel's performance, however, a court should not "focus[ ] solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable."*Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).*"To set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the [petitioner] a windfall to which the law does not entitle him."*Id.* (citing *Cronic, 466 U.S. at 658).*

*23 Petitioner's trial counsel presented a motion to dismiss and a motion for judgment of acquittal. *See* D.I. 4 at A409-10. The trial court dismissed both motions after a brief discussion. Petitioner argues that trial counsel should have objected to this "summary" dismissal of these motions. Counsel's failure to object was reasonable. The motions had been denied, and it is apparent from the record that further argument would not have altered the trial court's decision. Petitioner, therefore, cannot demonstrate either that his trial counsel's performance fell below an objective standard of reasonableness or he suffered prejudice. Accordingly, ground thirty will be dismissed.

Similarly, petitioner's objections to his counsel's trial preparation and tactics do not establish that his attorney's performance fell below an objective standard of reasonableness. Trial counsel had the benefit of transcripts from a previous trial, and the prosecution had not indicated that it would present any new witnesses during petitioner's third trial. Thus, it was reasonable for petitioner's trial counsel to refrain from interviewing prosecution witnesses. Moreover, petitioner fails to demonstrate how trial counsel's failure to interview these witnesses prejudiced his case.

Petitioner also contends that his lawyer's refusal to call numerous witnesses constituted ineffective assistance of counsel. Petitioner does not allege specific facts regarding the substance of the testimony to be offered by these witnesses. In the absence of such evidence, petitioner cannot overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."*See Strickland, 466 U.S. at 688-89.* Moreover, without specific examples of the testimony foregone by counsel's failure to call these witnesses, petitioner cannot establish that he suffered any prejudice. Thus, his ineffective assistance of counsel claims are without merit. Ground thirty-one will be dismissed.

### 12. Ground Thirty-Two-Ineffective Assistance of Appellate Counsel

Finally, petitioner alleges that his trial counsel "completely abandoned" him on direct appeal. See D.I. 4 at 191-94. The record reveals that petitioner's attorney filed a appellate brief and a motion to withdraw pursuant to Supreme Court Rule

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 127247 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

*See Getz I* at * *1. This brief, which comported with Rule 26(c), certified one issue for appeal. Petitioner premises his ineffective assistance of appellate counsel claim in part upon his attorney's assurances that he would file a traditional brief on the merits.

The United States Supreme Court has noted that counsel, not client, determines which issues to brief on appeal. *See Jones v. Barnes,* 463 U.S. 745, 753-54 (1983). Appellate counsel, relying upon his or her professional judgment, has the right and the duty to select only the most promising issues for appellate review. *See id . at* 752.Accordingly, the filing of a Rule 26(c) brief that stated only one issue did not constitute ineffective assistance of appellate counsel.

**\*24** Petitioner also contends that his attorney refused to file the appropriate record and that he withheld information from petitioner. In order to state a claim of ineffective assistance of appellate counsel, petitioner must satisfy the two-prong test enunciated in *Strickland. See* 466 U.S. at 686. Because the court cannot determine whether the Supreme Court received the trial transcript, the court will assume that petitioner's attorney failed to file the record.

Even assuming that this omission fell below an objective standard of reasonableness, petitioner suffered no prejudice from the attorney's mistake. The Delaware Supreme Court refused to consider a variety of issues, including petitioner's claims relating to selective prosecution, denial of a speedy trial, and the prosecution's failure to disclose exculpatory evidence. *See Getz I* at * *2. As the court has noted above, each of these claims lacks merit. Thus, even if the Delaware Supreme Court had considered these issues, it would not have found any constitutional violations. Accordingly, petitioner has suffered no prejudice from his attorney's failure to provide the Supreme Court with the trial transcript.

Petitioner's ineffective assistance of counsel claim also rests on his attorney's refusal to provide him with certain information. Petitioner does not specify the nature of this evidence or its relevance to his appeal. Consequently, petitioner cannot satisfy either prong of the *Strickland* test. Ground thirty-two will be dismissed.

## V. CONCLUSION

For the foregoing reasons, the court will deny petitioner's application for a writ of habeas corpus.FN26Petitioner's request for an evidentiary hearing is denied. *See* D.I. 38. An order shall issue consistent with this memorandum opinion.

> FN26. Ground thirty-three, where petitioner objects to an increase in bail following the reversal of his first conviction, is dismissed as moot. *See* D.I. 4 at 195-96.

D.Del.,1999.

Getz v. Snyder

Not Reported in F.Supp.2d, 1999 WL 127247 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2007, I electronically filed the attached documents with the Clerk of Court using CM/ECF. I also hereby certify that on December 17, 2007, I will mail, by United States Postal Service, the same documents to the following non-registered participant:

Henry W. Glanding, Jr.
SBI # 20170621
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

/s/ James T. Wakley
Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
Del. Bar. ID No. 4612
james.wakley@state.de.us

Date: December 14, 2007